ORIGINAL

FILED
JAN 3 0 2006
U.S. COURT OF
FEDERAL CLAIMS

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LOWRY ECONOMIC REDEVELOPMENT AUTHORITY,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Case No. 06-75 L

Judge ____________

# COMPLAINT

The Lowry Economic Redevelopment Authority ("LRA"), by and through its attorneys, Sherman & Howard L.L.C., alleges as follows:

## STATEMENT OF THE CASE

1. This is a civil action against the United States of America ("United States"), acting through the United States Department of Defense ("DoD") and the United States Department of the Air Force ("Air Force") (collectively referred to as "Defendant") for failing to fulfill its obligations under Section 330 of the National Defense Authorization Act for Fiscal Year 1993, Pub. L. No. 102-484, Div. A, Title III, § 330, 106 Stat. 2371 (Oct. 23, 1992), *amended by* Pub. L. No. 103-60, Div. A, Title X, § 1002, 107 Stat. 1745 (Nov. 30, 1993) ("Section 330"), and for breaching deed covenants made pursuant to Section 120(h) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9620(h) ("CERCLA Section 120(h)"), regarding the release, threatened release, and cleanup of hazardous substances, pollutants, contaminants, and petroleum products or

their derivatives (collectively, "hazardous substances") at the former Lowry Air Force Base ("LAFB") located in Denver and Aurora, Colorado.

2. LRA acquired certain property at LAFB ("LRA Properties") from Defendant. The LRA Properties contained certain hazardous substances as a result of Defendant's historic activities on LAFB. (See map illustrating LRA Properties attached as Exhibit 1). LRA conducted certain cleanup activities regarding those hazardous substances and brings this action to recover all costs and fees it has incurred or will incur, including costs of investigating and removing said hazardous substances on LRA Properties, lost profits and other economic damages, additional costs incurred, and legal fees.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to the Tucker Act because the claims asserted herein are for money damages arising under an "Act of Congress" and "upon [an] express . . . contract with the United States." 28 U.S.C. § 1491(a)(1).

4. Defendant has waived sovereign immunity pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), and Section 330.

## PARTIES

5. LRA is a separate legal entity established pursuant to an intergovernmental agreement dated August 1, 1994, between the City and County of Denver, Colorado, and the City of Aurora, Colorado, pursuant to the laws of the State of Colorado. The LRA is recognized by the Secretary of Defense as the Local Redevelopment Authority for the former LAFB.

6. Defendant United States is a sovereign nation, acting for itself, and by and through DoD and the Air Force.

7. DoD is a Department of the United States Government.

8. Air Force is a Military Department of the DoD and an agency or instrumentality of the United States.

## BACKGROUND

**Historical Background**

9. LAFB was established in approximately 1940. The majority of the former Air Force Base property is in the City and County of Denver, Colorado, while the remainder is in the City of Aurora, Colorado.

10. For approximately six decades, LAFB was used for various military and related activities, including, from time to time, flight training, aircraft maintenance, operation of a hospital, classroom instruction, student and family housing, and office administration.

11. LAFB was closed in September 1994 pursuant to the Base Realignment and Closure Act of 1990, Pub. L. No. 101-510, Div. B, Title XXIX, § 2911, 104 Stat. 1819 (Nov. 5, 1990) ("BRAC").

12. Following the decision to close LAFB, the Air Force conducted or caused to be conducted a comprehensive environmental assessment of LAFB that was documented in a report entitled "Basewide Environmental Baseline Survey" dated December 10, 1993, which was supplemented from time to time (collectively, the "EBS").

13. The stated purpose of the EBS was to document the physical condition of real property at LAFB resulting from the storage, use, and disposal of hazardous substances and petroleum products and their derivatives over the installation's history. The EBS was intended as a tool to be used in the process of selling, leasing, and otherwise transferring property at LAFB.

14. A group known as the Base Realignment and Closure Cleanup Team ("BCT"), which included the Colorado Department of Public Health and Environment ("CDPHE"), the United States Environmental Protection Agency ("EPA") and the Air Force, was responsible pursuant to federal base closure procedures for evaluating LAFB, overseeing environmental investigations and cleanup, and deeming property on LAFB suitable for transfer to the local redevelopment authority.

15. In July 1995, LRA and Defendant entered into an Economic Development Conveyance Agreement ("EDC Agreement"), pursuant to which title to portions of the LRA Properties were to be conveyed to LRA after the Air Force complied with the requirements of CERCLA Section 120(h), including the requirement that all remedial action necessary to protect human health and the environment with respect to any hazardous substances remaining at LAFB be taken prior to issuance of the deeds.

16. In 1997, the LRA and Defendant entered into an Offer to Purchase Real Property and Acceptance under 40 C.F.R. § 484(e)(3)(G) (the "Negotiated Sale Agreement"), pursuant to which the remainder of the LRA Properties were to be transferred to the LRA.

17. In 1995, Defendant and LRA entered into a lease in furtherance of the conveyance under the EDC Agreement. Also in 1995, Defendant and LRA entered into a lease in furtherance of the conveyance under the Negotiated Sale Agreement, which lease was replaced by a new lease in 2001 ("Leases") pursuant to which the property subject to the Negotiated Sale Agreement was leased to the LRA. Subsequently, the properties subject to the Leases were conveyed to the LRA pursuant to various deeds.

18. One area of LAFB that was transferred to LRA and is currently under development for residential use is known as the "Northwest Neighborhood." The

Northwest Neighborhood is defined as north of 8th Avenue, south of 11th Avenue, west of Uinta Way, and east of Quebec Street in the City and County of Denver. (See map illustrating the Northwest Neighborhood attached as Exhibit 2.) The EBS characterized the majority of the Northwest Neighborhood area as a Category 1 area, meaning there was no evidence of the disposal of hazardous substances or petroleum products identified in the area. The BCT reviewed the EBS and deemed the Northwest Neighborhood area suitable for transfer for future residential use.

19. During the time period from February 1999 through February 2003, pursuant to the requirements of CERCLA Section 120(h), the Air Force issued a series of Finding of Suitability for Transfer ("FOST") documents regarding the Northwest Neighborhood and other portions of the LRA Properties. Each FOST deemed the property that was the subject of the FOST to be suitable for transfer to the LRA. Furthermore, each FOST relating to the Northwest Neighborhood also deemed the property suitable for future residential development. CDPHE and EPA approved the FOST documents.

20. Following the issuance of each FOST, Defendant conveyed to LRA one or more corresponding parcels of land in the Northwest Neighborhood and/or other portions of the LRA Properties. On information and belief, every deed (including, from time to time, correction deeds) issued by Defendant to the LRA ("Deeds") contained certain covenant and warranty provisions ("Deed Covenants") whereby Defendant represented that; (i) it had taken all remedial action necessary to protect human health and the environment with respect to hazardous substances; and/or (ii) Defendant was responsible for conducting any future remedial, response, or corrective action (collectively, "cleanup activities") found to be necessary after the date of the transfer.

21. LRA sold parcels of land in the Northwest Neighborhood and other portions of the LRA Properties to various Builders for the construction and sale of residential homes (the "Builders").

22. The Builders constructed residential homes on parcels of land in the Northwest Neighborhood and other portions of the LRA Properties and sold those parcels to private individuals ("Homeowners").

**Defendant's Activities in the Northwest Neighborhood and LRA Properties**

23. Prior to its closure as a military base, Defendant used the Northwest Neighborhood and other portions of the LRA Properties to house military installation personnel. Dormitories and/or barracks buildings ("Housing Facilities") were located in the Northwest Neighborhood area at one time.

24. A hospital complex comprised of approximately 20 buildings ("Hospital Complex") also was located within the boundaries of the Northwest Neighborhood. The Hospital Complex was constructed in or about 1942. Heating for the Hospital Complex was provided by a dedicated steam plant using insulated steam pipes.

25. The Air Force demolished both the Housing Facilities and the Hospital Complex sometime between 1959 and 1979.

26. Upon information and belief, during the demolition of the Housing Facilities and the Hospital Complex, Defendant's activities resulted in the release and disposal of asbestos, including asbestos-containing insulation and related building debris, to and in the soil in the Northwest Neighborhood. On information and belief, demolition activities and associated disposal of asbestos and asbestos-containing material, including, but not limited to those associated with the Housing Facilities and the Hospital Complex, resulted in

contamination of the soils in the Northwest Neighborhood and other portions of the LRA Properties with asbestos.

27. As described above, the Air Force supplied the EBS and the FOSTs to the LRA (or its predecessor, the Lowry Economic Recovery Project) in the course of negotiations for the transfer of land at LAFB to LRA as evidence of the environmental condition of the land. LRA had the right to rely upon, and in fact relied upon, the accuracy of those documents in deciding to accept the transfer of land at LAFB from the Air Force.

28. On information and belief, except as provided below in paragraph 29, neither the EBS, the FOSTs, nor the Deeds provided any notice to LRA of the presence of asbestos or asbestos-containing material in the soil in the Northwest Neighborhood or other portions of the LRA Properties.

29. Following the discovery of asbestos in soils in the Northwest Neighborhood and the issuance of the Compliance Advisories (as discussed below in paragraph 33), Defendant acknowledged in a few subsequent deeds and associated FOSTs that friable asbestos contained in construction or demolition debris may be present on the property being conveyed pursuant to those deeds. In the deeds for those properties, Defendant expressly retains responsibility for any response actions deemed necessary under CERCLA regarding such materials previously disposed by Defendant. The deeds also expressly provide that assumption of responsibility and liability for asbestos by the LRA for certain asbestos activities arising from asbestos in buildings present on the property in issue will not prejudice whatever rights the LRA may have under Section 330.

**Discovery of Contamination on the Properties**

30. Following transfer of various parcels from the Air Force to the LRA, the LRA conducted various necessary cleanup activities regarding hazardous substances as part of the development of the LRA Properties. The contamination that was the subject of those cleanup actions was a result of the past ownership and operation of the LAFB by the Air Force.

31. The LRA conducted various cleanup activities regarding such hazardous substances as part of preparation of the property for sale to the Builders. Such cleanup activities were necessary. The Air Force was aware of such activities and in some instances assisted in the transport and disposal of certain contaminated materials (for example, petroleum contaminated soils).

**CDPHE Compliance Advisories to Plaintiff -- Discovery of Asbestos in Soils**

32. In 2002, during the course of excavating for construction of homes in the Northwest Neighborhood, one or more of the Builders encountered buried construction debris, some of which contained asbestos, in the subsurface soil of the Northwest Neighborhood. CDPHE was notified of this circumstance.

33. On April 24, 2003, CDPHE issued a Compliance Advisory to LRA, the Air Force, and the Builders (the "Recipients") to address asbestos contamination in the soils in the Northwest Neighborhood. The Compliance Advisory prohibited the Recipients from "further excavation, grading or other intrusive activities that may result in the disturbance of the soil in the Northwest Neighborhood" and prohibited them from resuming work without authorization to do so from the CDPHE. The Compliance Advisory stated that "the Department believes that present conditions in the Northwest Neighborhood present a threat to public health and the environment." The Compliance Advisory also required the Recipients to implement a

comprehensive program of testing, characterizing, and remediating all soil and air in the Northwest Neighborhood, before construction could resume, through the submission and completion of Emissions Control Plans, Sampling Work Plans, and Response Plans. The CDPHE required the Recipients to perform this work in order "[t]o avoid additional enforcement action or reduce the penalties" described in the Compliance Advisory.

34. CDPHE issued a supplemental Compliance Advisory to the Recipients on April 30, 2003, adding a requirement that the Recipients implement a comprehensive indoor air sampling program in the homes and other structures in the Northwest Neighborhood. (The April 24, 2003 Compliance Advisory and the supplemental April 30, 2003 Compliance Advisory are collectively referred to as the "Compliance Advisories" and are attached as Exhibit 3).

35. In May 2003, CDPHE prepared and released a Fact Sheet discussing the asbestos contamination ("May 2003 Fact Sheet" attached as Exhibit 4). The May 2003 Fact Sheet provides that "asbestos-containing materials found on the surface of the ground present a potential health risk to people working and living in the northwest neighborhood."

36. Pursuant to the Compliance Advisories, CDPHE approved a final indoor air sampling plan on May 21, 2003 (the "Indoor Air Sampling Plan"). CDPHE also approved three final soil sampling work plans to address the various stages of development on the Properties: (1) Soil Sampling Work Plan for Lots or Areas Where Excavation, Grading or Construction has not been Initiated or Completed, approved July 24, 2003; (2) Soil Sampling Work Plan for Landscaped Lots, approved July 24, 2003; and (3) Soil Sampling Work Plan for Lots where Construction is Complete and Bare Soil Exists, approved May 9, 2003 (the "Soil Sampling Work Plans").

37. CDPHE also issued a final response plan on August 15, 2003 (the "Response Plan" attached as Exhibit 5). CDPHE conducted public hearings and received public input on the Response Plan prior to its approval. The Response Plan detailed the procedures and standards for the cleanup of asbestos-contaminated soils. CDPHE concluded that the response actions and cleanup standards required by the Response Plan were protective of public health and the environment.

**Homeowner Claims Against LRA**

38. Between October 9, 2003 and October 13, 2003, LRA received nine written claims from various Homeowners ("Homeowner Claims").

39. The Homeowner Claims alleged that asbestos contamination caused property damage to the Homeowners, including loss of value of the Homeowners' property, the need for and cost of clean up and remediation, and loss of use and enjoyment of the Homeowners' property.

40. The Homeowner Claims also alleged personal injuries such as annoyance and discomfort, and stated that the Homeowners believed both the soil and the air in their homes might be contaminated.

41. LRA promptly notified Defendant regarding the Homeowner Claims and requested defense and indemnification of costs pursuant to Section 330.

**Notice and Demands to Defendant**

42. LRA notified Defendant in writing of its claims for indemnification under Section 330 and for breach of the Deed Covenants under CERCLA Section 120(h) on various occasions, including, but not limited to: December 12, 2002; March 5, 2003; May 28, 2003; June 5, 2003; August 22, 2003; October 30, 2003; December 22, 2003; and December 29, 2003. ("Notices" attached as Exhibit 6.)

43. In the Notices, LRA demanded that Defendant, among other things, assume the defense, indemnification, and performance obligations required by Section 330, the Deed Covenants, and the Compliance Advisories. LRA furnished Defendant with copies of relevant papers LRA received, as well as evidence and proof of its claim, losses, and damages. LRA also supplied additional information requested by Defendant relating to LRA's claim.

**Defendant's Denial of LRA's Claims**

44. The Air Force refused to settle LRA's claims for breach of the Deed Covenants in writing on November 18, 2004, but informed LRA that it had forwarded the LRA's 330 Claim to DoD for appropriate action. (Letter from Vecera to Nadel, attached as Exhibit 7).

45. DoD issued a final decision denying LRA's Section 330 Claims in a letter dated December 1, 2005. (Letter from Van Ness to Markham, attached as Exhibit 8).

**Costs and Fees Incurred by Plaintiff**

46. LRA has attempted to resolve the Compliance Advisories and Homeowner Claims by performing testing and remediation work and otherwise cooperating with CDPHE and other state and federal agencies in complying with the Compliance Advisories, and providing notice of the Compliance Advisories and Homeowner Claims to Defendant.

47. In response to the Compliance Advisories and the Homeowner Claims, LRA has incurred substantial costs and fees in an amount greater than $6.3 million.

**FIRST CLAIM FOR RELIEF**
**(Claim for Indemnification Under Section 330)**

48. LRA repeats the allegations of paragraphs 1 through 47, inclusive, as set forth fully herein.

49. Section 330(a)(1) provides, in pertinent part:

> Except as provided in paragraph (3) and subject to subsection (b), the Secretary of Defense shall hold harmless, defend and indemnify in full the persons and entities described in paragraph (2) from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or a loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance or pollutant or contaminant . . . as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.

50. Section 330(a)(2) provides, in pertinent part:

> The persons and entities described in this paragraph are the following:
>
> * * *
>
> (C) Any other person or entity that acquires such ownership or control.
>
> (D) Any successor, assignee, transferee, lender, or lessee of a person or entity described in subparagraphs (A) through (C).

51. LRA is a person or entity as described in Section 330(a)(2)(C) and (D) in that LRA acquired ownership of LRA Properties from the Air Force.

52. LRA incurred liability, costs, and fees as a result of claims, demands, or actions by CDPHE in the form of the Compliance Advisories. LRA also incurred liability, costs, and fees as a result of claims, demands, or actions by the Homeowners.

53. The Compliance Advisories specifically required LRA to undertake certain activities regarding the asbestos and asbestos-containing material to protect human health and the environment or be subject to additional CDPHE enforcement actions. The expenses incurred by LRA in response to the Compliance Advisories and Homeowner Claims are the type of liability, costs, and fees covered under Section 330.

54. LRA's liability, costs, and fees result, at least in part, from the release or threatened release of hazardous substances, including without limitation, asbestos, which is a hazardous substance. Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); 40 C.F.R. § 302.4. Asbestos is also a pollutant and a contaminant.

55. The asbestos and asbestos-containing material on the LRA Properties are the result of the Defendant's activities at LAFB.

56. LAFB is a "military installation," as defined by Section 330(f)(2).

57. Defendant closed LAFB pursuant to the BRAC, which is one of the laws specifically listed within Section 330(f)(3) definition of a "base closure law."

58. LRA notified Defendant in writing within two years after the accrual of its claim and began this action within six months after the date its claim was finally denied by the Department of Defense.

59. LRA furnished copies of pertinent papers received and evidence or proof of any claims, losses, and damages, and provided Defendant with access to its records and personnel for purposes of documenting such claims, losses and damages.

60. LRA notified Defendant promptly after its discovery of hazardous substances, including the asbestos and asbestos-containing material, on LRA Properties and demanded that Defendant indemnify, hold harmless and defend LRA against the Compliance Advisories and the Homeowner Claims, and any other demands arising out of hazardous substances, including asbestos and asbestos-containing material, on the LRA Properties. LRA also provided Defendant with copies of the Compliance Advisories and other pertinent documents related to its claims and otherwise fully informed Defendant of its claims during extensive meetings and correspondence with Defendant.

61. LRA has met all conditions precedent to recovery under Section 330.

62. Defendant failed and refused to take any action to defend LRA against the Compliance Advisories or the Homeowner Claims, thereby forcing LRA to attempt to resolve those claims and comply with CDPHE's demands or risk incurring additional costs, fees, suits, claims, demands, actions, liability, fines, enforcement actions, and/or other penalties.

63. As a result, Defendant is responsible pursuant to Section 330 for indemnifying LRA for all costs and fees it has incurred as a result of the Compliance Advisories, the Homeowner Claims, and other CDPHE demands arising out of the release or threatened release of asbestos and asbestos-containing material on the LRA Properties.

**SECOND CLAIM FOR RELIEF**
**(Claim for Breach of Covenants)**

64. LRA repeats the allegations of paragraphs 1 through 63, inclusive, as set forth fully herein.

65. Defendant was required, under Section 120(h) of CERCLA, 42 U.S.C. § 9620(h), to include the Deed Covenants in the deeds to LRA.

66. Defendant included the required Deed Covenants in the deeds to LRA.

67. Defendant has breached the Deed Covenants in that all remedial action necessary to protect human health and the environment was not taken before the date of the referenced deeds to LRA and because Defendant has failed and refused to take the necessary cleanup action at LAFB after the dates of the deeds.

68. As a result of Defendant's breaches of the Deed Covenants, LRA has incurred costs and fees as set forth herein, and will continue to incur additional costs and fees.

69. All of the costs and fees incurred by LRA arose from necessary cleanup actions.

70. LRA, therefore, is entitled to recover all of its costs and fees arising out of Defendant's breaches of the Deed Covenants.

WHEREFORE, Plaintiff requests this Court:

A. Enter judgment in favor of Plaintiff and against Defendant with respect to Plaintiff's claims;

B. Order Defendant to pay Plaintiff's costs and fees in the amount of $6.3 million plus any additional amounts proven at trial as provided in Section 330 (with interest thereon from the date of expenditure);

C. Order Defendant to pay Plaintiff's costs and fees in the amount of $6.3 million plus any additional amounts proven at trial arising from Defendant's breaches of the Deed Covenants (with interest thereon from the date of expenditure);

D. Order Defendant to pay all of Plaintiff's future costs and fees as provided in Section 330 and arising from Defendant's breaches of the Deed Covenants.

E. Award Plaintiff its costs incurred in litigating these claims, including expert witness fees and costs of investigation, reasonable attorneys' fees, and prejudgment, monetary, and post judgment interest at the maximum lawful rate;

F. Award such other and further relief which this Court deems just and equitable.

DATED this 27th day of January, 2006.

SHERMAN & HOWARD L.L.C.

By: ______________________
Durward E. Timmons
90 South Cascade Avenue, Suite 1500
Colorado Springs, CO 80903
Phone: 719-475-2440
Fax: 719-635-4576

Attorneys for Plaintiff




**EXHIBIT 1**

**00001**




**EXHIBIT 2**

**00002**

# COMPLIANCE ADVISORY

**In the Matter of the Former Lowry Air Force Base ("Lowry")**

**Issued By:**

**HAZARDOUS MATERIALS AND WASTE MANAGEMENT**
**and AIR POLLUTION CONTROL DIVISIONS**
**COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT**
**4300 CHERRY CREEK DRIVE SOUTH, DENVER, CO 80246-1530**

**Issued To:**

U.S. Air Force; Lowry Redevelopment Authority ("LRA"); and the following Lowry developers: Colorado Land Company; Decherd Custom Homes, LLC, GO Builders; Harvard Communities; Iris Building Group, Inc.; Latsis Custom Homes, LLC; Lowry Lifestyles, LLC; McStain Enterprises, Inc.; Metropolitan Homes; Paragon; Richmond American Homes; Touchstone Homes, LLC;Wall Custom Homes; Wiggs Custom Homes, LLC; and Writer Corporation.

(The above-named are hereinafter referred to collectively as (the " Recipients")

**DATE: April 24, 2003**

---

This Compliance Advisory, issued by the Colorado Department of Public Health and Environment, Hazardous Materials and Waste Management Division and the Air Pollution Control Division (the "Department") provides notice related to information obtained from a series of inspections and related communications during March and April 2003 conducted in the area bounded by 11th Avenue to the north, 8th Avenue to the south, Quebec Street to the west, and Uinta Way to the east (hereinafter, "the Northwest Neighborhood") at the former Lowry Air Force Base ("Lowry"). We advise you that the Department believes that present conditions in the Northwest Neighborhood present a threat to public health and the environment. Department personnel will review the facts established during the inspections and associated communications and documents, and this notice may be revised to include additions or clarifications as a result of that review.

Please be aware that you are responsible for complying with the State hazardous waste and air regulations and that there are substantial administrative and civil penalties for failing to do so. Section 25-15-309, C.R.S., of the Colorado Hazardous Waste Act ("Waste Act"), Sections 25-15-101 to 316, C.R.S., and the Colorado Hazardous Waste Regulations, 6 CCR 1007-3; and Section 25-7-115(3)(b), C.R.S., of the Air Quality Control Act ("Air Act"), sections 25-7-101 to 1309, C.R.S., and the Colorado Air Quality Control Commission Regulations, 5 C.C.R. 1001, authorize the Department to assess administrative penalties of up to $15,000.00 per day for violations of the Waste and Air Acts and final orders. The issuance of this Compliance Advisory does not limit or preclude the Department from pursuing its enforcement options concerning the inspections and related communications including issuance of a Compliance Order and assessment of penalties. Also, this Compliance Advisory does not constitute a bar to enforcement action for conditions that the inspector(s) did not observe or evaluate, or conditions found during future inspections of Lowry.

To avoid additional enforcement action or reduce the penalties described above you must either correct the deficiencies as outlined below, or you must demonstrate to the Department that the deficiencies are not violations of Colorado hazardous waste and/or air laws.

I. Lowry is an approximately 1866-acre site located in southeast Denver. From 1937 through September 1994, the United States Department of Defense used Lowry for multiple purposes, including an active Air Force base. Lowry Air Force base was formally closed in September 1994. In July 1995, the U.S. transferred ownership of approximately 758 acres of Lowry to the LRA. Since that time, the LRA has sold individual parcels and/or larger tracts or blocks to individual Lowry developers.

II. The Department has recently discovered asbestos contamination within soils at Lowry. To date, there have been at least twenty-three (23) discoveries of asbestos contamination in the Northwest Neighborhood. Upon

**EXHIBIT 3**

information and belief, recent construction activities (including excavation, soil grading, and landscaping) by the Recipients have resulted in some of the previously buried asbestos contamination being dug up, moved or otherwise handled, made airborne and deposited on the surface and subsurface soils in the Northwest Neighborhood.

**III.** Pursuant to its authority in §§ 25-15-301(4)(a), 25-7-112, and 25-7-113, C.R.S., the Department advises the Recipients to comply with all provisions of the following requirements:

A. __Excavation, Grading or Other Intrusive Activities.__ The Recipients are prohibited from engaging in any further excavation, grading or other intrusive activities that may result in the disturbance of the soil in the Northwest Neighborhood, and shall not resume such activities at Lowry without first receiving authorization to do so from the Department.

B. __Asbestos Emission Control Plan.__ The Recipients shall, within seven (7) calendar days of receipt of this Advisory, submit for Department review and approval a proposed Asbestos Emission Control Plan to: 1) adequately control generation of dust and other airborne pollutants during construction activities in the Northwest Neighborhood; 2) properly identify asbestos contamination that may be encountered during construction activities; and 3) properly manage and dispose of any asbestos contamination that is, or was previously, encountered during construction activities. The Asbestos Emission Control Plan must be sufficient to protect people and the environment from airborne asbestos.

C. __Lots Where Construction is Complete and Bare Soils Exist.__ The Recipients shall, within seven (7) calendar days of receipt of this Advisory, submit for Department review and approval a proposed Sampling Work Plan that provides a detailed description of how the Recipients will characterize the nature and extent of any asbestos contamination that may exist in any lot in the Northwest Neighborhood where construction is complete and bare soils exist. This plan shall include, but not be limited to, sampling locations, sampling depths, sampling and analytical methods, contaminants of concern, health and safety plans, schedules, and all measures that will be taken to eliminate the generation of dust and airborne asbestos.

D. __Lots or Areas Where Excavation, Grading or Construction Has Not Been Initiated or Completed.__ The Recipients shall, within twenty-one (21) calendar days of receipt of this Advisory, submit for Department review and approval a proposed Sampling Work Plan that provides a detailed description of how the Recipients will characterize the nature and extent of any asbestos contamination that may exist in any lot or area in the Northwest Neighborhood where excavation, grading or construction has not been initiated or completed. This plan shall include, but not be limited to, sampling locations, sampling depths, sampling and analytical methods, contaminants of concern, health and safety plans, schedules, and all measures that will be taken to eliminate the generation of dust and airborne asbestos

E. __Lots or Areas Which Have Been Covered (e.g. Landscaped, Sodded, or Paved).__ The Recipients shall, within twenty-one (21) calendar days of receipt of this Advisory, submit for Department review and approval proposed a Sampling Work Plan that provides a detailed description of how the Recipients will characterize the nature and extent of any asbestos contamination that may exist in any lot or area in the Northwest Neighborhood which has been covered (e.g. landscaped, sodded, or paved). This plans shall include, but not be limited to, sampling locations, sampling depths, sampling and analytical methods, contaminants of concern, health and safety plans, schedules, and all measures that will be taken to eliminate the generation of dust and airborne asbestos.

F. __Implementation of Sampling Work Plan.__ Within seven (7) calendar days of receipt of the Department's approval, or approval with modifications, the Recipients shall implement each Sampling Work Plan in accordance with the procedures and schedules set forth in that plan as approved or approved with modifications.

G. __Site Characterization Reports.__ The Recipients shall, within seven (7) calendar days of completion of the fieldwork described in the Sampling Work Plans, submit to the Department Site Characterization Reports that describes the extent of asbestos contamination found in the Northwest Neighborhood. In addition, the Site Characterization Reports shall include Response Plans, for Department review and approval, that include, but are not limited to, the following: a list of response alternatives considered by the Recipients to eliminate current and future exposures of asbestos to people and the environment; the Recipients' preferred response alternative(s); and health and safety plans, schedules, and all measures that will be taken to eliminate the generation of dust and airborne asbestos.

H. __Response Plans.__ Within fourteen (14) calendar days of receipt of the Department's approval, or approval with modifications, the Recipients shall implement the Response Plans in accordance with the procedures and schedules set forth in the Response Plans as approved or approved with modifications.

I. __Closeout Reports.__ The Recipients shall, within thirty (30) calendar days of completion of the

requirements of the Response Plans, submit to the Department Closeout Reports that describe all aspects of how the response actions were completed.

J. Additional Requirements. Nothing shall preclude the Department from imposing additional requirements in the event that new information is discovered that indicates such requirements are necessary to protect human health or the environment.

---

**To close out this Compliance Advisory, we encourage you to contact the Compliance Officer listed below.**

Jeff Edson, Unit Leader
Remediation and Restoration Unit
Hazardous Materials and Waste Management Division
Colorado Department of Public Health and Environment
4300 South Cherry Creek Drive South
Denver, Colorado 80246-1530
Tel: 303-692-3388

---

**Failure to respond in a timely fashion to this Compliance Advisory will be considered in any subsequent enforcement action and the assessment of administrative and/or civil penalties.**

# COMPLIANCE ADVISORY

**In the Matter of the Former Lowry Air Force Base ("Lowry")**

**Issued By:**

**HAZARDOUS MATERIALS AND WASTE MANAGEMENT**
**and AIR POLLUTION CONTROL DIVISIONS**
**COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT**
**4300 CHERRY CREEK DRIVE SOUTH, DENVER, CO 80246-1530**

**Issued To:**

United States Air Force; Lowry Redevelopment Authority ("LRA"); and the following Lowry developers/builders: Colorado Land Company; Farrelly Building Group; Harvard Communities; Iris Building Group, Inc.; Latsis Custom Homes, LLC; McStain Enterprises, Inc.; Metropolitan Homes; Richmond American Homes; Touchstone Homes, LLC; Wall Custom Homes; Wiggs Custom Homes, LLC; and Writer Corporation.

(The above-named are hereinafter referred to collectively as (the " Recipients")

Issue Date: April 30, 2003

---

This Compliance Advisory, issued by the Colorado Department of Public Health and Environment, Hazardous Materials and Waste Management Division and the Air Pollution Control Division (the "Department") provides notice related to information obtained from a series of inspections and related communications during March and April 2003 conducted in the area bounded by 11th Avenue to the north, 8th Avenue to the south, Quebec Street to the west, and Uinta Way to the east (hereinafter, "the Northwest Neighborhood") at the former Lowry Air Force Base ("Lowry"). This Compliance Advisory shall serve as an addendum to the Compliance Advisory originally issued to the above named Recipients on April 24, 2003. We advise you that the Department believes that present conditions in the Northwest Neighborhood present a threat to public health and the environment. Department personnel will review the facts established during the inspections and associated communications and documents, and this notice may be revised to include additions or clarifications as a result of that review.

Please be aware that you are responsible for complying with the State hazardous waste and air regulations and that there are substantial administrative and civil penalties for failing to do so. Section 25-15-309, C.R.S., of the Colorado Hazardous Waste Act ("Waste Act"), Sections 25-15-101 to 316, C.R.S., and the Colorado Hazardous Waste Regulations, 6 CCR 1007-3; and Section 25-7-115(3)(b), C.R.S., of the Air Quality Control Act ("Air Act"), sections 25-7-101 to 1309, C.R.S., and the Colorado Air Quality Control Commission Regulations, 5 C.C.R. 1001, authorize the Department to assess administrative penalties of up to $15,000.00 per day for violations of the Waste and Air Acts and final orders. The issuance of this Compliance Advisory does not limit or preclude the Department from pursuing its enforcement options concerning the inspections and related communications including issuance of a Compliance Order and assessment of penalties. Also, this Compliance Advisory does not constitute a bar to enforcement action for conditions that the inspector(s) did not observe or evaluate, or conditions found during future inspections of Lowry.

To avoid additional enforcement action or reduce the penalties described above you must either correct the deficiencies as outlined below, or you must demonstrate to the Department that the deficiencies are not violations of Colorado hazardous waste and/or air laws.

Pursuant to its authority in §§ 25-15-301(4)(a), 25-7-112, and 25-7-113, C.R.S., the Department advises the Recipients to comply with all requirements set forth in the April 24, 2003 Compliance Advisory, as well as the following requirements:

A. <u>Indoor Sampling Workplan.</u> No later than five (5) calendar days after receipt of this Compliance Advisory, the Recipients shall submit, for Department review and approval, a proposed Indoor Sampling Workplan to systematically assess and define the nature and the full extent of any indoor asbestos contamination in the homes and other structures in the northwest neighborhood. The Indoor Sampling Workplan shall include, at a minimum: sampling methodology (including collection of dust samples);

locations and numbers of samples; and name of laboratory and analytical methodology. The results of this Workplan will be used to determine whether asbestos contamination is present in homes and other structures in the northwest neighborhood. For homes or structures where asbestos contamination is determined to be present, the Recipients shall: 1) immediately (within 24 hours of receipt of the results) offer the resident(s) of those homes or other structures temporary relocations; and 2) within ten (10) calendar days of the relocation offer the Recipients shall report to the Department in writing which residences accept or decline the foregoing offer.

B. **Implementation of Indoor Sampling Workplan.** No later than three (3) calendar days (unless otherwise modified by the Department) after receipt of the Department's approval, or approval with modifications, the Recipients shall implement the Indoor Sampling Workplan described above in accordance with the procedures and schedules set forth in the plan as approved or approved with modifications.

C. **Indoor Site Characterization Report.** The Recipients shall, no later than five (5) calendar days (unless otherwise modified by the Department) after completion of the fieldwork described in the Indoor Sampling Workplan, submit to the Department an Indoor Site Characterization Report that describes the nature and extent of indoor asbestos contamination found in the northwest neighborhood. In addition, the Indoor Site Characterization Report shall include an Indoor Response Plan, for Department review and approval, that includes, but is not limited to, the following: a list of response alternatives considered by the Recipients to eliminate the current and future exposures of people to indoor asbestos; the Recipients' preferred response alternative(s); and health and safety plans, schedules, and all measures that will be taken to eliminate the generation of dust and airborne asbestos. The Indoor Response Plan for indoor asbestos contamination should comply with the major asbestos spill response requirements contained in 5 CCR 1001, Regulation 8, Section III.T.1 (unless granted, in writing, a variance from the Department) and a post-response indoor sampling plan.

D. **Implementation of Indoor Response Plan.** No later than three (3) calendar days (unless otherwise modified by the Department) after receipt of the Department's approval, or approval with modifications, the Recipients shall implement the Indoor Response Plan in accordance with the procedures and schedules set forth in the Indoor Response Plan as approved or approved with modifications.

E. **Indoor Closeout Report.** The Recipients shall, within thirty (30) calendar days of completion of the requirements of the Indoor Response Plan, submit to the Department an Indoor Closeout Report that describes all aspects of how the response actions were completed. The Indoor Closeout Report shall include post-response action indoor sampling results to ensure that the response actions that were taken protect human health and the environment.

F. **Additional Requirements.** Nothing shall preclude the Department from imposing additional requirements in the event that new information is discovered that indicates such requirements are necessary to protect human health or the environment.

---

**To close out this Compliance Advisory, we encourage you to contact the Compliance Officer listed below.**

Jeff Edson, Unit Leader
Remediation and Restoration Unit
Hazardous Materials and Waste Management Division
Colorado Department of Public Health and Environment
4300 South Cherry Creek Drive South
Denver, Colorado 80246-1530
Tel: 303-692-3388

---

**Failure to respond in a timely fashion to this Compliance Advisory will be considered in any subsequent enforcement action and the assessment of administrative and/or civil penalties.**

cc: H. Roitman, COPHE
D. Ouimette, APCD
M. Sheets, APCD
J. Sowinski, HMWMD
J. Edson, HMWMD
S. Gaston, HMWMD
C. Burns, APCD
G. Kaufman, CAGO
W. Allison, CAGO
J. Bendixen, DDEH
J. McCulley, EPA

Colorado Department of Public Health and Environment

# FACT SHEET

## *Asbestos and the Northwest Neighborhood at Lowry*

*May 2003*

### BACKGROUND

Asbestos-containing materials have been discovered in several locations in the northwest neighborhood. The northwest neighborhood is defined as those areas west of Uinta Way, north of 8th Avenue, east of Quebec and south of 11th Avenue.

The asbestos-containing materials appear to be related to a complex of Air Force buildings that were demolished between 1959 and 1979. Asbestos-containing debris includes old, discarded water pipes, steam pipes and insulation material.

**What Is Asbestos?**

- A group of naturally occurring fibrous minerals widely used in a variety of building materials prior to the 1980s.
- Uses included floor and ceiling tiles, texturing materials and thermal insulation.
- Still used in brakes, asphaltic roof coatings and gaskets.

### ASBESTOS EXPOSURE CONCERNS AT LOWRY

Asbestos-containing materials has been found in locations where construction is taking place, in areas where homes have been completed and residents reside, and in open blocks where little or no construction has taken place. These materials have been found both on the surface of the ground and in the subsurface.

Asbestos-containing materials found on the surface of the ground present a potential health risk to people working and living in the northwest neighborhood. If disturbed, microscopic fibers can become airborne. Asbestos fibers suspended in air are of most concern since they can be inhaled. If undisturbed, asbestos does not pose a threat to human health.

Asbestos-containing materials on the surface of the ground also present a health risk if ingested.

### HEALTH EFFECTS ASSOCIATED WITH ASBESTOS EXPOSURE

Asbestos is known to cause several human diseases. Scientists have not been able to determine the amount of asbestos exposure needed to cause disease, but it is believed that the risk of disease is related to the extent of exposure. In other words, the greater the exposure and the longer it lasts, the more likely a person is to contract an asbestos-related disease.

There are many factors that determine the potential effects of asbestos exposure. The most important of these factors are dose (how much), duration (how long), individual susceptibility (e.g. age, lifestyle and state of health) and the time elapsed since the initial exposure. Either heavy exposure for a short time or a lower level exposure over a longer period of time may result in asbestos-related disease. The goal is, therefore, to minimize one's exposure to asbestos.

There are three main diseases related to asbestos exposure. *Asbestosis* is a fibrotic scarring of the lungs, which prevents oxygen from passing through the lung tissue. A second is *mesothelioma*, a cancer of the lining of the chest or abdomen. The third is non-specific lung cancer. The risk of asbestos related lung cancer is greatly increased by smoking.

Typically, asbestos related diseases have a long latency period. The latency period is the time between the onset of the disease and when it is actually detected. With exposure to asbestos, symptoms may not appear for 15 to 40 years after exposure, or even longer.

EXHIBIT 4

There is no medical test to diagnose an acute exposure to low levels of asbestos, or its potential health effects.

**WHAT CAN I DO TO PROTECT MY FAMILY?**

There are practical things you can do to minimize the risk of exposure to asbestos if you live in the northwest neighborhood. Managing your activities and the movement of outdoor air into your home will help protect your family.

- Stay off areas of bare soil if possible. When entering and exiting your home, stay on pavement or ground covering such as grass, rock, wood chips or mulch. Keep children and pets off of bare soil.
- If you need to access uncovered areas of soil, be careful not to disturb the soil. If you must access such areas regularly, cover them with plywood, plastic, or hay; or wet them down slightly to prevent any fibers from being kicked up into the air.
- Inside your home, control the movement of outdoor air into your home. On calm days or when the soil is moist from recent precipitation, you can leave your windows open.
- On days of excessive wind or soil disturbance, close your windows. If you notice activities that are disturbing soil and creating dust, please call the Lowry Development Authority (LRA) at (303) 326-7103 and the Colorado Department of Public Health and Environment at (303) 692-3153.
- Do not allow your children or pets to ingest any pieces of debris or soil.

**WHAT ARE WE DOING TO ADDRESS THE PROBLEM?**

The Colorado Department of Public Health and Environment has made cleanup of this site a priority. The Department is working with the LRA, the U.S. Air Force, and the builders and developers in the northwest neighborhood to expeditiously define the extent of the asbestos contamination, and to address quickly any necessary cleanup.

Compliance advisories have been issued by the state to the LRA, the Air Force, and the builders and developers in the northwest neighborhood. These enforcement actions direct the recipients to undertake a number of actions and provide timetables for their completion. The first advisory prohibits excavation, grading and other intrusive activities. It addresses asbestos emission control and sampling plans for areas where construction is ongoing, where homes already exist and where lots have already been landscaped or covered. The advisory directs the recipients to prepare site characterization reports describing the extent of contamination, and response plans detailing how contamination will be cleaned up. The second advisory spells out the need for indoor testing for asbestos in homes.

**FOR MORE INFORMATION, PLEASE CONTACT:**

**Derek Boer**
Community Involvement Specialist
Hazardous Materials and Waste Management Division
Colorado Department of Public Health and Environment
Tel: (303) 692-3329
E-mail: Derek.Boer@state.co.us

**Christopher Dann**
Public Information Officer
Colorado Department of Public Health and Environment
Tel: (303) 692-3281
E-mail: Christopher.Dann@state.co.us

**Matt Christian**
Environmental Community Relations Specialist
Lowry Redevelopment Authority
Tel: (303) 326-7103
E-mail: mchristian@lraine.com

**The Colorado Department of Public Health and Environment's**
**Final Response Plan**
**In the Matter of the Former Lowry Air Force Base ("Lowry")**
**Northwest Neighborhood, North of 8th Avenue**

**Issued to:**

**Lowry Redevelopment Authority ("LRA"); Colorado Land Company; Harvard Communities; Iris Building Group; Latsis Custom Homes; McStain Enterprises, Inc.; Metropolitan Homes; Richmond American Homes; Touchstone Homes, LLC; Wall Custom Homes; Wiggs Custom Homes, LLC; Writer Corporation, and the United States Air Force**

**(Collectively referred to as the "Recipients")**

Date: Friday, August 15, 2003

This represents the Colorado Department of Public Health and Environment's (the "Department") Final Response Plan pursuant to Paragraph III G. of the April 24, 2003 Compliance Advisory. The Recipients shall implement the Final Response Plan, as described below, within twenty (20) calendar days of receipt.

## 1.0 BACKGROUND

This Final Response Plan is issued as part of Section III G. of a Compliance Advisory issued to the Recipients on Thursday, April 24, 2003, related to information obtained from a series of Department inspections and related communications during March and April 2003. The area of concern is defined as north of 8th Avenue, south of 11th Avenue, west of Uinta Way, and east of Quebec Street, also known as the northwest neighborhood ("NWN"). This Final Response Plan applies only to the NWN.

The April 24, 2003 and April 30, 2003 Compliance Advisories required the Recipients to, among other things, develop and implement; 1) an emission control plan to minimize future emissions of asbestos; 2) sampling plans to characterize the nature and extent of asbestos contamination in soils and indoors; and 3) response plans to eliminate potential current and future exposures of people and the environment from asbestos.

Based on information obtained by the Department, including the scope of asbestos contamination found within the NWN and the potential health risks associated with asbestos, the Department believes that the following actions are necessary to protect public health and the environment.

**EXHIBIT 5**

## 2.0 FUTURE SAMPLING

Soil sampling necessary to characterize asbestos contamination within the NWN has not been completed by the Recipients. In order to adequately characterize possible asbestos contamination in all lots within the NWN, the Recipients shall comply with the Final Sampling Work Plans. These plans include: "Lots Where Construction is Complete and Bare Soils Exist", "Lots or Areas Where Excavation. Grading or Construction Has Not Been Initiated or Completed", "Lots or Areas Which Have Been Covered (e.g. Landscaped, Sodded, or Paved)", and "Indoor Sampling Work Plan."

Some recipients have recently raised an issue relating to utility easements within front yards in the NWN. There could be risks associated with digging in utility easements, particularly if appropriate protocols are not followed. The Department is currently investigating this issue and may issue an addendum to the applicable sampling plans and this Final Response Plan, if appropriate.

## 3.0 FINAL RESPONSE PLAN

Within twenty (20) calendar days of receipt of this Final Response Plan, the Recipients shall implement the Response Plan in accordance with the procedures and schedules set forth below.

Implementation of this Final Response Plan is predicated upon consent of the property owner. Property owners that choose not to have this Final Response Plan implemented on their property will not be provided with a "No Further Action" letter, as described below, from the Department.

I. Lots Where Sampling and Analyses are Complete and No Detectable Levels of Asbestos is identified.

The Recipients shall provide the Department with all sampling data associated with these lots. Upon completion of its review and agreement with sampling data submitted, the Department will issue a "No Further Action" letter to the Recipient and the homeowner.

II. Lots Where Sampling and Analyses are Complete and Asbestos Contamination is Present in Surface and/or Subsurface Soils.

Prior to implementation of the Final Response Plan on a chosen lot, the Recipients shall notify the Department in writing and, upon request, provide the Department with all sampling data associated with the lot. The data will include a grid map depicting the specific location of all detections of asbestos in both the surface (including asbestos debris) and subsurface soils.

**Waste Handling:** If visible asbestos containing material ("ACM") is present, all friable debris/soil with greater than 1% asbestos content will be managed as ACM waste and disposed of at an approved asbestos waste landfill. All non-friable debris with greater

than 1% asbestos content, and all debris/soils with detectable but less than 1% asbestos content will be managed as a solid waste and disposed of at an approved solid waste landfill. Specific handling procedures are required to prevent airborne emissions of asbestos.

**Surface Contamination:** If a composited surface sample collected from a grid, as provided in the final Sampling Work Plan described above, shows the presence of asbestos fibers, with no detectable levels of asbestos in the subsurface of that grid, one (1) foot of surface soil will be removed from that entire grid. If the Recipient can demonstrate to the satisfaction of the Department that they have collected composited samples from six (6) inches and deeper and that the samples are negative for the presence of asbestos, then it is only necessary to remove six (6) inches of surface soil. The excavated area will then be backfilled with soils obtained from outside the NWN. Excavated soils will be managed and disposed of as per the Waste Handling paragraph above.

**Subsurface Contamination, Surface to Two Feet Below Ground Surface:** If a composited subsurface soil sample, as provided in one of the Final Sampling Work Plans described above, shows the presence of asbestos fibers, eighteen (18) inches of soil below the ground surface will be removed from that entire grid. If the Recipients encounter visible suspect asbestos at a depth of eighteen (18) inches within a grid in the course of sampling and/or remediation, then the Recipients shall remove all visible asbestos-containing material to a depth of twenty-four (24) inches of soil below the ground surface from that grid. The excavated area will then be backfilled with soils obtained from outside the NWN. Excavated soils will be managed and disposed of as per the Waste Handling paragraph above.

**Subsurface Contamination, Two Feet and Deeper Below Ground Surface:** If surface and subsurface sampling from a lot indicates the presence of asbestos only at depths greater than two (2) feet below ground surface, upon completion of its review and agreement with applicable data, the Department will issue a "No Further Action" letter to the Recipient and the homeowner.

All remediation and waste handling shall be done in accordance with Part B, Section III of the Air Quality Control Commission Regulation 8 to minimize the release of asbestos fibers during implementation of the Final Response Plan. The Department recommends that the contractors contact the Department's Asbestos Program staff for guidance on abatement procedures, including rule variances.

Nothing shall preclude the Department from imposing additional requirements in the event that new information is discovered that indicates that such requirements are necessary to protect human health or the environment or that the response was ineffective in protecting human health or the environment. The Department reserves the right to impose additional requirements in the event that a person (such as a homeowner, utility company or governmental entity) intends to dig, excavate, or conduct any other intrusive activity at a depth below two feet in any area in the NWN.

## 4.0 COMPLETION OF RESPONSE

Following completion of the excavation and backfilling of a particular lot, as described in the Final Response Plan, the Recipient shall provide the Department with a Closeout Report pursuant to Paragraph III. I. of the April 24, 2003 Compliance Advisory. This report will describe all aspects of how the response actions were completed in accordance with the Final Response Plan. Upon completion of its review and agreement with the report, the Department will issue a "No Further Action" letter to the Recipients and homeowner of that lot.

LOWRY

December 12, 2002

Albert F. Lowas, Jr.
Director Air Force Base Conversion Agency
1700 North Monroe Street, Suite 2300
Arlington, VA 22209-2802

Via Certified Mail and Facsimile

Re: Buried Asbestos in the EDC Property located in the Norwest Neighborhood of Lowry

Dear Mr. Lowas:

Recent construction activity in the Northwest Neighborhood of Lowry has uncovered buried asbestos containing materials. In particular, certain gas pipes buried in the Northwest Neighborhood are wrapped with a material that contains asbestos. Additionally, at least in three instances, buried asbestos containing material has been found in the soil anywhere from four inches to 3 feet down. Builders and the LRA are working with the Colorado Department of Public Health and Environment to properly remediate this material so there is no risk to public health and safety.

Sub-Section 13.3 of the Economic Development Conveyance Agreement between the Department of the Air Force and Lowry Redevelopment Authority reiterates the Air Force's obligation under Section 330 of the National Defense Authorization Act, 1993, P.L. 102-484, as amended. Although there are disclaimers by the Air Force in the EDC Agreement with respect to asbestos, the LRA does not believe the Air Force can contractually abrogate its responsibilities under Section 330. Furthermore, this asbestos was not found in buildings the LRA has demolished but is buried in the soil, which the LRA believes places additional responsibility on the U. S. Government for remediation under Section 120 of CERCLA. The purpose of this letter is to place the United States Government on notice of its Section 330 and Section 120 obligations with respect to this buried asbestos and to request your agency's position on complying with these responsibilities.

The location of this asbestos is in close proximity to new homes, many of which are inhabited or are in the process of being inhabited now. The situation requires that the LRA and its builders proceed with all due diligence to properly contain, remove and dispose of the asbestos so that there is no threat to the

555 UINTA WAY DENVER, COLORADO 80230 TEL 303.343.0276 FAX 303.343.3135 www.lowry.org

EXHIBIT 6

health, safety and well-being of the public. Therefore, your timely attention to this matter would be greatly appreciated.

Very truly yours,

Gregory F. Palcanis
Lowry Redevelopment Authority
General Counsel

Cc: Thomas O. Markham
Peter Nadel, Esq.

LOWRY

March 5, 2003

Douglas J. Heady, Esq.
AFRPA/LD
1700 N. Moore St., Suite 2300
Arlington, VA 22209

Dear Mr. Heady:

Thank you for your January 17, 2003 letter, which was in response to my December 12, 2002 letter. You have requested that I elaborate on the LRA's legal theories on why the Air Force is responsible for all costs associated with the remediation of asbestos in the soil. In my letter I alluded to the Air Force's responsibilities under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and Section 330 of the National Defense Authorization Act of 1993 ("Section 330"). The LRA is mindful of the fact that the Air Force lease, and some of the Air Force deeds, to the LRA contain provisions ostensibly requiring the LRA to remediate asbestos. However, this responsibility only pertains to asbestos found in buildings, not asbestos that is found in the ground, such as asbestos on buried pipes and in debris from structures demolished by the government.

The asbestos recently found in the ground at Lowry, from building debris and abandoned pipes, was released into the environment by the Air Force during its ownership of Lowry. This being the case, this asbestos is subject to the provisions of Section 120(h) of CERCLA and Section 330. Thus, the Air Force (i) has an affirmative obligation to remediate said asbestos under Section 120(h) of CERCLA, and (ii) is liable for damages incurred by the LRA as a result of the "release or threatened release" of this asbestos.

We do not believe the asbestos language in the above-referenced lease or deeds in any way diminishes Air Force liabilities as set forth above, for the following reasons:

1. The clear intent of the above-referenced deed and lease provisions is to cover asbestos contained in buildings, and not asbestos that was previously released into the environment and covered by CERCLA. The plain language of these provisions, the understandings of the parties in proposing and accepting these provisions, and the fact that these provisions are not contained in deeds for portions of the transferred property where no buildings are present, we believe confirm this intent. As you are aware, BRAC transfer documents utilized by all of

the Services contain asbestos and lead-based paint clauses with the intent of shifting the responsibility for asbestos and lead-based paint contained in or on existing buildings. Said materials are presumed by the Services not to be covered by CERCLA (although EPA certainly contends that lead in soil is covered by CERCLA).

2. We do not believe the Air Force has the authority to, by contract, shift its affirmative responsibilities under Section 120(h) of CERCLA or Section 330 to a future owner or user of property transferred at a closing installation.

As stated above, the FOSTs and deeds for the parcels on which there were no improvements existing at the time of transfer to the LRA contain no requirement that the LRA remediate asbestos. However, these documents contain the language required under Section 120(h) of CERCLA obligating the Air Force to conduct any additional remedial action found necessary after the date of transfer, and Section 330 Indemnification language. Thus, the Air Force has not attempted, and has shown no intent even to try , to shift by contract its CERCLA and Section 330 liability for released asbestos on these parcels, (even if it legally could do so, which the LRA disputes).

Going further, only the FOSTs and deeds for parcels with buildings on them at the time of conveyance to the LRA contain language attempting to transfer responsibility for asbestos abatement. Moreover, there is no disclosure in any document of demolished buildings or abandoned pipes that contain asbestos. The Air Force knew or should have known that there were many buildings that contained asbestos which were demolished at Lowry before the LRA ever took possession of the EDC Property. Also, the Air Force knew, or should have known, that there were abandoned underground pipes that contained asbestos. Even if it were legally permissible, the LRA did not intend, and did not contractually agree to assume CERCLA liability for asbestos wastes released into the environment by the Air Force that were undisclosed to the LRA and unknown by it to exist.

Over the past five years the LRA has spent approximately one million dollars in preparing properties for sale where asbestos was found on pipes and in the soil. With the current situation existing in the Northwest Neighborhood, that number could exceed three million dollars. The Air Force's site manager, Mr. Lackey, has been aware of the problem and of the steps taken by the LRA and its builders to remediate the asbestos so development could continue in a timely manner. One of our builders has already spent in excess of $500,000.00 remediating asbestos in soil, and has now informed the LRA that the State of Colorado is going to require enclosed remediation of the remainder of the asbestos, which will cost upwards of $900,000.00. Mr. Lackey was invited to attend a meeting on Monday, March 3, 2003 with the LRA, the builder and various environmental contractors to discuss this new development but has

declined the invitation. The LRA encouraged Mr. Lackey to attend this meeting and bring any other Governmental personnel he felt might be necessary.

The LRA and its builders must move forward and remediate the asbestos in a manner that is acceptable to the State. There are many residents already living in close proximity to the area and more will be moving in across the street in the coming weeks. The LRA and builders will demand reimbursement from the Air Force and Department of Defense for all costs associated with asbestos found in the soil and therefore, encourage the Government's participation in upcoming meetings. Mr. Knisely has copies of FOSTs and deeds, which illustrate the LRA's position as stated above, and will be in contact with you shortly.

Very truly yours,

Gregory F. Paicanis
General Counsel

Cc: Tom Markham
David Knisely, Esq.
Peter Nadel, Esq.
Bob Lackey

LOWRY

May 28, 2003

Albert F. Lowas, Jr., Director
Air Force Real Property Agency
1700 North Moore Street
Suite 2300
Arlington, VA 22209-2892

VIA FACSIMILE AND U. S. MAIL

RE: Asbestos Release, Lowry Air Force Base, Denver and Aurora Colorado ("Lowry")

Dear Mr. Lowas,

As you are aware, asbestos has been found in soil, abandoned pipes and other demolition debris associated with former Air Force activities at Lowry ("Asbestos Release") in portions of the Northwest Neighborhood (the "Northwest Neighborhood") at Lowry. By correspondence dated 12/17/02, 3/5/03, and a binder of information dated 3/25/03, as supplemented, the Lowry Redevelopment Authority ("LRA") has given the Air Force Real Property Agency detailed information concerning the Asbestos Release in the Northwest Neighborhood. As set forth in the above-referenced correspondence and binder, we believe the Air Force is responsible for undertaking and completing all remediation and response actions required by applicable law and regulation as a result of the Asbestos Release, and all damages associated therewith, under both Section 120 (h) of the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Sec. 9620(h)) ("CERCLA"), and the covenants granted thereunder, and Section 330 of the National Defense Authorization Act for Fiscal Year 1993 ("Section 330") .

As you are also aware, a Compliance Advisory dated April 24, 2003, as amended by Compliance Advisory dated April 30, 2003 (collectively the "Compliance Advisory"), regarding the Asbestos Release was issued by the Colorado Department of Public Health and Environment ("CDPHE") to the LRA, builders in the Northwest Neighborhood (the "Builders") and the Air Force. Immediate action has been taken by LRA and the Builders as required under the Compliance Advisory in order to ensure the ongoing protection of public health and the environment. These actions have included, without limitation, ceasing all

C:\WINDOWS\Desktop\#292147 v1 - Lowas letter.doc

construction and development in the Northwest Neighborhood that in any way involves the disturbance of the soil, preparing and commencing to conduct a sampling plan responsive to the Compliance Advisory, providing information to the press, Air Force, Lowry residents and prospective purchasers of property at Lowry concerning the Asbestos Release and preparing and implementing a comprehensive builder, resident and general public relations program to deal with the concerns and questions caused by the Asbestos Release. We believe the Air Force has the primary responsibility to undertake, complete and pay for all actions required under the Compliance Advisory. Although the Air Force has participated in discussions regarding a response to the Compliance Advisory, the LRA and each of the Builders are being forced to undertake parallel yet separate responses This has led to significant costs, including consulting and attorneys' fees, for the LRA and the Builders, for which, we believe, the Air Force is ultimately responsible.

In order to ensure continuing compliance with the Compliance Advisory in the most cost effective manner possible, the LRA proposes that one of the following options be undertaken:

1. The Air Force immediately assume complete responsibility for continued compliance with the Compliance Advisory, and reimburse LRA and the Builders for all costs and damages incurred by LRA and the Builders to date and in the future related to the Asbestos Release, including all of the LRA and the Builders' costs for compliance activities under the Compliance Advisory. We are confident that the LRA and the Builders will cooperate with the Air Force so that any transition issues are properly dealt with.

2. The Air Force immediately provide funding to the LRA, through the amendment of the existing Cooperative Agreement between the Air Force and the LRA, or through some other mutually acceptable funding mechanism, for (i) all costs and damages incurred by the LRA and the Builders in responding to the Asbestos Release, including, without limitation, all costs incurred in their responses to the Compliance Advisory, (ii) all future costs that will be incurred by the LRA and the Builders in completing all actions required by the Compliance Advisory and applicable law in dealing with the Asbestos Release, and (iii) all costs as may be required to mitigate damages caused by the Asbestos Release.

We believe the second option is the most prudent option to undertake and the LRA is prepared to proceed with the Air Force to implement this option. Having received a draft cooperative agreement from Air Force counsel, we assume the Air Force would like to pursue this second option, and we will respond immediately.

Whatever option is ultimately chosen by the Air Force, time is of the essence. It is critical that one of these options be implemented with all due speed to avoid jeopardy to human health and the environment, to mitigate any damages from the

Asbestos Release, to avoid any further environmental enforcement proceedings, and to take all actions necessary to timely and fully respond to the Compliance Advisory in a consistent and cost-effective manner.

Please be advised that the LRA and the Builders will continue with their current actions to fully respond to the requirements of the Compliance Advisory. We are aware that the Air Force has been in regular contact with the CDPHE concerning these matters and we invite the Air Force to consult with LRA staff and advisors prior to and as these actions are being taken. Current actions that are planned by LRA and the Builders are as set forth in the responses to the Compliance Advisory, copies of which have been furnished to the Air Force.

In order to assist the Air Force in considering the above options, set forth in attachment 1 hereto is a breakdown of LRA and the Builders' costs incurred to date, and a projection of future costs. Please be advised that the costs included in attachment 1 are not all-inclusive, are based on the best information now available and will be supplemented by the LRA and builders as appropriate. Furthermore, the provision of this preliminary cost information should not be construed as in any way limiting the amount of costs and/or claims that may be asserted in the future.

If the Air Force decides to not select either of the above options, the LRA and, we anticipate, the Builders, will continue their compliance activities under the Compliance Advisory, and pursue their rights under CERCLA and Section 330.

Please be advised that claims under Section 330 from the LRA and from homeowners, Builders, and the others could be substantial as a result of the Asbestos Release. Nothing in this correspondence is intended in any way to compromise or settle the rights of the LRA or others under Section 330.

We look forward to your prompt response to this correspondence. We are committed to working with the Air Force in a cooperative manner to ensure the Asbestos Release is dealt with in a swift and comprehensive manner.

Sincerely,

Thomas O. Markham

Thomas O. Markham
Executive Director

Cc. David Knisely, Esq.
[redacted]
Builders and Counsel
Colorado Congressional Delegation

C:\WINDOWS\Desktop\W392147 v1 - Lowas letter.doc

# ATTACHMENT I - Actual Costs

## LRA Expenditures on Asbestos in Soil
from March 25, 2003 through May 23, 2003

| VENDOR | | COST |
|---|---|---|
| EEM Consulting - Waterlines | | 961.20 |
| EEM Consulting - McStain | | 1,439.64 |
| Parsons ES | | 580.88 |
| McStain | | 200,000.00 |
| Environmental Demolition, Inc. | | 5,335.00 |
| EEM Consulting | | 2,884.72 |
| TN & Associates, Inc. - Matt Christian (through May 9) | | 7,821.30 |
| PR Consulting | | 15,837.50 |
| **Subtotal:** | **$** | **234,860.24** |

## Builder Expenditures
from March 25, 2003 through May 23, 2003

| BUILDER | | COST |
|---|---|---|
| Touchstone Homes | | 3,206.18 |
| Metropolitan Homes | | 25,510.00 |
| Wiggs Custom Homes | | 4,080.00 |
| Writer Homes | | 40,000.00 |
| Richmond American Homes | | 54,092.56 |
| McStain Enterprises, Inc. | | 63,677.53 |
| **Subtotal:** | **$** | **190,566.27** |

**LRA and Builder Totals:* $ 425,426.51**

*Subject to adjustments based on a) expenditures incurred but not yet billed, b) compilation of employees time, and c) other costs that may be incurred due to CDPHE requirements

# ATTACHMENT I - Anticipated Costs

## Builder Anticipated Expenditures

| BUILDER | COSTS* |
|---|---|
| Richmond American Homes | $ 465,593.00 |
| Writer Homes | $692/day for delayed closings<br>$200/day for carrying cost for lots<br>$3000-5000/month for temporary housing costs for delayed closings |
| McStain Enterprises | $ 570,000.00 |
| Metropolitan Homes | $21,000/month for delay and carrying costs<br>$16,000 remarketing costs<br>$10,000/lot for indoor and outdoor testing (54 lots) |
| Harvard Communities | $12,000 for environmental testing |

*These figures are estimates and will vary depending on CDPHE requirements, actual costs, sales that may be lost, length of delays and other costs incurred as a result of the Asbestos Release. The LRA and other builders will also have future costs that will be added.

# ATTACHMENT II - LRA Costs

## LRA Expenditures on Asbestos in Soil
### from March 25, 2003 through June 2, 2003

| VENDOR | | COST |
|---|---|---|
| EEM Consulting - Waterlines | | 961.20 |
| EEM Consulting - McStain | | 1,439.64 |
| Parsons ES | | 580.88 |
| McStain | | 251,104.53 |
| Environmental Demolition, Inc. | | 5,335.00 |
| EEM Consulting | | 2,884.72 |
| TN & Associates, Inc. - Matt Christian (through May 9) | | 7,821.30 |
| PR Consulting | | 15,837.50 |
| Gorsuch Kirgis LLP (through April, 2003) | | 9,000.00 |
| **Subtotal*:** | **$** | **294,964.77** |

## LRA Expected Expenditures

| VENDOR | | COST |
|---|---|---|
| McStain | | 248,895.47 |
| EEM - Sampling 50 lots @ $8,000 per lot | | 400,000.00 |
| Gorsuch Kirgis LLP | | 60,000.00 |
| Other Legal and Consulting Fees | | 100,000.00 |
| **Subtotal**:** | **$** | **808,895.47** |

**TOTAL LRA COSTS: $ 1,103,860.24**

*Subject to adjustments based on a) expenditures incurred but not yet billed, b) compilation of employees time, and c) other costs that may be incurred due to CDPHE requirements.

**Based on current expectations and subject to CDPHE requirements for any necessary remediation. Does not include potential litigation fees, costs and expenses. Subject to change.

F

GORSUCH KIRGIS LLP
ATTORNEYS AT LAW

TOWER 1, SUITE 1000 | 1515 ARAPAHOE STREET | DENVER, COLORADO 80202 | TELEPHONE (303) 376-5000 | FACSIMILE (303) 376-5001

PETER R. NADEL DIRECT DIAL (303) 376-5015
email pnadel@gorsuch.com

June 5, 2003

*VIA FEDERAL EXPRESS*

Donald Rumsfeld, Secretary
United States Department of Defense
1000 Defense, The Pentagon
Washington, D.C. 20301-1000

Re: Asbestos Release, Former Lowry Air Force Base, Colorado ("Lowry"). **Notice of Claim Under Section 330 of the National Defense Authorization** Act for Fiscal Year 1993, Pub. L. 102-484, Div. A, Title III, § 330 (Oct. 23, 1992), as amended, Pub. L. 103-60, Div. A, Title X, § 1002 (Nov. 30, 1993)("Section 330").

Dear Secretary Rumsfeld:

This firm represents the Lowry Redevelopment Authority ("LRA"), which is responsible for redevelopment and reuse of the former Lowry Air Force Base in Colorado ("Lowry"). The purpose of this letter is to notify you of our claim that the United States Department of Defense ("DOD") is obligated to hold harmless, defend and indemnify the LRA in full from and against all demands, claims, suits, actions, liabilities, judgments, costs, fees for property damage, personal injury and other losses (including economic losses) arising from former DOD activities at Lowry pursuant to Section 330.

Asbestos has been found in soil, abandoned pipes and other demolition debris associated with former Air Force activities in portions of Lowry known as the Northwest Neighborhood ("Asbestos Release"). The LRA gave the Air Force detailed information concerning the Asbestos Release by correspondence dated 12/17/02, 3/5/03, and a binder of information dated 3/25/03 (as supplemented). Consistent with this correspondence, we have informed the Air Force that we believe it is responsible for undertaking and completing all investigations, response and/or corrective actions, and remediation required by applicable law and regulations as a result of the Asbestos Release, and for paying all associated damages, pursuant to the liability provisions of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §9607, and the covenants ("Covenants") granted under Section 120(h) of CERCLA. A copy of our notice to the Air Force is included in the enclosed Attachment 1 for your information.

The Colorado Department of Public Health and the Environment ("CDPHE") issued Compliance Advisories dated April 24 & 30, 2003 (collectively "Compliance Advisory"), to the LRA, builders in the Northwest Neighborhood (the "Builders") and the Air Force regarding the Asbestos Release. The Air Force took no action to address the Compliance Advisory. By necessity, the LRA and the Builders took immediate action as required by the Compliance Advisory in order to ensure the ongoing protection of public health and the environment. These actions have included, without limitation: (a) delaying construction and development in the Northwest Neighborhood that in any way involves the disturbance of the soil; (b) preparing and currently implementing emissions control plans responsive to the Compliance Advisory; (c) preparing and implementing a comprehensive public relations program to deal with the concerns and questions caused by the Asbestos Release; (d) negotiating and undertaking soil and air sampling plans in compliance with the Compliance Advisory; and (e) negotiating and undertaking remediation plans to deal with the Asbestos Release.

The DOD is obligated, under Section 330, to hold harmless, defend and indemnify the LRA as a transferee of property at a military installation closed, as was Lowry, pursuant to a base closure law. We hereby demand that the DOD defend the LRA against the Compliance Advisory and any other demands, claims, suits or actions that may arise from the Asbestos Release. We also hereby demand that the DOD indemnify LRA and hold it harmless from all related past and future response, corrective action and other costs, fees (including without limitation consultants' and attorneys' fees), expenses, personal injury, property damage, and other damages and losses (including but not limited to economic losses).

Because the Air Force has failed to act, the LRA and each of the Builders are being forced to undertake parallel yet separate responses. This has led to significant costs, including without limitation investigation costs, consultants' and attorneys' fees, and anticipated remediation expenses, for which the DOD is responsible. Consistent with Section 330, we demand that the Air Force reimburse the LRA for all such costs and damages incurred to date and in the future related to the Asbestos Release. We will cooperate with the DOD in addressing this matter.

As you will see in our notice letter to the Air Force, we have suggested that the most expeditious way to handle a portion of the obligations and liabilities of DOD resulting from the Asbestos Release would be for the Air Force immediately to provide funds to the LRA, through amendment of the existing Cooperative Agreement between

the Air Force and the LRA, or through some other mutually acceptable funding mechanism, for: (i) all costs and damages incurred by the LRA and the Builders in responding to the Asbestos Release, including, without limitation, all costs incurred in their responses to the Compliance Advisory; (ii) all future costs that will be incurred by the LRA and the Builders in completing all actions required by the Compliance Advisory and applicable law in dealing with the Asbestos Release; and (iii) all costs as may be required to mitigate or otherwise cover damages caused by the Asbestos Release. Discussions about this are underway between the Air Force and the LRA. Any delay by the Air Force in responding to the Asbestos Release is highly likely to increase the costs for which the LRA and the Builders will be entitled to indemnity.

As we have emphasized with the Air Force, time is of the essence. It is critical that DOD and the Air Force take action with all due speed to avoid jeopardy to human health and the environment, to mitigate any damages from the Asbestos Release, to avoid any further environmental enforcement proceedings, and to timely and fully respond to the Compliance Advisory in a consistent and cost-effective manner.

Please be advised that until and unless the DOD and the Air Force act to observe their obligations, we will continue our current actions to fully respond to the requirements of the Compliance Advisory. We invite you to consult with us as we do so. All pertinent papers related to this matter that we have received, including the Compliance Advisory, Guidance Document on Initial Soil Characterization, and final sampling and work plans (in once case the latest draft), are contained in the enclosed Attachment 1.

In addition, we have enclosed in Attachment 2 a breakdown of our incurred and projected costs. Please be advised that these costs are not all- inclusive, are based on the best information now available, and will be supplemented as appropriate. Furthermore, the provision of this preliminary cost information should not be construed as in any way limiting the amount of costs and/or claims that may be asserted in the future. Unfortunately, we expect the claims to be substantial as a result of economic losses and other damages arising from the Asbestos Release.

We have notified the Air Force that if it continues its inaction, we will pursue our rights under the Covenants and CERCLA.

We look forward to your prompt response. At your request, we will provide access to our records and personnel as necessary for the purpose of defending or settling this matter. We are committed to working cooperatively with the DOD and the Air Force to ensure a swift, comprehensive and final resolution of all issues related to the Asbestos Release.

Very truly yours,

GORSUCH KIRGIS LLP

Peter R. Nadel

Enclosures

cc: (w/partial encl.)

President George W. Bush
Vice-President Dick Cheney
Governor Bill Owens
Hon. Wayne Allard
Hon. Ben Nighthorse Campbell
Hon. Joel Hefley
Hon. Scott McInnis
Hon. Tom Tancredo
Hon. Robert Beauprez
Hon. Marilyn Musgrave
Hon. Mark Udall
Hon. Diana DeGette
John Ashcroft, United States Attorney General
Administrator Christine Todd Whitman, EPA
Executive Director Douglas H. Benevento, CDPHE
Executive Director Thomas Markham, LRA
Gregory Palcanis, Esq.

bcc: (w/partial enclosures)

Jonathan Steeler, Esq.
Mark Mathews, Esq.
Wayne Foreman, Esq.
Ronald Loser, Esq.
Brian Magoon, Esq.
Michael Browning, Esq.
David Knisely, Esq.

GORSUCH KIRGIS LLP
ATTORNEYS AT LAW

TOWER I, SUITE 1000 | 1515 ARAPAHOE STREET | DENVER, COLORADO 80202 | TELEPHONE (303) 376-5000 | FACSIMILE (303) 376-5001

PETER R. NADEL DIRECT DIAL (303) 376-5015
email: pnadel@gorsuch.com

August 22, 2003

**VIA CERTIFIED MAIL (RETURN RECEIPT) AND FEDERAL EXPRESS**

The Honorable Donald H. Rumsfeld
Secretary of Defense
United States Department of Defense
1000 Defense, The Pentagon
Washington, D.C. 20301-1000

Re: Claim Under Section 330 of the National Defense Authorization Act for Fiscal Year 1993, Pub. L. 102-484, Div. A, Title III, § 330 (Oct. 23, 1992), as amended, Pub. L. 103-60, Div. A, Title X, § 1002 (Nov. 30, 1993) ("Section 330")

Dear Secretary Rumsfeld:

The Lowry Redevelopment Authority ("LRA") is responsible for redevelopment and reuse of the former Lowry Air Force Base in Denver, Colorado ("Lowry"). This letter follows a letter that I sent to you on June 5, 2003, demanding that the United States Department of Defense ("DOD") hold harmless, defend, and indemnify the LRA against any suit, claim, demand, or action, liability, judgment, cost, or other fee arising from past DOD activities at Lowry.

As set forth in that previous letter, asbestos was found in soil, abandoned pipes, and other demolition debris resulting from United States Air Force activities in portions of Lowry's Northwest Neighborhood. The LRA provided detailed information concerning this asbestos release to the Air Force by correspondence dated December 17, 2002, and March 5, 2003. LRA further provided the Air Force a binder of information dated March 25, 2003, and subsequently supplemented and updated this information.

On April 24, 2003, the Colorado Department of Public Health and Environment ("CDPHE") issued a Compliance Advisory to LRA, home builders in the Northwest Neighborhood (collectively the "Builders"), and the Air Force regarding the asbestos release. On April 30, 2003, CDPHE supplemented this action by issuing a second Compliance Advisory to the same entities.

The Air Force took no action in response to these Compliance Advisories. By necessity, the LRA and the Builders took immediate action as required by the Compliance Advisories in order to protect public health and the environment and avoid further enforcement actions. These actions included, without limitation: (a) delaying construction and development in the Northwest Neighborhood in order to prevent disturbance of the soil, (b) preparing and implementing emissions control plans responsive to the Compliance Advisories, (c) preparing and implementing a comprehensive public relations program addressing concerns caused by the asbestos release, and (d) undertaking soil and air sampling plans as required by the Compliance Advisories. Failure to take such actions would have subjected the LRA to liability and penalties under CDPHE's Civil and Administrative Enforcement Policy.

CDPHE has now issued a Final Response Plan and a final Asbestos Projects Variance Request Form determining the method of clean up (collectively, the "Final Remediation Plan"). CDPHE issued this plan after conducting public hearings on the Final Response Plan, which included the recipients of the Compliance Advisory, the public, and the regulators. After hearing from these various groups, CDPHE reached the conclusions in the Final Remediation Plan. Copies of the Final Response Plan issued Friday, August 15, 2003, and the final Asbestos Projects Variance Request Form issued Thursday, August 14,2003, are enclosed for your records. The LRA must comply with the mandates of these documents. Failure to comply would subject the LRA to a determination that it is a significant non-complier under CDPHE's Civil and Administrative Enforcement Response Policy and to daily penalties under the Penalty Policy.

We previously notified you in writing that we believe the DOD is obligated under Section 330 to hold harmless, defend, and indemnify the LRA against any suit, claim, demand, action, liability, judgment, cost, or other fee arising from past DOD activities at Lowry. Section 330 states that in any case where DOD may be obligated to make indemnification payments, the Secretary of Defense may settle or defend the claim on behalf of the person to whom indemnification is due. National Defense Authorization Act for Fiscal Year 1993, Pub. L. 102-484, Div. A, Title 111, § 330(2) (Oct. 23, 1992), as amended, Pub.L. 103-60, Div. A, Title X, § 1002 (Nov. 30, 1993). The LRA has been prepared to cooperate with DOD in any such settlement or defense since the beginning of this case. DOD has declined to take any such action to date. The LRA remains willing to cooperate with DOD in any reasonable fashion. Time, however, is of the essence. In order to avoid further enforcement action and significant economic loss, thereby increasing the sums for which DOD is responsible under Section 330, the LRA has no choice but to comply fully and completely with CDPHE's demands. The LRA intends to do just that unless DOD takes over responsibility for complying with this Final Response Plan. Accordingly, if DOD is to satisfy its obligations under Section 330, immediate action is required.

We look forward to your prompt response. We remain committed to working cooperatively with DOD and the Air Force to ensure a swift, comprehensive, and final resolution of all issues related to the asbestos release. However, unless the LRA receives written confirmation by August 29, 2003 that DOD is assuming the responsibility to settle or defend the CDPHE proceedings, the LRA will have no alternative but to assume DOD acquiesces to its position, proceed with compliance activities, and pursue a reimbursement claim against DOD under Section 330.

Very truly yours,

GORSUCH KIRGIS LLP

Peter R. Nadel

cc (w/encl): President George W. Bush
Vice President Richard B. Cheney
Secretary James G. Roche
John Ashcroft, United States Attorney General
Governor Bill Owens
U.S. Senator Wayne Allard
U.S. Representative Robert Beauprez
U.S. Senator Ben Nighthorse Campbell
U.S. Representative Diana DeGette
U.S. Representative Joel Hefley
U.S. Representative Scott McInnis
U.S. Representative Marilyn Musgrave
U.S. Representative Tom Tancredo
U.S. Representative Mark Udall
Acting Administrator Marianne Lamont Horinko, U.S. EPA
Executive Director Douglas Benevento, CDPHE
Executive Director Thomas Markham, LRA
Gregory Palcanis, Esq.

GORSUCH KIRGIS LLP

ATTORNEYS AT LAW

TOWER 1, SUITE 1000 | 1515 ARAPAHOE STREET | DENVER, COLORADO 80202 | TELEPHONE (303) 376-5000 | FACSIMILE (303) 376-5001

PETER R. NADEL DIRECT DIAL (303) 376-5015

email: pnadel@gorsuch.com

October 30, 2003

**VIA CERTIFIED MAIL NO. 7002 0460 0002 8095 4180**

The Honorable Donald H. Rumsfeld
Secretary of Defense
United States Department of Defense
1000 Defense, The Pentagon
Washington, D.C. 20301-1000

Re: Notice of Claim and Request for Defense/Indemnification Under Section 330 of the National Defense Authorization Act for Fiscal Year 1993, Pub. L. 102-484, Div. A, Title III, § 330 (Oct. 23,1992), as amended, Pub. L. 103-60, Div. A, Title X, § 1002 (Nov. 30, 1993) ("Section 330")

Dear Secretary Rumsfeld:

This firm represents the Lowry Redevelopment Authority ("LRA"), which is responsible for redevelopment and reuse of the former Lowry Air Force Base in Denver, Colorado ("Lowry"). This letter is for the purpose of notifying you about, and requesting defense and indemnification for, several potential claims against the LRA by homeowners at Lowry.

I have enclosed nine separate notices under Colorado's Governmental Immunity Act that the LRA has received from homeowners in Lowry's Northwest Neighborhood. The homeowners' claims arise from the presence of asbestos in the soil. As was described in my previous letters to you dated June 5 and August 22, 2003, the asbestos found in the soil at Lowry is from past Air Force operations. The LRA provided detailed information concerning this asbestos release to the Air Force by correspondence dated December 17, 2002, and March 5, 2003. LRA further provided the Air Force a binder of information dated March 25, 2003, and subsequently supplemented and updated this information.

The United States Department of Defense ("DOD") is obligated under Section 330 of Public Law 102-484, as amended, to hold harmless, defend, and indemnify the LRA against any suit, claim, demand, action, liability, judgment, cost, or other fee arising from past DOD activities at Lowry. Section 330 states that in any case where DOD may be obligated to make indemnification payments, the Secretary of Defense may settle or defend the claim on behalf of the person to whom indemnification is due. See National Defense Authorization Act for Fiscal Year 1993, Pub. L. 102-484, Div. A, Title III, § 330(2) (Oct. 23, 1992), as amended,

Pub.L. 103-60, Div. A, Title X, § 1002 (Nov. 30, 1993). The LRA is prepared to cooperate with DOD in any such settlement or defense of the homeowner claims.

Please acknowledge the DOD's acceptance of the defense of the homeowners' claims by November 15, 2003. In particular, we request that you designate and advise us of a contact person within the DOD who will assume responsibility for defense of the homeowner claims and with whom we can correspond concerning developments. We remain committed to working cooperatively with the DOD and the Air Force to ensure a swift, comprehensive, and final resolution of all claims and issues related to the asbestos release.

Very truly yours,

GORSUCH KIRGIS LLP

Peter R. Nadel

cc (w/enc): William J. Haynes II, General Counsel, United States Department of Defense
Secretary James G. Roche, United States Air Force
Laurence Soybel, Chief, General Litigation Division, United States Air Force
John Ashcroft, United States Attorney General
Governor Bill Owens
U.S. Senator Wayne Allard
U.S. Representative Robert Beauprez
U.S. Senator Ben Nighthorse Campbell
U.S. Representative Diana DeGette
U.S. Representative Joel Hefley
U.S. Representative Scott McInnis
U.S. Representative Marilyn Musgrave
U.S. Representative Tom Tancredo
U.S. Representative Mark Udall
Executive Director Douglas Benevento, CDPHE
Executive Director Thomas Markham, LRA
Gregory Palcanis, Esq.

bcc: Jonathan Steeler, Esq.
Mark Mathews, Esq.
Wayne Foreman, Esq.
Ronald Loser, Esq.
Brian Magoon, Esq.
Michael Browning, Esq.
David Knisely, Esq.

# LOWRY

December 22, 2003

***Via Certified Mail and Facsimile***

Mr. Albert F. Lowas, Jr.
AFRPA/DR
1700 North Moore Street
Suite 2300
Arlington, VA 22209-2802

Re: Portion of ROD Parcel L (SW of Building 670); FOST 19d

Dear Mr. Lowas:

The LRA has been negotiating since April of this year with a builder to purchase 1.8 acres of land in the area of Lowry subject to the Colorado Department of Public Health and Environment's Compliance Advisories for asbestos contamination. The land in question is located on the northwest side of Building 667 and just to the south of the child care center in ROD Parcel L. We have not been able to complete the contract because of the Compliance Advisories.

The LRA has just completed its testing of the site for asbestos and has found that there is friable asbestos contained in construction or demolition debris in the subsurface. Due to the fact that no development has taken place on this site since it was deeded to the LRA, it is clear that the contaminated debris was located on the site before the Air Force deeded it to the LRA.

In order for the contract with the builder to go forward and for this site to be developed in accordance with the Reuse Plan, the asbestos needs to be remediated. The Air Force is responsible to remediate this asbestos in accordance with the covenants contained in the deed pursuant to CERCLA section 120(h), as well as pursuant to section 107 of CERCLA. The LRA demands that the Air Force remediate the site in a timely manner or that it advance the necessary funds to the LRA for the remediation. EDI Colorado, Inc. has estimated that the cost to remediate will be approximately $800,000.00.

The builder has completed its due diligence for the site. The plat and planned building group will be completed in about one month. at which time the builder plans to start construction. We therefore request the Air Force's timely response, no later than January 9, 2004, to our demand to remediate or fund the remediation of the site.

Very truly yours,

Gregory F. Palcanis
General Counsel

Cc: Tom Markham
Peter Nadel, Esq.

# LOWRY

December 29, 2003

*VIA Certified Mail*

Donald Rumsfeld, Secretary
United States Department of Defense
1000 Defense, The Pentagon
Washington, D.C. 20301-1000

Re: Asbestos Release, Former Lowry Air Force Base, Colorado ("Lowry"). **Notice of Claim Under Section 330** of the National Defense Authorization Act for Fiscal Year 1993, Pub. L. 102-484, Div. A, Title III, § 330 (Oct. 23, 1992), as amended, Pub. L. 103-60, Div. A, Title X, § 1002 (Nov. 30, 1993)("Section 330").

Dear Secretary Rumsfeld:

On June 5, 2003 the LRA sent you a letter regarding an Asbestos Release at Lowry, a copy of which is enclosed for your reference. Unless defined otherwise herein, all capitalized terms set forth herein have the same definition ascribed to them in the June 5th letter. In that letter, the LRA gave notice to you of the LRA's claim against DOD resulting from the Asbestos Release.

On December 22, 2003, the LRA gave notice to the Air Force of the resent discovery of asbestos found in soil and demolition debris which is considered part of the Asbestos Release. A copy of the LRA's December 22, 3003 letter detailing the discovery is enclosed for your records. The Air Force has responded to the LRA's letter and has indicated that it will investigate the site in a timely manner and take any necessary response actions under CERCLA. As referenced in the LRA's June 5, 2003 letter, CDPHE has issued two Compliance Advisories for the Northwest Neighborhood which the LRA is required to comply with. To the extent that the Air Force's response actions, if any, do not comply with CDPHE requirements, the LRA will be compelled to perform any additional remediation required by CDPHE. Consistent with Section 330, the LRA demands that the Air Force reimburse it for all costs and damages it has

555 UINTA WAY DENVER COLORADO 80220 TEL 303 343.0276 FAX 303.343.9135 www.lowry.org

incurred to date and in the future related to the new asbestos discovery detailed in the enclosed December 22nd letter.

To the extent they are applicable to the current asbestos discovery, the LRA incorporates by reference all of the demands and provisions of its letter to you of June 5, 2003. I look forward to your prompt response.

Very truly yours,

Gregory F. Palcanis
General Counsel

Enclosures

cc: (w/enclosures)

President George W. Bush
Vice-President Dick Cheney
Governor Bill Owens
Hon. Wayne Allard
Hon. Ben Nighthorse Campbell
Hon. Joel Hefley
Hon. Scott McInnis
Hon. Tom Tancredo
Hon. Robert Beauprez
Hon. Marilyn Musgrave
Hon. Mark Udall
Hon. Diana DeGette
John Ashcroft, United States Attorney General
Administrator Christine Todd Whitman, EPA
Executive Director Douglas H. Benevento, CDPHE
Executive Director Thomas Markham, LRA
Peter Nadel, Esq.

**DEPARTMENT OF THE AIR FORCE**
**AIR FORCE LEGAL SERVICES AGENCY**

November 18, 2004

AFLSA/JACE
1501 Wilson Blvd., Suite 629
Arlington, VA 2209-2403

Peter R. Nadel, Esq.
Gorsuch Kirgis LLP
Tower I, Suite 1000
1515 Arapahoe Street
Denver, Co 80202

RE: Claims Against the United States Air Force by the Lowry Redevelopment Agency

Dear Mr. Nadel

The Air Force appreciates the time you have taken to explain your claims and the documentation you've submitted. After conferring with the appropriate personnel within the Air Force and reviewing the facts and circumstances surrounding your claims, along with the information you have provided, I am able to make the following two offers to settle part of your claims against the Air Force concerning the former Lowry Air Force Base in Colorado.

**Settlement Offer 1**

Pursuant to an agreement between the Lowry Economic Redevelopment Authority (LRA) and McStain Enterprises, Inc., dated April 1, 2003, dealing with past and future remediation work on, among others, Filing 11, Block 11 (commonly referred to as the "Big Dig"), the LRA paid McStain $500,000. The Air Force offers to reimburse the LRA for this $500,000 payment to McStain. The relevant definitions and language that we would require in settlement documents should this offer be accepted would be substantially as follows:

"The Site" means lots 16, 17, 18, and 19 of Block 11, Filing 11, in the Northwest Neighborhood of the former Lowry Air Force Base.

"Covered Matters" means any and all claims for Response Costs, breach of CERCLA Covenants, or past or future claims that were, could now, or could in the future be asserted by the LRA under CERCLA against the United States arising out of or in connection with the LRA's payment(s) to McStain, in addition to attorney's fees and pre-judgement interest.

<u>Covenant Not To Sue By The LRA.</u> As of the effective date of this Agreement, the LRA hereby forever discharges, covenants not to sue, and agrees not to assert any claims or causes of action against the United States for Covered Matters.

<u>Covenant Not To Sue By McStain.</u> It is the responsibility of the LRA to obtain from McStain an agreement that hereby forever discharges, covenants not to sue, and agrees

This communication is subject to the settlement privilege and is confidential between the United States and the Lowry Economic Redevelopment Authority (LRA).

not to assert any claims or causes of action against the United States for Covered Matters. Such agreement would be obtained in advance of any payment under this agreement.

Protection Against Claims. The Parties acknowledge and agree that the payment to be made by the United States pursuant to Paragraph __ of this Agreement, and which the LRA has agreed to accept, represents a good faith compromise of the disputed claims related to the Site and that the compromise represents a fair, reasonable, and equitable discharge for Covered Matters. With regard to any claims against the United States for Covered Matters under or addressed in this Agreement, the Parties agree that the United States is entitled to, as of the Effective Date of this Agreement, contribution protection pursuant to section 113(f)(1) of CERCLA, 42 U.S.C. § 9613 (f)(1), and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the United States' liability for Covered Matters to persons not party to this agreement.

**Settlement Offer 2**

It is our understanding that the LRA paid Wiggs Custom Homes (Wiggs) a total of $40,681 for the past and future remediation work on Filing 11, Block 8, lot 15 in the Northwest Neighborhood of the former Lowry Air Force Base. This work addressed remediation done in advance of the April 2003 Compliance Advisories, and specifically dealt with an underground seam of construction debris containing asbestos. The Air Force offers to reimburse the LRA for this $40,681 payment to Wiggs. The relevant definitions and language that we would require in settlement documents should this offer be accepted would be substantially as follows:

"The Site" means lot 15, Block 8, Filing 11, in the Northwest Neighborhood of the former Lowry Air Force Base.

"Covered Matters" means any and all claims for Response Costs, breach of CERCLA Covenants, or past or future claims that were, could now, or could in the future be asserted by the LRA under CERCLA against the United States arising out of or in connection with the LRA's payment(s) to Wiggs, in addition to attorney's fees and pre-judgement interest.

Covenant Not To Sue By The LRA. As of the effective date of this Agreement, the LRA hereby forever discharges, covenants not to sue, and agrees not to assert any claims or causes of action against the United States for Covered Matters.

Covenant Not To Sue By Wiggs. It is the responsibility of the LRA to obtain from Wiggs an agreement that hereby forever discharges, covenants not to sue, and agrees not to assert any claims or causes of action against the United States for Covered Matters. Such agreement would be obtained in advance of any payment under this agreement.

Protection Against Claims. The Parties acknowledge and agree that the payment to be made by the United States pursuant to Paragraph __ of this Agreement, and which the LRA has agreed to accept, represents a good faith compromise of the disputed claims related to the Site and that the compromise represents a fair, reasonable, and equitable

discharge for Covered Matters. With regard to any claims against the United States for Covered Matters under or addressed in this Agreement, the Parties agree that the United States is entitled to, as of the Effective Date of this Agreement, contribution protection pursuant to section 113(f)(1) of CERCLA, 42 U.S.C. § 9613 (f)(1), and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the United States' liability for Covered Matters to persons not party to this agreement.

You may accept either settlement offer independent of the other or both of them together. After reviewing all the information you provided in support of your additional remediation costs, along with information obtained from Air Force personnel associated with the Lowry redevelopment, and conferring with our client, we have reached the conclusion that we will not offer to settle the remainder of your claims (except as outlined above) brought pursuant to 42 U.S.C. § 9613(f)(1) and 42 U.S.C. § 9620(h).

The offers outlined above do not include any reimbursement based on the claim made by your client pursuant to Section 330 of the National Defense Authorization Act for Fiscal Year 1993 ("§ 330 claims"). As discussed previously, those claims will be addressed by the Office of the Secretary of Defense. The documentation you provided relating to your § 330 claims has been forwarded to the Office of the General Counsel, Department of Defense, for appropriate action.

The two settlement options outlined above represent the Air Force's assessment of costs reasonably due to the LRA. We recognize that you must discuss these settlement offers with your client; therefore, these offers of settlement will expire on November 30, 2004. Should you choose to accept one, or both, of the above-described offers, we will recommend approval of the settlement by the Department of Justice. We would expect payment of the settlement amount to be made promptly thereafter.

Sincerely

David R. Vecera

DAVID R. VECERA
Attorney
Environmental Law and Litigation Division

DEPARTMENT OF DEFENSE
OFFICE OF GENERAL COUNSEL
1600 DEFENSE PENTAGON
WASHINGTON, DC 20301-1600

December 1, 2005

Mr. Thomas O. Markham
Executive Director
Lowry Redevelopment Authority
555 Uinta Way
Denver, CO 80230

Dear Mr. Markham:

This is a final decision on the Lowry Redevelopment Authority's (LRA) request for indemnification under section 330 of the National Defense Authorization Act for Fiscal Year 1993, Pub. L. 102-484, as amended. The request is contained in a series of letters from the LRA, directly or through its attorneys, dated May 28, 2003; June 5, 2003; August 22, 2003; October 30, 2003; December 29, 2003; and October 7, 2005. The request for indemnification is based on costs relating to allegations of contamination by asbestos on property at the former Lowry Air Force Base (AFB) transferred from the United States to the LRA.

I have reviewed those letters and associated documentation. The request for indemnification can reasonably be divided into two separate categories: (1) a payment by the LRA of approximately $540,000 to McStain Enterprises, Inc., and Wiggs Custom Homes for expenses those companies incurred at the former Lowry AFB; and, (2) the remainder of the LRA's expenditures that were made directly by the LRA to comply with two Compliance Advisories, dated April 24 and 30, 2003, respectively, issued by the Colorado Department of Public Health and Environment (CDPHE).

It is my understanding that the LRA and the United States have entered into a separate agreement to reimburse the LRA the approximately $540,000 paid by it to McStain Enterprises, Inc., and Wiggs Custom Homes and that the LRA has received that payment; consequently, I consider that portion of the section 330 request for indemnification as settled and I will not address it further here.

Regarding the remainder of the requested indemnification, it is the determination of the Department of Defense that the LRA's request is not eligible for indemnification under section 330. I reach this conclusion because section 330(a)(1) explicitly requires certain predicates of a request for indemnification, including that the request be based on a "...suit, claim, demand or action, liability, judgment, cost or other fee arising out of **any claim** for personal injury or property damage..." (emphasis added). Section 330 clearly provides for the possible indemnification of claims made against the LRA by others, not for reimbursement of expenses for actions the LRA has undertaken itself, such as those of

the remainder of the requested indemnification. There is no indication that the remainder of the requested indemnification is the result of a claim against the LRA from another entity. I have considered the LRA's assertion in your counsel's letter to me of October 7, 2005, that the two Compliance Advisories are in the nature of such a claim because they directed the LRA to take certain actions the LRA believed necessary to protect the public health, mitigate damages, and avoid further enforcement action by CDPHE. While the Compliance Advisories perhaps may be considered as a "...claim, demand or action..." as your counsel's letter asserts (I express no opinion on that matter), the Compliance Advisories clearly do not qualify as a "...claim for personal injury or property damages..." as the remainder of section 330(a)(1) requires. Actions taken by the LRA in response to the Compliance Advisories do not qualify for indemnification under section 330.

I take this action pursuant to a delegation of authority by the Secretary of Defense through the General Counsel of the Department of Defense. This constitutes a final action on the LRA's request for reimbursement pursuant to subsection (b)(1) of section 330. It does not constitute action on any claim by the LRA outside of section 330; any other such claim or claims will be addressed through those processes established for their resolution.

To the extent you believe I have misinterpreted the facts upon which this decision is based, you may seek reconsideration of this decision by filing a request to that effect within 45 days of receipt of this letter. Any such request for reconsideration should be addressed to me and specify which facts you believe have been misinterpreted. Such reconsideration will not extend to determinations concerning the law, except as they may have been applied to the facts. For future reference, I have designated this request for indemnification as #OSD-330-002.

If you have any questions relating to this matter, please do not hesitate to contact Mr. Philip Sheuerman of my office at 703-692-2287.

Sincerely,

James G. Van Ness
Acting Deputy General Counsel
Environment and Installations

Cc: Mr. D. Timmons