IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOWRY ECONOMIC REDEVELOPMENT AUTHORITY, | ) | |
| Plaintiff, | ) | No. 06-75 C (Judge Wheeler) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

Pursuant to Rules 19(a) and 7.2(b) of the Court's Rules ("RCFC"), defendant, the United States, respectfully submits this consolidated reply to the responses of plaintiffs in Richmond American Homes v. United States, Consolid. No. 05-280C, and the Lowry Economic Redevelopment Authority ("LRA"), plaintiff in No. 06-75C, to the Government's motion to join the LRA as a plaintiff in each of the lawsuits consolidated in No. 05-280C.

PRELIMINARY STATEMENT

We demonstrated in our motion that each and every "CERCLA deed covenant"[1] upon which any of the Richmond American Homes plaintiffs bases a claim of breach, must also be one of the covenants upon which the LRA bases its breach claim, given that the developers in Richmond American Homes took title to property at the former Lowry Air Force Base in Denver, Colorado, from the LRA. Def. Mot. 2; see LRA Compl. ¶ 20; RAH Compl. ¶¶ 25-28. The Richmond American Homes plaintiffs possess standing to sue the United States under the CERCLA deed covenants only because they are in privity of title with the LRA, which acquired the real property from the United States under the deeds in question. (The developers have now resold their parcels to homeowners.)

[1] See Comprehensive Environmental Response, Compensation and Liability Act of 1978, 42 U.S.C. § 9620(h)(3)(A)(ii)(I), (II).

Because, as we discuss further below, the deed covenants create contractual obligations, all of these "Lowry lawsuits" involve the same "contracts" (the covenants) and the same "property" (the developers' parcels at Lowry) and are, therefore, directly related under RCFC 40.2(a)(1). All of the Lowry plaintiffs, moreover, seek breach damages arising, entirely or in part, from the identical series of asbestos "compliance advisories" issued by Colorado environmental regulators. See LRA Compl. ¶¶ 32-37; RAH Compl. ¶¶ 43-52. Indeed, the two complaints are more than just similar: They closely parallel one another in format, subject headings, and text, with minor variations. Accordingly, RCFC 19(a) requires joinder of the LRA as a plaintiff in each of the other individual lawsuits, in order to allow complete relief among the parties and to avoid the risk of inconsistent adjudications of the breach claims. Def. Mot. 4-6. Alternatively, all of the Lowry lawsuits should be consolidated for briefing purposes. Id. at 6-7.

The LRA and the group of Richmond American Homes plaintiffs each filed separate, but similar, briefs opposing our motion. (The LRA does not oppose consolidation of the cases for purposes of briefing dispositive motions. LRA Opp. 7.) The Government is filing this consolidated reply because each opposition brief was filed, either as a brief or as an attachment, in both dockets. We focus below upon plaintiffs' decisive legal and factual errors, which are readily identified. Plaintiffs identify no grounds upon which to deny our motion.

## ARGUMENT

1. Both opposition briefs raise procedural objections, which point in opposite directions. The LRA argues that our motion is "premature," in that joinder allegedly should have been addressed in the joint preliminary status report in No. 06-75C. LRA Opp. 2-3. The Richmond American Homes plaintiffs argue, by contrast, that we should have filed the motion "at the

outset" in No. 05-280C, in response to their March 2005 complaint. RAH Opp. 3. Given these diverging arguments, it is unsurprising that neither brief cites any authority mandating a particular time for filing a joinder motion. The Government's motion is not untimely.

In retrospect, we recognize that it would have been more convenient for the parties and the Court to have addressed the joinder issue earlier. The timing of our motion is chiefly explained by the facts that (i) the Government has, to date, rarely encountered claims filed under the Tucker Act alleging breaches of covenants running with land, and (ii) defendant's litigation counsel had anticipated that the LRA's related administrative claims under section 330 of the National Defense Authorization Act of 1993, 10 U.S.C. § 2687 note, which the LRA filed with the Department of Defense in June 2003, see LRA Compl. ¶¶ 42-44,[2] would be resolved sooner than they were, and that, as a result, the LRA would file suit sooner than it did. (The Defense Department denied the LRA's section 330 claims by letter dated December 1, 2005. See id. ¶ 45.) However, arguments concerning potential inconvenience to the parties and the Court are simply not part of the analysis when joinder of a party is mandatory under RCFC 19(a), as it is here. See, e.g., 7 Federal Practice and Procedure § 1604 (3d ed. 2001).

The objection, raised by the Richmond American Homes plaintiffs, that the judge presiding over the LRA's lawsuit lacks "jurisdiction" to enter the necessary joinder order, and that we should have filed the motion in No. 05-280C in the first instance, arguably may have more force. RAH Opp. 3. However, we placed the motion before the Court in both cases precisely in order to request both of the assigned judges to consider how these interrelated cases should be

---

[2] The Government has no record of the LRA's having filed a section 330 claim in 2002, as alleged in the LRA's complaint.

handled. Any potential error in the captioning of the motion or the notice is harmless.[3] As previously noted, the procedural complexity originates, in large part, from the LRA's failure to file with its complaint a notice of directly related case under RCFC 40.2.

The Richmond American Homes plaintiffs point out that the Court has ruled under RCFC 20 and 21 that their claims were improperly joined in a single complaint. RAH Opp. 6. We noted this in the motion. Def. Mot. 3. We also explained, however, that we are not seeking to "rejoin" the Richmond American Homes plaintiffs, but to join the LRA, under RCFC 19(a), to each of the developers' individual lawsuits, which are consolidated in No. 05-280C.

2. With respect to the merits of the motion, the fundamental error in both opposition briefs is plaintiffs' failure to recognize that deed covenants are contracts. We did not anticipate that this settled legal principle would require citation of authority. See Deterding v. United States, 107 Ct. Cl. 656, 69 F. Supp. 214, 216 (1947) ("We think that the relation between the plaintiff and the United States, in relation to their respective rights in the land in question, is a conventional or contractual relation, within the meaning of our jurisdictional statute . . . ."); Coggeshall Dev. Corp. v. United States, 23 Cl. Ct. 739, 743 (1991); 25 Williston on Contracts § 67.71 (4th ed. 1990). The LRA is patently mistaken in asserting that "[t]he only contracts between Defendant and the LRA are the Economic Development Conveyance Agreement . . ., the Offer to Purchase Real Property and Acceptance . . .[,] and various lease[s] . . . ." LRA Opp. 6. The deed covenants alleged in paragraphs 65-68 of the LRA's complaints are contracts – and

[3] We filed the notice in Richmond American Homes on Wednesday, May 3, 2006, but had previously served it by mail on Friday, April 28, 2006. PACER refutes the developers' assertion that this Court did not receive the filing "until May 8, 2006." RAH Opp. 2. Plaintiffs in Richmond American Homes were not prejudiced, in any event, since neither the RCFC nor the Court established a deadline for responding to the notice.

they are central to the LRA's lawsuit. Some or all of those same deed covenants, moreover, are necessarily the identical covenants relied upon by the Richmond American Homes plaintiffs, which took title from the LRA. Compare LRA Compl. ¶¶ 65-68 with RAH Compl. ¶¶ 75-81.

Similarly, given that the Richmond American Homes plaintiffs properly admit that "both Plaintiffs and LRA assert breach of the same deed covenants," RAH Opp. 6, their conclusory assertion that their lawsuits and the LRA's lawsuit do not "involve the same contract[s]" is self-evidently wrong. Id. at 9. The Richmond American Homes plaintiffs further argue that their breach claims "are based on the fact that the deed covenants, not the entire contract, run with the land to the benefit of Plaintiffs." Id. We frankly do not understand what "entire contract" plaintiffs may be referring to, and no citation is provided. Whatever distinction plaintiffs may be attempting to draw is immaterial, in any event, because the LRA bases its contractual indemnification claim solely upon the deed covenants, as do the Richmond American Homes plaintiffs, and not upon any other agreement or "entire contract." See LRA Compl. ¶¶ 65-68.

3. Plaintiffs' fundamental misunderstanding of the contractual nature of the covenants infects and invalidates their arguments that (i) the LRA's lawsuit is not directly related to each developer's lawsuit, because the claims allegedly do not involve the same "contract" or "property," LRA Opp. 5-6; RAH Opp. 8-9; (ii) there is no risk that a judgment in one of the Lowry lawsuits could operate as res judicata for issues in another lawsuit, RAH Opp. 5-6; and (iii) there is no risk of inconsistent judicial constructions of the Lowry deed covenants. LRA Opp. 5; RAH Opp. 5-6. To the contrary, as we demonstrated, the breach claim of each individual Richmond American Homes plaintiff necessarily rests upon at least one, if not more, of the identical deed contracts which the LRA alleges have been breached. Moreover, all of the breach

claims involve, in part, the same series of "compliance advisories" from the State of Colorado. Def. Mot. 2-3. Consequently, all of the risks emphasized by RCFC 19 exist. Id. at 5-6.

Indeed, neither opposition brief denies that "a contracting party is the paradigm of an indispensable party" under Rule 19 in litigation involving the contract. Traveler's Indem. Co. v. Household Intl., Inc., 775 F. Supp. 518, 527 (D. Conn. 1991). The granular factual distinctions among the breach claims, emphasized in both opposition briefs, are irrelevant. See RAH Opp. 7-8; LRA Opp. 6-7. We had no reason to argue in our motion, and we did not argue, that all of the Lowry plaintiffs' breach claims are factually identical, or that the plaintiffs seek recovery of the identical costs. Joinder is required, rather, because the lawsuits involve the identical contractual documents, as well as substantially overlapping factual claims and defenses.

The Richmond American Homes plaintiffs argue that our demonstration of the risk of inconsistent adjudications is "completely disingenuous," in that "[i]f Defendant was truly concerned about inconsistent judgments on legal issues common to all § 330 claims, it should have . . . asked this Court to consolidate" all of these Lowry cases with American International Specialty Lines Insurance Co. v. United States, No. 05-1020C (Judge Sweeney) ("AISLIC"). RAH Opp. 5-6. However: (i) we have not argued that plaintiffs' section 330 claims – as distinct from their claims under the deed covenants – pose a risk of inconsistent adjudications within the meaning of RCFC 19(a), and (ii) AISLIC, which involves the removal of a termiticide from soil at a former Naval Air Station in California, shares no common questions of fact with the Lowry cases, and only abstract questions of law. It is difficult to see any basis for consolidating AISLIC with these cases. By contrast, the direct relationship between the LRA's lawsuit and the lawsuit

of each Lowry developer, described in our motion and above, is obvious, and requires joinder of the LRA as a plaintiff in the lawsuit of each developer. See RCFC 19(a).

4. Assuming joinder is not ordered, the LRA does not oppose consolidating all of the Lowry cases for the purpose of briefing motions relating to "the proper statutory interpretation and application of Section 330" under these circumstances. LRA Opp. 7. The Richmond American Homes plaintiffs argue, by contrast, that consolidation "would only serve to confuse the issues," by "subjecting LRA to allegations based on facts developed in Plaintiffs' case . . . ." RAH Opp. 9-10. This supposed concern – which the LRA itself apparently does not share – is unfounded, given the nature of the motion the Government intends to file.

The Government's dispositive (or partially dispositive) statutory arguments are essentially legal. They arguably can be resolved under RCFC 12(b)(6), although, out of caution, we expect to request partial summary judgment as an alternative remedy. Section 330 of the 1993 defense budget authorizing legislation, entitled "Indemnification of Transferees of Closing Defense Property," provides in part:

> (a) IN GENERAL.– (1) Except as provided in paragraph (3) and subject to subsection (b), the Secretary of Defense shall hold harmless, defend, and indemnify in full the persons and entities described in paragraph (2) from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance or pollutant or contaminant as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.
>
> (2) The persons and entities described in this paragraph are the following:

> (A) Any State (including any officer, agent, or employee of the State) that acquires ownership or control of any facility at a military installation (or any portion thereof) described in paragraph (1).
>
> (B) Any political subdivision of a State (including any officer, agent, or employee of the State) that acquires such ownership or control.
>
> (C) Any other person or entity that acquires such ownership or control.
>
> (D) Any successor, assignee, transferee, lender, or lessee of a person or entity described in subparagraphs (A) through (C).
>
> (3) To the extent the persons and entities described in paragraph (2) contributed to any such release or threatened release, paragraph (1) shall not apply. . . .

10 U.S.C. § 2687 note.

The principal issues we intend to brief are (i) whether the cleanup costs allegedly incurred by plaintiffs at Lowry as a result of compliance advisories issued by the Colorado Department of Public Health and the Environment constitute recoverable costs "arising out of any claim" within the meaning of section 330(a); (ii) assuming the costs sought to be recovered arose out of a "claim," whether the claim was "for . . . property damage," within the meaning of section 330(a); and (iii) assuming the damages arose out of a claim for property damage, whether the claim was "in any manner predicated upon the release or threatened release of any hazardous substance or pollutant or contaminant," as section 330(a) requires. There is also a pure damages issue that may be appropriate for resolution on motions: namely, whether, assuming plaintiffs are entitled to recover under either section 330 or the CERCLA deed covenants, damages are unavailable to

the extent the nature and costs of the soil remediation they performed at Lowry were not, and/or would not have been, mandated by CERCLA, as opposed to some other alleged source of law.

None of these issues of entitlement requires substantial factual background or development. Indeed, since plaintiffs attached the Colorado compliance advisories to their complaints in both dockets, the compliance advisories constitute part of the pleadings pursuant to RCFC 10(c), and we could advance our statutory liability arguments, in either case, based upon the pleadings alone. See, e.g., Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42 (2d Cir. 1991); Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 949-50 (6th Cir. 1990) ("[T]he language of the Plan, and the arguable meanings of its terms, were central to the plaintiffs' complaint, and were part of the pleadings before the district court."); Haskell v. Time, Inc., 857 F. Supp. 1392, 1397-98 (E.D. Cal. 1994). Because all of the section 330 claims seek relief under the same statute, for costs arising, to the extent relevant to our motion, from the same series of events, we would not expect plaintiffs or the Court to become confused.

5. In sum, RCFC 19(a) requires joinder, as we have requested. In the absence of joinder, consolidated briefing of dispositive motions during the summer of 2006 would be the most efficient use of the parties' and the Court's resources. Plaintiffs fundamentally misapprehend the nature of their breach claims and raise no valid counterarguments.

## CONCLUSION

For the reasons given above, we respectfully renew our request that the Court grant our motion for joinder or, in the alternative, consolidation.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/
DAVID M. COHEN
Director

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

DAVID R. VECERA
Environmental Attorney
Air Force Legal Services Agency
Environmental Law and Litigation Division

Arlington, VA

May 24, 2006

CERTIFICATE OF FILING

I certify that on May 24, 2006, the foregoing motion was filed electronically. Service is complete upon filing and parties may access this filing through the Court's system.

s/Kyle Chadwick