# In the United States Court of Federal Claims

No. 06-75L

(Filed: June 13, 2006)

| | | |
|---|---|---|
| ************************************ | * | |
| | * | |
| LOWRY ECONOMIC REDEVELOPMENT AUTHORITY, | * | |
| | * | |
| | * | Motion for Joinder (RCFC 19(a)); |
| Plaintiff, | * | Motion for Consolidation (RCFC |
| | * | 40.2); Necessary Party; Complete |
| v. | * | Relief; Inconsistent Obligations; |
| | * | Judicial Economy. |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| ************************************ | * | |

*Durward E. Timmons*, Sherman & Howard L.L.C., Colorado Springs, Colorado, for Plaintiff.

*Kyle Chadwick*, with whom were *Peter D. Keisler*, Assistant Attorney General, and *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

**OPINION AND ORDER ON DEFENDANT'S MOTION FOR JOINDER OR CONSOLIDATION**

WHEELER, Judge.

Before the Court is Defendant's April 25, 2006 motion under Rule 19(a) of the United States Court of Federal Claims ("RCFC") for joinder of the claims of the Plaintiff, Lowry Economic Redevelopment Authority ("LRA"), with the claims of four plaintiffs whose cases are consolidated under the lead case of Richmond American Homes of Colorado, Inc. v.

United States, No. 05-280C ("Richmond")[1], pending before Judge Lawrence M. Baskir. In the alternative, Defendant requests that this case be consolidated with the Richmond cases as a "directly related case" under RCFC 40.2(a). Defendant filed its motion in this case, and provided a notice of its filing in the consolidated Richmond cases. Both the LRA and the four Richmond plaintiffs oppose Defendant's motion. The plaintiffs in Lowry and Richmond do not have the same counsel, and the cases currently are at materially different stages.

## Background

The Lowry and Richmond cases arise from the alleged failure of the Department of Defense and the United States Air Force to fulfill their obligations under Section 330 of the National Defense Authorization Act for 1993, and for breaching deed covenants made pursuant to Section 120(h) of the Comprehensive Environmental Responsibility Act ("CERCLA"), 42 U.S.C. § 9620(h). Plaintiffs acquired property at the former Lowry Air Force Base ("LAFB"), located in Denver and Aurora, Colorado, and claim that the property contained certain hazardous substances as a result of Defendant's historic activities there. Plaintiffs claim damages for the costs of investigating and removing the hazardous substances, as well as lost profits and other economic losses.

Preliminarily, the Court observes that Defendant's motion, while not technically untimely under the Court's rules, comes at an advanced stage in the Richmond litigation. The intention of the rules is for the moving party to present the joinder issue at the earliest possible stage of litigation.[2] As the LRA has noted, Defendant could have raised joinder as a defense in its Answer in the Richmond cases by filing a motion under RCFC 12(b)(7), or by raising its concerns in the Joint Preliminary Status Report filed in Richmond. (LRA Opposition at 3). At present, the parties in Richmond have completed discovery, and have agreed to a briefing schedule under which the first brief is due June 30, 2006. (Defendant's Motion at 7). In contrast, Lowry is at a much earlier stage. The Joint Preliminary Status Report has just recently been filed, but no discovery has yet occurred. By waiting until now to assert that the LRA should be joined with the Richmond plaintiffs, Defendant has created a case management issue where either the Richmond plaintiffs would be delayed while

---

[1] In addition to Richmond American Homes, the other plaintiffs in the Richmond case are: Touchstone Homes, LLC; Metropolitan Development IV, LLC; and Standard Pacific of Colorado, Inc.

[2] See, e.g., JTG of Nashville, Inc. v. Rhythm Band, Inc., 693 F.Supp. 623, 626 (M.D.Tenn. 1988) (discussing the importance of conducting the "balancing" test under Federal Rule of Civil Procedure 19 "early in the litigation process.").

Lowry catches up, or Lowry would be unfairly accelerated to meet an impending briefing schedule in Richmond.

Second, the Court notes that Defendant has filed its motion in the wrong case. The undersigned, presiding over the Lowry case, cannot require the presiding judge in Richmond to add the LRA as a plaintiff in each of those cases.

Finally, even if Defendant had filed its motion on a timely basis and in the proper case, the Court is not convinced that the circumstances requiring joinder pursuant to RCFC 19(a) are present here.

## DISCUSSION

### A. Joinder Under Rule 19(a)

RCFC 19 "does not mandate that all claims relating to an action be resolved in one proceeding." J.G.B. Enterprises, Inc. v. United States, 57 Fed. Cl. 415, 417 (2003) (citing Community Health Care Ass'n of New York v. Mahon, 106 F.Supp.2d 523, 530 (S.D.N.Y. 2000)). Rather, the determination of whether to effect a joinder under that rule requires a two-step analysis. Id. at 416 (citing Brown v. United States, 42 Fed. Cl. 538, 563 (1998)). "First, this Court must determine whether [the party] is 'necessary' under RCFC 19(a). A 'necessary' party must be joined in the action if it is feasible to do so." Id. (Citations omitted).

A party is deemed necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made an involuntary plaintiff.

Id. at 416 (citing RCFC 19(a)).[3]

If the party sought to be joined is deemed "necessary," yet joinder is infeasible, the second step in the joinder analysis asks whether, "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." J.G.B. Enterprises, 57 Fed. Cl. at 416 (Citations omitted).

In this case, the Court must join the LRA to each of the individual plaintiffs in the consolidated Richmond cases if any of the following conditions apply:

1. failure to join the LRA would jeopardized the scope of relief, if any, to which the Richmond plaintiffs may be entitled in that case;

2. failure to join the LRA would prejudice the LRA's ability to protect its own interests in the Richmond case; or

3. failure to join the LRA would expose the United States to a *substantial* risk of multiple or inconsistent obligations following resolution of the Richmond case and the instant case.

Because none of the above circumstances is present in this case, Defendant's motion for joinder is DENIED. The Court reviews each of the three factors below.

1. The Threat to Complete Relief for the Richmond Plaintiffs

Defendant's stated concern regarding the completeness of relief for plaintiffs is misplaced. (See Defendant's Motion for Joinder at 5). "[T]he term complete relief refers only 'to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought.'" J.G.B. Enterprises, 57 Fed. Cl. at 417 (citing Arkwright-Boston, 762 F.2d at 209 (quoting 3A J. Moore, Moore's Federal Practice ¶ 19.07-1[1], at 19-96 (2d ed.1984))). Rule 19(a), therefore, focuses the Court's concern for "complete relief" upon the plaintiffs in the Richmond cases.[4] Notwithstanding the fact that the consolidated Richmond cases are not before the undersigned, the Court does not foresee

---

[3] Two additional criteria not at issue in this case require that necessary persons be "subject to service of process," and such that their joinder "will not deprive the court of jurisdiction over the subject matter of the action[.]" See RCFC 19(a).

[4] This rule highlights the procedurally awkward consequences of Defendant's decision to file its motion for joinder in the present case rather than in Richmond.

the specter of hollow recovery in Richmond. To the extent, for example, that the LRA may ultimately be accountable in damages to the Richmond plaintiffs or to the United States, that fact would not impact the Richmond plaintiffs' ability to recover from the United States. Indeed, owing to the nature of this Court's jurisdiction under the Tucker Act, it is not possible in this forum for the United States, the Richmond plaintiffs, or any other party to sue the LRA.[5]

An additional circumstance limiting the risk of incomplete relief for the Richmond plaintiffs is the minimal, if extant, degree to which the LRA and the Richmond plaintiffs seek "overlapping," or "duplicative" costs from the United States. "The Richmond Claims involve only those parcels in the Northwest Neighborhood that were transferred to the Richmond Plaintiffs, while the LRA is seeking non-duplicative clean-up costs covering areas both inside and outside the Northwest Neighborhood." (LRA's Response at 4). The Government does not reply to this assertion.

In light of the foregoing, the Court, both in this case and in the Richmond cases, is fully capable of awarding the complete relief against the United States to which the plaintiffs may be entitled. Any judgment rendered against Defendant in either case will not prejudice any plaintiff's ability to bring a future suit in another forum against any party not here joined.

2. The Threat to the LRA's Interests in the Richmond Cases

As Defendant notes, the Richmond plaintiffs assert rights under the same deeds that previously passed between Defendant and the LRA. That fact, however, does not necessarily "impair or impede [the LRA's] ability to protect" its legal rights and interests with respect to the deeds sufficient to mandate joinder pursuant to RCFC 19(a)(2)(I).

[5] The Tucker Act provides, in relevant part,

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

Defendant expresses concern for the LRA's ability to shield itself in the present case from a final judgment adverse to the LRA's interests in the Richmond cases.[6] (Motion for Joinder at 5). While it may make some "practical sense" for the LRA to be a party to those lawsuits, Defendant's unilateral concern is not sufficient reason to affect joinder. Plaintiff, presumably as vigilant of its own interests as Defendant claims to be, views the *res judicata* issue differently. Plaintiff concludes, "The LRA's ability to protect its broader interests *would not be impaired* by resolving the narrower claims of the Richmond plaintiffs." (LRA Response at 4) (emphasis added). The Court accepts Plaintiff's assessment of its own interests in this litigation.

3. The Threat of Inconsistent Obligations

Related to the *res judicata* issue is Defendant's third concern of "owing differing obligations, under identical covenants, to different parties to the covenants." (Motion for Joinder at 6).

While it is possible that this case and the consolidated Richmond cases could conclude with logically inconsistent results (for example, with Defendant liable for a plaintiff's costs in one case, yet not in the other), such a scenario does not present a threat of "inconsistent obligations" within the meaning of RCFC 19(a)(2)(ii). See J.G.B. Enterprises, 57 Fed. Cl. at 417 ("Rule 19 does not speak of inconsistent 'results.' Rather, it speaks of inconsistent 'obligations.'"). In any event, Defendant has achieved its purpose of alerting the Court to the common issues in these cases (Defendant's Reply at 3-4), and therefore its fears of a double recovery by plaintiffs are premature. To the extent Defendant is found liable in the earlier of the two cases to be decided, the Government is free to brief the Court in the remaining case appropriately.

Finally, as discussed above in connection with the *res judicata* issue, the LRA and the Richmond plaintiffs appear to seek non-duplicative clean-up costs from the Government. Therefore, though their claims may be similar, there does not appear to be a unity of interests sufficient to subject Defendant to multiple inconsistent obligations in violation of RCFC 19(2)(ii).

For the foregoing reasons, Defendant has not demonstrated that the LRA is a "necessary" party to the Richmond litigation.

---

[6] Defendant plans to assert in its defense in the Richmond cases that the LRA "is wholly or partly responsible for disturbing and spreading the asbestos" that is the basis for the plaintiffs' costs. (Motion for Joinder at 6).

B. Consolidation under Rules 40.2(a) and 42

Defendant has moved the Court in the alternative to consolidate this case with the Richmond cases pursuant to RCFC 40.2 and RCFC 42(a). (Motion for Joinder at 6). RCFC 40.2 sets forth the Court's procedures for assigning and managing directly and indirectly related cases. RCFC 42(a) provides the authority for consolidation. Because the LRA did not file a Notice of Directly Related Case(s) with its Complaint, and because neither party has yet filed a Notice of Indirectly Related Case(s), the Court looks to RCFC 40.2(a) and RCFC 40.2(b).[7] Both sub-parts of that rule call for the appropriate notices to be captioned in the *earlier-filed* of the cases in question, for a decision by the judge assigned thereto.[8]

Having assumed for purposes of this motion that there is a relationship among the cases, the Court turns to RCFC 42(a) governing consolidation. That rule provides:

---

[7] Regarding *directly related* cases, RCFC 40.2(a)(3) provides in relevant part:

> Where the existence of directly related cases becomes apparent only after initial assignment, the Notice of Directly Related Case(s) shall be filed in all related cases, captioned in the name of the earliest filed case. The notice may be accompanied by a motion to transfer and a suggestion for consolidation under RCFC 42.1. The assigned judge in the earliest-filed case, after consultation with the judge in the later-filed case, will grant or deny the motion to transfer.

Regarding *indirectly related* cases, RCFC 40.2(b)(1) provides:

> Whenever it appears to a party that there are two or more cases before the court that present common issues of fact and that . . . consolidation . . . would significantly promote the efficient administration of justice, the party may file a Notice of Indirectly Related Case(s). The notice shall be captioned in the name of the earliest-filed case[.]

RCFC 40.2(b)(3) then instructs:

> The assigned judge of the earliest-filed case shall call a meeting of all of the assigned judges to determine what, if any, action is appropriate. The parties to each action shall be notified of any resulting decision.

[8] Notwithstanding that Defendant erroneously filed its motions in the present case rather than in the earlier-filed Richmond cases, the Court assumes, *arguendo*, that this case and Richmond are either directly or indirectly related. The Court further notes, for purposes of this motion, that Defendant's briefs contain all of the information required by RCFC 40.2(a)(4) (Contents of the Notice of Directly Related Case(s)).

> When actions involving a common question of law or fact are pending before the court, it *may* order a joint hearing or trial of any or all of the matters in issue in the action; it *may* order all the actions consolidated; and it *may* make such orders concerning proceedings therein as *may* tend to avoid unnecessary costs or delay.

RCFC 42(a) (emphasis added). This Court has previously held that the decision to consolidate cases "is within the Court's broad discretion[.]" See Lucent Technologies Inc. v. United States, 69 Fed Cl. 512, 513 (2006) (citing Cienega Gardens v. United States, 62 Fed. Cl. 28, 32 (2004)).

In exercising this discretion, the Court engages in a two-step analysis. First, the Court must determine whether both cases present "a common question of law or fact." Id. If so, the Court then must consider whether "the interests of judicial economy" outweigh "the potential for delay, confusion and prejudice that may result from consolidation." Id.

There is no question that common questions of both law and fact exist in this and the consolidated Richmond cases. As mentioned above, however, the two cases stand in significantly different stages of litigation. In the present case, the parties have only recently filed their Joint Preliminary Status Report. The JPSR in the Richmond cases, by contrast, was filed nearly a year ago, on June 22, 2005. The Richmond litigants have completed discovery and are now engaged in the briefing process. Under these circumstances, consolidation would present both a substantial "potential for delay" in Lowry and certain "prejudice" to the Richmond plaintiffs. Therefore, the Court concludes that the potential judicial economies from consolidation would be outweighed by the risk of delay and prejudice. E.g., Lucent Technologies, 69 Fed. Cl. at 515 ("the distinct procedural postures of [the cases] vitiate any judicial economy that might be gained by consolidation.").

Accordingly, Defendant's motion is DENIED.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge