No. 06-75C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

LOWRY ECONOMIC REDEVELOPMENT AUTHORITY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S MOTION FOR JUDGMENT UPON THE PLEADINGS, IN SUBSTANTIAL PART, AS TO COUNT ONE**

---

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

OF COUNSEL:

DAVID R. VECERA
Deputy Chief
Air Force Legal Services Agency
Environmental Law and
Litigation Division
Arlington, VA

KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification U nit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202)616-0476

Attorneys for Defendant

June 20, 2008

# TABLE OF CONTENTS

STATEMENT OF THE ISSUE. .......... 1

BACKGROUND AND SUMMARY OF PLAINTIFF'S ALLEGATIONS. .......... 2

ARGUMENT. .......... 6

I. Standards For Granting This Motion. .......... 6

II. Count One Substantially Fails To State A Claim Because The Compliance Advisories Were Not "Claims For Property Damage" Within The Meaning Of Section 330. .......... 6

A. Introduction. .......... 6

B. Section 330 Requires A Third-Party Monetary Claim For Injury Or Damage. .......... 7

C. Richmond American Homes And New London Development Are In Error. .......... 10

D. The Compliance Advisories Were Not "Claims For Property Damage" Covered By The Section 330 Indemnity. .......... 13

CONCLUSION. .......... 14

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES

## CASES

American Int'l Specialty Lines Ins. Co. v. United States,
No. 05-1020C (Fed. Cl. Jan. 31, 2008). .......... 7

Atamirzayeva v. United States,
524 F.3d 1320 (Fed. Cir. 2008). .......... 6

Bell Atlantic v. Twombly,
127 S. Ct. 1955 (2007). .......... 6

Clary v. United States,
333 F.3d 1345 (Fed. Cir. 2003). .......... 7

Conley v. Gibson,
355 U.S. 41 (1957). .......... 6

Connecticut Natl. Bank v. Germain,
503 U.S. 249 (1992). .......... 10

Cortec Indus., Inc. v. Sum Holding, L.P.,
949 F.2d 42 (2d Cir. 1991). .......... 2, 3

Duncan v. Walker,
533 U.S. 167 (2001). .......... 10

Lamie v. United States Trustee,
540 U.S. 526 (2004). .......... 7

New London Development Corp., ASBCA No. 54535,
05-2 BCA ¶ 33018. .......... 12, 13

PSI Energy, Inc. v. United States,
59 Fed. Cl. 590 (2004), rev'd on other grounds, 411 F.3d 1347 (Fed. Cir. 2005). .......... 2

Papasan v. Allain,
478 U.S. 265 (1986). .......... 6

Peterson v. United States,
68 Fed. Cl. 773 (2005). .......... 6

Richmond Am. Homes of Colo. v. United States,
75 Fed. Cl. 376 (2007). .......... passim

STATUTES AND REGULATIONS

10 U.S.C. § 2687 .......... 1, 4, 5, 8

42 U.S.C. § 9620(h)(3)(A)(ii)(I) .......... 5, 6, 10

42 U.S.C. § 9620 (h)(3)(A)(ii)(II) .......... 5

48 U.S.C. § 9620(h) .......... 9

6 Colo. Code Regs. § 1007-2-1.94(A) (2006) .......... 3, 4

Pub. L. No. 101-511, § 8056, 104 Stat. 1856, 1887 (1990) .......... 9

MISCELLANEOUS

138 Cong. Rec. S13982-01 (Sept. 18, 1992) .......... 11

H.R. Conf. Rep. No. 102-966 (1992 .......... 9, 10, 12

S. 3114, 102d Cong., § 317 (1992) .......... 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOWRY ECONOMIC REDEVELOPMENT AUTHORITY, | ) | |
| Plaintiff, | ) | No. 06-75C (Judge Wheeler) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR JUDGMENT UPON THE PLEADINGS, IN SUBSTANTIAL PART, AS TO COUNT ONE

Pursuant to Rule 12(c) of the Rules of the United States Court of Federal Claims ("RCFC") and the pretrial scheduling order, as amended, defendant, the United States, having previously answered the complaint filed by plaintiff, the Lowry Economic Redevelopment Authority ("the LRA"), respectfully requests the Court to grant us judgment upon the pleadings, in substantial part, with respect to plaintiff's count one. In support of this motion, we rely upon the complaint and its exhibits, see RCFC 10(c), and this brief.

STATEMENT OF THE ISSUE

Whether count one fails to state a claim upon which the Court could grant relief, to the extent it rests substantially upon the allegation that two "compliance advisories" issued by Colorado environmental regulators to the LRA and others in April 2003 were "claim[s] for personal injury or property damage" within the meaning of section 330 of the National Defense Authorization Act of 1993, as amended, 10 U.S.C. § 2687 note ("section 330").

## BACKGROUND AND SUMMARY OF PLAINTIFF'S ALLEGATIONS

Although the parties conducted substantial discovery in this case, the following is based upon the allegations of the complaint. The LRA has not, to our knowledge, materially altered, supplemented, or disavowed any of these allegations since it filed the complaint in January 2006.

The LRA was formed in 1994 by the City and County of Denver and the City of Aurora, all in Colorado, to guide the redevelopment of the site of the closed Lowry Air Force Base ("Lowry") in Denver. Compl. ¶¶ 5, 15-17. From approximately 1995 to 2003, the Air Force transferred parcels at Lowry to the LRA by means of a series of deeds. Id. ¶¶ 2, 17, 20; see id. Exh. 1. The LRA, in turn, prepared the land for residential development and sold parcels to various companies that built and sold homes at the site. Id. ¶¶ 21-22.

Plaintiff's section 330 claim, asserted in count one, involves an area of Lowry known as the Northwest Neighborhood. In 2002, as residential development proceeded there, "one or more of the Builders encountered buried construction debris, some of which contained asbestos, in the subsurface soil of the Northwest Neighborhood." Id. ¶ 32. This was at some point brought to the attention of the Colorado Department of Public Health and the Environment ("CDPHE"), id., which, in April 2003, issued the two "compliance advisories" that are reproduced in exhibit 3 of the complaint.[1]

Both compliance advisories were addressed jointly to the Air Force, the LRA, and 15 home builders. Compl. Exh. 3 at 3, 6. The first advisory, dated April 24, 2003, stated that "the

---

[1] Attachments to the complaint become part of the pleadings "for all purposes," RCFC 10(c), and are, therefore, properly considered in deciding this motion. See PSI Energy, Inc. v. United States, 59 Fed. Cl. 590, 597 n.8 (2004), rev'd on other grounds, 411 F.3d 1347 (Fed. Cir. 2005); Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42 (2d Cir. 1991).

Department has recently discovered asbestos contamination within soils at Lowry . . . . Upon information and belief, recent construction activities (including excavation, soil grading, and landscaping) by the Recipients have resulted in some of the previously buried asbestos contamination being dug up, moved or otherwise handled, [and] made airborne . . . ." Id. at 3.

The CDPHE advised the recipients that they were

> responsible for complying with the State hazardous waste and air regulations and . . . there are substantial administrative and civil penalties [of up to $15,000 per day] for failing to do so. . . . The issuance of this Compliance Advisory does not limit or preclude the Department from pursuing its enforcement options . . . including issuance of a Compliance Order[2] and assessment of penalties. Also, this Compliance Advisory does not constitute a bar to enforcement action for conditions that the inspector(s) did not observe or evaluate, or conditions found during future inspections of Lowry.
>
> To avoid additional enforcement action or reduce the penalties described above you must either correct the deficiencies as outlined below, or you must demonstrate to the Department that the deficiencies are not violations of Colorado hazardous waste and/or air laws.

Id. The remainder of the April 24, 2003 issuance "advise[d] the Recipients" to immediately halt excavation and other soil disturbances, and to develop and submit to the CDPHE plans for emission control, soil sampling, and remediation. Id. at 3-5.

On April 30, 2003, the CDPHE issued a second compliance advisory to the same recipients. In this document, the agency "advise[d] the Recipients to comply with all requirements set forth in the April 24, 2003 Compliance Advisory, as well as" to develop and

---

[2] The CDPHE is authorized under Colorado law to issue "compliance orders" to compel action by regulated parties. 6 Colo. Code Regs. § 1007-2-1.94(A) (2006). A compliance advisory, by contrast, imposes no duties in itself, and "does not constitute an agency action subject to appeal." Id. § 1007-2-1.92.

submit plans for testing the air inside finished homes at Lowry and performing any corrective action found to be necessary there. Id. at 6-8.

The CDPHE approved a final indoor air testing plan in May 2003. Compl. ¶ 36. In August 2003, the CDPHE approved a final response plan, detailing the procedures to be used, and the standards for asbestos contamination to be applied, for the testing and remediation of soil in the Northwest Neighborhood. Id. ¶ 37 and Exh. 5.

The complaint alleges that during five days in October 2003, the LRA received nine written claims from various Lowry homeowners, alleging that the presence of asbestos in the area had caused damage to their property and personal injury, "such as annoyance and discomfort." Id. ¶¶ 38-40. The complaint alleges that the LRA incurred costs of more than $6.3 million in connection with the two compliance advisories and the nine homeowner claims. Id. ¶ 63. The complaint does not allege whether or, if so, how the homeowner claims were resolved.

In June 2003, the LRA, through counsel, transmitted to the Secretary of Defense a notice of a claim for indemnification, pursuant to section 330 of the National Defense Authorization Act of 1993, 10 U.S.C. § 2687 note, the text of which is attached and quoted in part below, for costs relating to the asbestos condition alleged in the CDPHE compliance advisories. Compl. Exh. 6 at 26-30. The LRA supplemented its section 330 claim in August, October, and December 2003. Id. at 31-40.

In December 2005, James G. Van Ness, the Acting Department of Defense ("DoD") Deputy General Counsel, Environment and Installations, acting upon behalf of the Secretary, denied the LRA's section 330 claim in relevant part upon the ground that the compliance

advisories did not constitute "claim[s] for personal injury or property damage" within the meaning of section 330(a)(1). Id. at 40.

The LRA filed this lawsuit in January 2006. Its complaint contains two counts. Count one alleges that the United States "is responsible pursuant to section 330 for indemnifying LRA for all costs and fees it has incurred as a result of the Compliance Advisories, the Homeowner Claims, and other CDPHE demands arising out of the release or threatened release of asbestos and asbestos containing material" at Lowry. Compl. ¶ 63. (The only "CDPHE demands" alleged in the complaint relate directly to the compliance advisories.)

Count two – which is not the subject of this motion, but which is the focus of a separate motion that we intend to file to compel a supplemental response to an interrogatory asking the LRA to specify in detail the costs it seeks to recover in this action, and the alleged grounds for recovery – alleges that the Government breached covenants which were included, pursuant to a requirement of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), in the deeds transferring the Lowry properties to the LRA. Id. ¶¶ 64-70.

No deeds are attached to the complaint. See id. ¶ 20 (alleging covenants on information and belief). CERCLA mandates, however, that the deed covenants provide as follows:

> 2. Grant of Covenant [CERCLA 42 U.S.C. Section 9620(h)(3)(A)(ii)(I)]. The GRANTOR [United States] covenants that all remedial action necessary to protect human health and the environment with respect to any hazardous substance remaining on the Property has been taken before the date of transfer.
>
> 3. Additional Remediation Obligation [CERCLA 42 U.S.C. Section 9620 (h)(3)(A)(ii)(II)]. The GRANTOR covenants and warrants that the GRANTOR shall conduct any additional remedial action necessary after the date of transfer of any hazardous substance existing on the Property prior to the date of

> this Deed. This covenant shall not apply to the extent that the GRANTEE caused or contributed to any release or threatened release of any hazardous substance, pollutant, contaminant, petroleum, or petroleum derivative.

42 U.S.C. § 9620(h)(3)(A)(ii)(I), (II) (emphasis added, bracketed citations in original).

The Court has scheduled trial in this matter for September 9-17, 2008, in Denver.

## ARGUMENT

### I. Standards For Granting This Motion

"The legal standard applied to evaluate a motion for judgment on the pleadings is the same as that for a motion to dismiss," Peterson v. United States, 68 Fed. Cl. 773, 776 (2005), the distinction being that a motion for judgment upon the pleadings follows rather than precedes an answer. See RCFC 12(c); Atamirzayeva v. United States, 524 F.3d 1320, 1321 (Fed. Cir. 2008). This motion should be granted unless the complaint's well-pleaded facts "(taken as true) . . . raise a right to relief above the speculative level," which requires allegations "plausibly suggesting (not merely consistent with)" a valid claim. Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965-66 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). Moreover, the Court should not presume the truth of legal conclusions "couched as" factual allegations in the complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986).

### II. Count One Substantially Fails To State A Claim Because The Compliance Advisories Were Not "Claims For Property Damage" Within The Meaning Of Section 330

#### A. Introduction

As noted, count one seeks indemnification, pursuant to section 330, of the LRA's costs of responding to the April 2003 CDPHE compliance advisories, and to claims allegedly submitted to the LRA by nine homeowners in the wake of those advisories. Compl. ¶¶ 46-63. Section 330,

however, directs the Secretary of Defense to hold harmless a transferee of closed military property, such as the LRA, solely with respect to circumstances "arising out of any claim for personal injury or property damage." This plain language makes a third-party "legal demand[] for money damages" a prerequisite to relief. American Int'l Specialty Lines Ins. Co. v. United States, No. 05-1020C, slip op. at 35-36 (Fed. Cl. Jan. 31, 2008) ("AISLIC"). But see Richmond Am. Homes of Colo. v. United States, 75 Fed. Cl. 376, 391-93 (2007) (holding no monetary claim is required and, alternatively, "involvement" of regulators in a cleanup constitutes a "claim for property damage"), appeal filed.

Accordingly, while the LRA may state a claim under section 330 for costs that allegedly arose from the homeowners' damage claims (although we know of no such costs), the LRA fails to state a claim for statutory relief relating to the CDPHE compliance advisories, which were not claims seeking money for personal injury or property damage.

B. Section 330 Requires A Third-Party Monetary Claim For Injury Or Damage

Statutes should be construed according to their plain and ordinary meaning, with the aid of "legislative history [only] if the statutory language is unclear." Clary v. United States, 333 F.3d 1345, 1348 (Fed. Cir. 2003); see Lamie v. United States Trustee, 540 U.S. 526, 534 (2004). Section 330 of the National Defense Authorization Act of 1993, the text of which is attached, provides in relevant part:

> (a) IN GENERAL.– (1) Except as provided in paragraph (3) and subject to subsection (b), the Secretary of Defense shall hold harmless, defend, and indemnify in full the persons and entities described in paragraph (2) from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss)

> that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.
>
> (2) The persons and entities described in this paragraph are the following:
>
> . . .
>
> (B) Any political subdivision of a State (including any officer, agent, or employee of the State) that acquires such ownership or control.
>
> . . .
>
> (3) To the extent the persons and entities described in paragraph (2) contributed to any such release or threatened release, paragraph (1) shall not apply. . . .

10 U.S.C. § 2687 note (emphasis added). Section 330(b) requires a person or entity seeking indemnification to submit a written claim and supporting materials to DoD, and to provide DoD with "access to [the claimant's] records and personnel" as requested. Id.[3]

Congress had enacted similar but not identical legislation two years earlier. The 1991 defense appropriations act held the State of New Hampshire, its subdivisions, and agents "harmless . . . from and against all suits, claims, demands or actions," etc., "arising out of, or in any manner predicated upon releases or threatened releases of hazardous substances, or

[3] Reserving the right to contend otherwise, if appropriate, at trial, we understand the LRA to be an "agent" of the State of Colorado or its municipal subdivisions and, therefore, a claimant described in section 330(a)(2)(B). We do not concede – nor must we or the Court presume for purposes of this motion – that a "release or threatened release" of asbestos, or any other substance, occurred at Lowry "as a result of Department of Defense activities," as required by section 330(a)(1). We reserve that and all other factual defenses to liability for trial, should the Court deny this motion.

pollutants or contaminants resulting from Department of Defense activities at Pease Air Force Base in New Hampshire." Pub. L. No. 101-511, § 8056, 104 Stat. 1856, 1887 (1990).

Thus, the words "arising out of, or in any manner predicated upon, releases or threatened releases . . ." in the 1990 legislation were altered, in section 330, to "arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, releases or threatened releases . . . ." The new, "arising out of" language did not appear in the Senate bill, where the indemnity originated, S. 3114, 102d Cong., § 317 (1992), but was inserted, with other language, in the House-Senate Conference. The Conference Report states that the House conferees succeeded in amending the bill to "ensure that the indemnification . . . does not conflict with or modify section 120(h) of [CERCLA]. In addition, the amendment would clarify when a claim accrues." H.R. Conf. Rep. No. 102-966, at 685 (1992), reprinted in 1992 U.S.C.C.A.N. 1769, 1776; see section 330(c), (d). The section of CERCLA cited in the Conference Report mandates, among other things, the deed covenants quoted above. 48 U.S.C. § 9620(h).

The meaning of "arising out of any claim for personal injury or property damage" is sufficiently plain that there is no reason to rely upon the legislative history. As the Court observed in AISLIC – in the course of granting our motion to dismiss a section 330 claim for the costs of remediating pesticide-treated soil – "[a]lthough it is possible to broadly define 'claim' [in isolation,] . . . [c]laims for personal injury and property damage commonly and ordinarily entail legal demands for money damages." Slip op. at 35-36.

Other text of section 330 is fully consistent, moreover, as the AISLIC Court noted, id. at 36, with this plain and ordinary meaning. For example, section 330(c), a "tender" provision,

authorizes the Secretary of Defense to "settle or defend . . . the [indemnified] claim" against a transferee. The terms "settle" and "defend" refer to litigation, or the threat of it. Section 330(d), which defines when a claim for indemnification accrues – and which originated, like section 330(c), in the Conference amendment to the Senate bill – is also consistent with the plain meaning of "claim for personal injury or property damage," as section 330(d) refers to the third party bringing an allegedly indemnified "claim" as "the plaintiff." Where, as here, "the statute is clear, the court's inquiry on this issue is complete." AISLIC, slip op. at 34 (citing Connecticut Natl. Bank v. Germain, 503 U.S. 249, 254 (1992)).

Should the Court nonetheless deem section 330 ambiguous, legislative history, while not extensive, supports our reading. To begin, "arising out of any claim for personal injury or property damage" must mean something. To read section 330 as having the same scope as the 1990 Pease Air Force legislation, which did not contain those words, would improperly render them surplusage. Cf. Duncan v. Walker, 533 U.S. 167, 174 (2001). Moreover, as noted, the Conference Report, 1992 U.S.C.C.A.N. at 1776, indicates that the drafters amended the Senate bill to add, among other things, the "arising out of" limitation, to prevent section 330 from overlapping with the CERCLA provision that allows transferees of Government property, subject to conditions, to recover their own "remediation" costs. 42 U.S.C. § 9620(h)(3)(A)(ii). This confirms that section 330 is intended to address costs other than a transferee's own cleanup costs – specifically, costs "arising out of" third-party monetary "claims for . . . damage."

C. Richmond American Homes And New London Development Are In Error

Prior to AISLIC, the Court in Richmond American Homes – which concerns the same 2003 compliance advisories that are at issue here– rejected our reading of section 330. The

Richmond Court ruled that section 330 does not require a third-party damage claim but, assuming it does, the "involvement" of regulators in a cleanup constitutes a "claim for property damage." 75 Fed. Cl. at 391 ("[T]he statutory language easily accommodates a claim by a state alleging an environmental hazard."), 394 ("There is no indication that Congress intended to limit the type of property damage.") (emphasis added). The Court stated that it could not "reconcile [our] view with the broad [Government] exposure" for which the Court found support in (1) a statement made by Senator John McCain opposing an amendment to the Senate bill, before the "arising out of any claim" language was added to the legislation, 138 Cong. Rec. S13982-01 (Sept. 18, 1992) (statement of Senator McCain), and (2) a letter sent by a DoD official to Senator McCain in 1993, after section 330's enactment. 75 Fed. Cl. at 390; see also id. at 387 ("Senator John McCain . . . explain[ed] in no uncertain terms [section 330's] intended purpose."), 389 ("Section 330 . . . provides the protections to which Senator McCain referred . . . ."), 391 (referring to Senator McCain as section 330's "author").

The AISLIC decision explains why Richmond should not be followed. Slip op. at 35-37. First, the result in Richmond departs from the "plain and ordinary meaning" of "claim for . . . property damage," id. at 35, which the Richmond Court did not, in fact, determine before consulting what the Court believed to be legislative history. See 75 Fed. Cl. at 389.

Moreover, assuming section 330 is ambiguous, Senator McCain's September 1992 floor statement, upon which the Richmond Court heavily relied, is, as AISLIC demonstrates, irrelevant – because it is not part of the legislative history of the "arising out of any claim" limitation, which was added later. "[N]either the statutory language commented upon by Senator McCain nor the amendment [of] which he spoke in support contained either the phrase 'claim for

personal injury or property damage' or the term 'plaintiff.'" AISLIC, slip op. at 36 n.25. Contrary to Richmond, Senator McCain was not the "author" of the Conference amendment. See 75 Fed. Cl. at 391. There is no evidence, indeed, that he supported the amendment proposed by the House conferees. See 1992 U.S.C.C.A.N. at 1776; cf. Bryan v. United States, 524 U.S. 184, 196 (1988) (applying canon that statements by opponents of legislation carry no weight).

Finally, the AISLIC Court properly described the 1993 letter from DoD to Senator McCain, which influenced the Richmond Court, 75 Fed. Cl. at 389-90, as "nothing more than an after-the-fact expression of the executive branch's interpretation of the statute," rather than legislative history. AISLIC, slip op. at 36 n.25 (emphasis in original). As demonstrated above, relevant legislative history, if considered, supports our plain meaning interpretation of "arising out of any claim for personal injury or property damage."

The Richmond Court expressed its agreement with New London Development Corp., ASBCA No. 54535, 05-2 BCA ¶ 33018, an interlocutory decision in which the board declined to dismiss a claim brought under contract language that tracked section 330. 75 Fed. Cl. at 394. The board in New London, however, mistakenly considered only whether the contractor had alleged some "property damage." The board failed to consider whether anyone had asserted a "claim for . . . property damage" against the contractor. New London nowhere construes the relevant words, "claim for property damage."

Any suggestion in New London that a covered "claim for property damage" may exist when a contractor or transferee alleges only that it has incurred "economic loss" must be rejected, moreover, because it would render section 330(a)(1) nonsensical: Under that reading, a transferee of base property would be indemnified from "any claim for" its own costs (including

"economic loss"). See AISLIC, slip op. at 36 (rejecting similar reading as "an awkward construction at best"). Similarly, if the "claim" referred to in section 330(a)(1) were the transferee's own claim, the tender provision, section 330(c), would authorize "the Secretary of defense to 'settle or defend' the indemnification claim by [a transferee], 'on behalf of' [the transferee]." Id. at 35. These illogical readings are untenable.

In sum, the AISLIC Court correctly held that the plain meaning of "any claim for personal injury or property damage" denotes a tort-like, third-party claim for money damages against a transferee, whereas Richmond and New London are mistaken.

D. The Compliance Advisories Were Not "Claims For Property Damage" Covered By The Section 330 Indemnity

The compliance advisories issued by Colorado environmental regulators to the LRA and others in April 2003 did not assert a right to money damages or allege that Colorado had suffered property damage (or, of course, personal injury). Instead, the recipients were "advise[d]" that: (1) the CDPHE believed that "present conditions in [Lowry's] Northwest Neighborhood present a threat to public health and the environment"; (2) "there are substantial administrative and civil penalties for" violations of "State hazardous waste and air regulations"; and (3) the recipients could "avoid additional enforcement action or . . . penalties" by correcting the alleged asbestos problem to the CDPHE's satisfaction, or persuading the CDPHE that the recipients were already in compliance with applicable State laws. Compl. Exh. 3 at 3, 6.

Because the advisories did not assert that the State owned any land in the Northwest Neighborhood, or claim a right to compensation for the "loss of or damage to [such] property," or for any "economic loss," they do not satisfy section 330(a)(1).

The Richmond Court noted that the advisories refer to "penalties" and concluded that the advisories "direct[ed the] recipients to comply now or pay the price in fines later." 75 Fed. Cl. at 393. Assuming this to be accurate – although the complaint does not allege that the LRA paid any money to the CDPHE in connection with the advisories – the advisories did not "claim" a present right to any sum of money. This is true regardless of whether the advisories imposed a "clear legal obligation" to take steps that did not involve paying the CDPHE money, see id. at 391 (quoting plaintiffs' brief), an issue this Court need not reach. Cf. 6 Colo. Code Regs. § 1007-2-1.92 (compliance advisory is not final agency action). Equally important, any hypothetical fines or penalties would have been levied by the CDPHE not to obtain compensation for the State "for . . . property damage (including . . . loss of or damage to property or economic loss)," but to punish and deter violations of law. See Compl. Exh. 3 at 3, 6.

The CDPHE's "exertion of regulatory authority" in the Northwest Neighborhood of Lowry, Richmond, 75 Fed. Cl. at 393, allegedly caused the LRA to suffer some "economic loss." However, because the CDPHE compliance advisories were not third-party claims for property damage or economic loss that could provide a basis for relief under section 330, the Court should grant us judgment upon the pleadings with respect to count one, except to the extent the LRA may pursue statutory indemnification for costs arising out of claims asserted against the LRA by Northwest Neighborhood homeowners. Cf. AISLIC, slip op. at 37.

## CONCLUSION

Accordingly, we respectfully request the Court to grant us judgment upon the pleadings with respect to count one, to the extent described above.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-0476
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

DAVID R. VECERA
Deputy Chief
Air Force Legal Services
Agency
Environmental Law and
Litigation Division
Arlington, VA

June 20, 2008

## STATUTORY ADDENDUM

10 U.S.C. § 2687 note.

Indemnification of Transferees of Closing Defense Property

Pub.L. 102-484, Div. A, Title III, § 330, Oct. 23, 1992, 106 Stat. 2371, as amended Pub.L. 103-160, Title X, § 1002, Nov. 30, 1993, 107 Stat. 1745, provided that:

"**(a) In general.--(1)** Except as provided in paragraph (3) and subject to subsection (b), the Secretary of Defense shall hold harmless, defend, and indemnify in full the persons and entities described in paragraph (2) from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.

"**(2)** The persons and entities described in this paragraph are the following:

"**(A)** Any State (including any officer, agent, or employee of the State) that acquires ownership or control of any facility at a military installation (or any portion thereof) described in paragraph (1).

"**(B)** Any political subdivision of a State (including any officer, agent, or employee of the State) that acquires such ownership or control.

"**(C)** Any other person or entity that acquires such ownership or control.

"**(D)** Any successor, assignee, transferee, lender, or lessee of a person or entity described in subparagraphs (A) through (C).

"**(3)** To the extent the persons and entities described in paragraph (2) contributed to any such release or threatened release, paragraph (1) shall not apply.

"**(b) Conditions.–** No indemnification may be afforded under this section unless the person or entity making a claim for indemnification--

"**(1)** notifies the Department of Defense in writing within two years after such claim accrues or begins action within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the Department of Defense;

“**(2)** furnishes to the Department of Defense copies of pertinent papers the entity receives;

“**(3)** furnishes evidence or proof of any claim, loss, or damage covered by this section; and

“**(4)** provides, upon request by the Department of Defense, access to the records and personnel of the entity for purposes of defending or settling the claim or action.

“**(c) Authority of Secretary of Defense.--(1)** In any case in which the Secretary of Defense determines that the Department of Defense may be required to make indemnification payments to a person under this section for any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage referred to in subsection (a)(1), the Secretary may settle or defend, on behalf of that person, the claim for personal injury or property damage.

“**(2)** In any case described in paragraph (1), if the person to whom the Department of Defense may be required to make indemnification payments does not allow the Secretary to settle or defend the claim, the person may not be afforded indemnification with respect to that claim under this section.

“**(d) Accrual of action.–** For purposes of subsection (b)(1), the date on which a claim accrues is the date on which the plaintiff knew (or reasonably should have known) that the personal injury or property damage referred to in subsection (a) was caused or contributed to by the release or threatened release of a hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative as a result of Department of Defense activities at any military installation (or portion thereof) described in subsection (a)(1).

“**(e) Relationship to other law.--**Nothing in this section shall be construed as affecting or modifying in any way section 120(h) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. 9620(h)).

“**(f) Definitions.–** In this section:

“**(1)** The terms ‘facility’, ‘hazardous substance’, ‘release’, and ‘pollutant or contaminant’ have the meanings given such terms under paragraphs (9), (14), (22), and (33) of section 101 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, respectively (42 U.S.C. 9601(9), (14), (22), and (33)).

“**(2)** The term ‘military installation’ has the meaning given such term under section 2687(e)(1) of title 10, United States Code.

“**(3)** The term ‘base closure law’ means the following:

“**(A)** The Defense Base Closure and Realignment Act of 1990 (10 U.S.C. 2687 note).

“**(B)** Title II of the Defense Authorization Amendments and Base Closure and Realignment Act (10 U.S.C. 2687 note).

“**(C)** Section 2687 of title 10, United States Code [this section].

“**(D)** Any provision of law authorizing the closure or realignment of a military installation enacted on or after the date of the enactment of this Act [Oct. 23, 1992].”

CERTIFICATE OF FILING

I hereby certify that on June 20, 2008, this document was filed electronically. Service is complete upon filing, and parties may access this filing through the Court's system.

s/Kyle Chadwick