# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOWRY ECONOMIC REDEVELOPMENT AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 06-75 C<br><br>Judge Wheeler |

## PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to RCFC Rule 56(h)(1), Plaintiff respectfully submit the following Proposed Findings of Uncontroverted Facts. The numbers of the facts proposed by Plaintiffs are prefaced with a "P".

P 1 The Lowry Economic Redevelopment Authority ("LRA") is a separate legal entity established pursuant to an intergovernmental agreement dated August 1, 1994, between the City and County of Denver, Colorado, and the City of Aurora, Colorado, pursuant to the laws of the State of Colorado. The LRA is recognized by the Secretary of Defense as the Local Redevelopment Authority for the former Lowry Air Force Base (LAFB"). Complaint ¶ 5; Economic Development Conveyance Agreement Between the Department of the Air Force and the Lowry Economic Redevelopment Authority, June 30, 1995, (Exhibit 1 to Plaintiff's Motion for Partial Summary Judgment).

P 2 From 1937 through September 1994, LAFB was an active Air Force Base located in the City and County of Denver, Colorado and the City of Aurora Colorado. Complaint ¶ 9; Defendant's Answer ¶ 9.

P 4 LAFB was closed in September 1994 pursuant to the Base Realignment and Closure Act of 1990, Pub. L. No. 101-510, Div. B, Title XXIX, § 2911, 104 Stat. 1819 (Nov. 5, 1990) ("BRAC"). Complaint ¶ 11; Defendant's Answer ¶ 11.

P 5 A portion of the former LAFB, commonly known as the Northwest Neighborhood ("NWN") is an area north of 8th Avenue, south of 11th Avenue, west of Uinta Way, and east of Quebec Street, all of which is located in the City and County of Denver. Plaintiff's Motion for Partial Summary Judgment, Map of NWN, Exhibit 2.

P 6 Prior to closing LAFB as a military base, the Air Force used the NWN to house military ("Housing") installation personnel in wooden barracks which were constructed sometime before or during World War II. Complaint ¶ 23; Defendant's Answer ¶ 23.

P 7 A hospital complex comprised of approximately 20 buildings ("Hospital Complex") also was located within the boundaries of the NWN. The Hospital Complex was constructed in or about 1942. Heating for the Hospital Complex was provided by a dedicated steam plant using insulated steam pipes. Complaint ¶ 24; CH2M Hill RCRA Facilities Assessment, dated January 2005 ("RFA"), Section 4.5.3, p. 4-39.

P 8 The Air Force caused the both the Housing and Hospital Complex to be demolished sometime between 1959 and 1979. Complaint ¶ 25; RFA, Section 4.5.3, p. 4-39.

P 9 The CH2M Hill RCRA Facilities Assessment, dated January 2005 ("RFA") concluded that asbestos in the soils in the NWN was likely related to the demolition of buildings, including the hospital complex, by the Air Force between 1959 and 1979. CH2M Hill RCRA Facilities Assessment, dated January 2005 ("RFA"), Section 4.5.3, pp. 4-37 through 4-39.

P 10 The CH2M Hill RFA based its findings concerning asbestos in soils in the NWN on the fact that "[f]or most of [the LAFB's] existence, ACM was readily available for construction of standard, residential, commercial and industrial facilities. At the time, no health advisories existed that required asbestos abatement during facility restoration, expansion or removal. Therefore, prior to the late 1970s and early 1980s, removal of residential, commercial and industrial facilities did not require any special abatement of the ACM during facility removal or renovation .... [Accordingly,] "abatement would not have been likely for these early facilities." RFA, pp. 4-37 through 4-39.

P 11 Following the decision to close LAFB, the Air Force conducted or caused to be conducted a comprehensive environmental assessment of LAFB that was documented in a report entitled "Basewide Environmental Baseline Survey" dated December 10, 1993, which was supplemented from time to time (collectively, the "EBS"). Complaint ¶ 12.

P 12 The 1993 EBS documented the physical condition of real property at LAFB resulting from the storage, use, and disposal of hazardous substances and petroleum products and their derivatives over the installation's history. The EBS was intended as a tool to be used in the process of selling, leasing, and otherwise transferring property at LAFB. Complaint ¶ 13; Defendant's Answer ¶ 13; Deposition of Mark Spangler (April 14, 2008) at p. 36.

P 13 Nothing in the 1993 EBS indicated the presence of asbestos in the soil in the NWN. Id.

P 14 The Air Force later prepared Supplemental Environmental Baseline Surveys, also known as Environmental Baseline Survey Supplements, ("SEBS documents") as that were used to support the Air Force's transfer process for specific parcels of property. None of the

SEBS documents related to the transfer of property in the NWN identified the presence of asbestos soil. Deposition of Mark Spangler (April 14, 2008) at pp. 75-76, 82-83.

P 15 A group known as the Base Realignment and Closure ('BRAC") Cleanup Team ("BCT"), which included representatives of the Colorado Department of Public Health and Environment ("CDPHE"), the United States Environmental Protection Agency ("EPA") and the Air Force, was responsible pursuant to Federal base closure procedures for evaluating LAFB, overseeing environmental investigations and cleanup, and deeming property on LAFB suitable for transfer to the local redevelopment authority. Complaint ¶ 14; Defendant's Answer ¶ 14; Deposition of Mark Spangler (April 14, 2008) at p. 57.

P 16 During the time period from February 1999 through February 2003, pursuant to the requirements of CERCLA Section 120(h), the Air Force issued a series of Finding of Suitability for Transfer ("FOST") documents regarding the NWN. Each FOST deemed the NWN property that was the subject of the FOST to be suitable for transfer to the LRA and indicated that the property suitable for future residential development. Complaint ¶ 19; Defendant's Answer ¶ 19; Deposition of Mark Spangler (April 14, 2008) at pp. 80-81; Deposition of Charles Wright (April 14, 2008) at p. 42.

P 17 The BCT reviewed and approved the FOSTs related to property transfers by the Air Force for NWN properties. Complaint ¶ 14; Defendant's Answer ¶ 14.

P 18 Prior to the discovery of asbestos in the soil of the NWN in 2002, the Air Force conducted no investigation to determine the presence of asbestos in soils in the NWN. Deposition of Mark Spangler (April 14, 2008) at p. 107.

P 19 Previously unknown asbestos was discovered in the soils of the NWN in the late 2002 by one of the residential homebuilders, McStain Enterprises, Inc. ("McStain"), when

McStain was excavating a basement on a lot acquired from the LRA. Complaint ¶ 32; Defendant's Answer ¶ 32.

P 20 After the discovery of asbestos in the soils in certain areas of the NWN in 2002, the CDPHE issued two Compliance Advisories to the Builders, the LRA, and the Air Force as co-Recipients, on April 24 and April 30, 2003 concerning their activities related to the development and construction of residential properties in the NWN. Complaint ¶ 33; Defendant's Answer ¶ 33; CDPHE Compliance Advisories (Exhibit 3 to Plaintiff's Motion for Partial Summary Judgment).

P 21 CDPHE also issued a final response plan on August 15, 2003. CDPHE conducted public hearings and received public input on the Response Plan prior to its approval. The Response Plan detailed the procedures and standards for the cleanup of asbestos-contaminated soils. CDPHE concluded that the response actions and cleanup standards required by the Response Plan were protective of public health and the environment. Complaint ¶ 37; Defendant's Answer ¶ 37.

P 22 The LRA notified the Air Force in writing of its claims for indemnification under Section 330 and for breach of the Deed Covenants under CERCLA Section 120(h) on various occasions, including, but not limited to: December 12, 2002; March 5, 2003; May 28, 2003; June 5, 2003; August 22, 2003; October 30, 2003; and December 29, 2003. Complaint ¶ 42; Defendant's Answer ¶ 42.

P 23 The LRA demanded that Defendant, among other things, assume the defense, indemnification, and performance obligations required by Section 330, the Deed Covenants, and the Compliance Advisories. LRA furnished Defendant with copies of relevant papers LRA received, as well as evidence and proof of its claim, losses, and

damages. LRA also supplied additional information requested by Defendant relating to LRA's claim. Complaint ¶ 43; Defendant's Answer ¶ 43.

P 24 The Air Force refused to settle LRA's claims for breach of the Deed Covenants in writing on November 18, 2004, but informed LRA that it had forwarded the LRA's 330 Claim to Department of Defense ("DOD"), Office of the General Counsel, for appropriate action. Complaint ¶ 44; Defendant's Answer ¶ 44.

P 25 DOD issued a final decision denying LRA's Section 330 Claims in a letter dated December 1, 2005. Complaint ¶ 45; Defendant's Answer ¶ 45; Letter dated December 1, 2005 from James G. Van Ness, Acting Deputy General Counsel, DOD, to Thomas Markham, Executive Director, LRA (Exhibit 10 to Plaintiff's Motion for Partial Summary Judgment).

Respectfully submitted this 20th day of June, 2008.

SHERMAN & HOWARD L.L.C.

By: s/ Durward E. Timmons
Durward E. Timmons
90 South Cascade Avenue, Suite 1500
Colorado Springs, CO 80903
Phone: (719) 475-2440
Fax: (719) 635-4576

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 20th day of June, 2008, a true and correct copy of **PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS** was filed electronically and served on the following party. Service is complete upon filing, and parties may access this filing through the Court's system.

Kyle Eric Chadwick
U.S. Department of Justice
Civil Div. – Commercial Litigation Br.
1100 L Street, NW, 8th Floor
Washington, DC 20530
kyle.chadwick@usdoj.gov

s/ Durward E. Timmons