# EXHIBIT 1

# ECONOMIC DEVELOPMENT CONVEYANCE AGREEMENT BETWEEN THE DEPARTMENT OF THE AIR FORCE AND THE LOWRY ECONOMIC REDEVELOPMENT AUTHORITY

**THIS AGREEMENT** is made between the Secretary of the Air Force, on behalf of the United States of America ("Air Force " or "Grantor") and the Lowry Economic Redevelopment Authority, a separate legal entity established pursuant to an intergovernmental agreement between the City and County of Denver, Colorado and the City of Aurora, Colorado, pursuant to the laws of the State of Colorado, and recognized by the Secretary of Defense as the Redevelopment Authority for the communities in the vicinity of Lowry Air Force Base ("Redevelopment Authority" or "Grantee"). The Air Force and the Redevelopment Authority may be referred to jointly as the "parties" or separately as a "party."

## RECITALS

A. Lowry Air Force Base ("AFB") was closed as an active military installation on September 30, 1994, pursuant to the Defense Base Closure and Realignment Act of 1990, Pub. L. No. 101-510 ("DBCRA) as amended.

B. The closure of Lowry AFB, without other economic redevelopment, will cause economic hardship for the communities in the vicinity of Lowry AFB.

C. It is in the interest of the United States that the Department of Defense facilitate the economic recovery of communities that experience adverse economic circumstances as a result of the closure or realignment of military installations under the DBCRA. To encourage such redevelopment, Congress enacted the "Pryor Amendments" (Title XXIX of the National Defense Authorization Act for Fiscal Year 1994), Pub. L. No. 103-160, which provides for Economic Development Conveyances ("EDCs") of property on military installations closed under the DBCRA.

D. The Lowry Economic Redevelopment Authority has been recognized as a "Redevelopment Authority" by the Secretary of Defense and has requested an EDC of the property described on Exhibit A, attached hereto. The property described in Exhibit A may be referred to as the "EDC Premises."

E. The Air Force reviewed the Redevelopment Authority's request for the EDC and prepared explanations required by Section 2903, Pub. L. No. 103-160. The Secretary of the Air Force has determined that the requested EDC will facilitate the reutilization or redevelopment of Lowry AFB in a beneficial manner or of otherwise revitalizing the impacted communities and the economies of such communities. The Air Force has completed its Environmental Impact Analysis Process and on August 1, 1994, issued a Record of Decision supporting the Redevelopment Authority's requested EDC subject to the terms and conditions set forth in this Agreement.

F. The Air Force is required to take all remedial action necessary to protect human health and the environment with respect to hazardous substances remaining on the EDC Premises as required by Section 120(h)(3)(B) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (CERCLA) (42 U.S.C. § 9620(h)(3)(B)) before the EDC Premises can be conveyed by deed. Such action has not been completed and the EDC Premises cannot yet be conveyed by deed.

G. The Secretary of the Air Force, under the authority contained in 10 U.S.C. § 2667, has determined that leasing the EDC Premises pending the final disposition of the real and personal property will serve a public interest by facilitating the reutilization or redevelopment of Lowry AFB in a beneficial manner or of otherwise revitalizing the impacted communities and the economies of such communities.

**NOW, THEREFORE,** the Parties hereby covenant and agree as follows:

1. Entire Agreement. This Agreement, which includes (i) the related lease agreement attached hereto as Appendix 1 ("Related Lease"), (ii) the promissory note in the principal amount of $32,500,000.00 (THIRTY-TWO MILLION FIVE HUNDRED THOUSAND DOLLARS) made by the Redevelopment Authority to the order of the Air Force, attached hereto as Appendix 2 ("Promissory Note"), (iii) the deed of trust, with assignment of rents and fixture filing, encumbering the EDC Premises, attached hereto as Appendix 3 ("Deed of Trust"), all of which to be executed contemporaneously with this Agreement, and (iv) the form of the Quitclaim Deed attached hereto as Appendix 4 ("Deed") shall constitute the entire agreement between the Redevelopment Authority and the Air Force unless modified in writing signed by both parties. The Related Lease, the Promissory Note, the Deed of Trust and the Quitclaim Deed are collectively referred to herein as the "Loan Documents."

2. Condition of Premises. It is understood and agreed that the EDC Premises will be transferred "as is" and "where is," without any warranty or guarantee, express or implied, of any kind or nature, except as otherwise expressly stated in this Agreement, and the Air Force shall not be responsible for any liability to the Redevelopment Authority or third persons arising from such condition of the EDC Premises. The failure of the Redevelopment Authority to inspect fully the EDC Premises or to be fully informed as to the condition thereof will not constitute grounds for any noncompliance with the terms of this Agreement.

3. Contract for Transfer of EDC Premises. It is the intent of the Redevelopment Authority and the Air Force that this Agreement will constitute a contract for the transfer of the EDC Premises described in Exhibit A to the Redevelopment Authority for THIRTY-TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($32,500,000.00), setting forth the terms and conditions to be included in the deed and other instruments effecting the final disposition of the EDC Premises. Upon compliance with the requirements of CERCLA § 120(h)(3)(B) and other applicable legal and policy requirements, the Air Force will, by one or more quitclaim deeds incorporating the applicable terms and conditions as set out in this Agreement, as specifically set out in Appendix 4, and any other reservations, restrictions, easements, and exceptions, required by

law or pursuant to this Agreement, convey to the Redevelopment Authority all of its right, title and interest in and to the EDC Premises, and the Redevelopment Authority will accept the conveyance or conveyances. The terms and conditions of the consideration to be paid for this EDC are set forth in the Promissory Note and Deed of Trust at Appendixes 2 and 3.

4. Tender of Conveyance. Upon compliance with the applicable requirements of CERCLA § 120(h), the Air Force will tender conveyance of the EDC Premises or any identifiable portion of the EDC Premises to the Redevelopment Authority. Upon the Air Force's tender of conveyance of any such property, the Redevelopment Authority shall promptly accept the tender. Notwithstanding the foregoing, at the Redevelopment Authority's request, the Air Force, in its discretion, may agree to defer any conveyance or conveyances for a reasonable period of time in order to create reasonably compact and economically useful parcels. Such deferral shall not extend beyond the date when the requirements of CERCLA § 120(h) have been satisfied as to the entire EDC Premises. Failure of the Redevelopment Authority to accept the proper tender of a deed to any portion of the EDC Premises under this condition shall be deemed to be a breach of this Agreement, and the Air Force may exercise any of the remedies for breach or default set forth in this Agreement or otherwise provided by law. Following the exercise of its available remedies, the Air Force may make the EDC Premises available for negotiated or public sale in accordance with the terms of the Federal Property and Administrative Services Act of 1949 or other applicable law.

5. Conditions of Possession prior to Conveyance. Upon execution of this Agreement, the Redevelopment Authority may, upon execution of the Related Lease, immediately enter into possession of the EDC Premises and use, operate, and maintain the same subject to, and in accordance with, the terms and conditions herein and the Related Lease. In addition, for the period prior to final disposition of the EDC Premises by deed conveying legal title to the Redevelopment Authority, the exercise of the right of immediate possession shall be subject to and in accordance with the additional terms and conditions contained in subsections 5.1 to 5.6 inclusive. In the event of any inconsistency between the provisions of subsections 5.1, 5.2, 5.3, 5.4, 5.5 or 5.6 of this Agreement and any provisions of the Related Lease, the provisions of the Related Lease will control. In the event of any inconsistency between any provisions other than those contained in subsections 5.1, 5.2, 5.3, 5.4, 5.5 and 5.6 of this Agreement and any provisions of the Related Lease, the provisions of this Agreement will control.

5.1. Limitation on Major Structural Changes. The Redevelopment Authority shall be responsible for all costs associated with any major structural change or changes, including those made prior to conveyance by deed. Such additions or improvements shall be subject to all terms and conditions of this Agreement. The Redevelopment Authority agrees, to the extent permitted by applicable law, to indemnify and hold the Air Force harmless from mechanics' and materialmen's liens arising from any additions, improvements, or alterations effected by the Redevelopment Authority.

5.2. Right of Inspection. The Air Force or its designated representatives shall have the right to inspect the EDC Premises at all times upon reasonable notice.

5.3. Claim for Damages. The Redevelopment Authority agrees to indemnify, save and hold harmless the United States to the extent allowable under applicable law, against and from any and all claims for damages which may arise from, or in connection with, the privileges herein granted, excepting claims for injuries or death to persons caused by the gross negligence or willful misconduct of the officers, employees, or agents of the Air Force without contributory fault on the part of any person, firm or corporation.

5.4. Payment of Charges Due. The Redevelopment Authority shall assume responsibility for the payment of all taxes and assessments and public utility charges becoming due on the EDC Premises from the date of its entering into possession of the EDC Premises.

5.5. Violation or Neglect of Contract. If the Redevelopment Authority violates or neglects to perform any of the terms or conditions of this Agreement (i) prior to the delivery of a deed conveying title to any portion of the EDC Premises, it will, if required by the Air Force, vacate the EDC Premises, but subject to the rights of Sublessees under the Related Lease, or (ii) prior to the delivery of the Deeds conveying title to all of the EDC Premises to be conveyed, it will, if required by the Air Force, vacate that portion of the EDC Premises which remains encumbered by the Deed of Trust, but subject to the rights of Sublessees under the Related Lease, and, in either event, the Redevelopment Authority, if required by the Air Force, shall remove all property of the Redevelopment Authority therefrom and restore the land, improvements, facilities, and equipment included therein to as good condition on such date of expiration or relinquishment as when received, ordinary wear and tear excepted and subject to the rights of the Sublessees. If the Redevelopment Authority shall fail or neglect to remove such property and to restore the land, improvements, facilities, and equipment included therein, then, at the option of the Air Force, such property shall either become the property of the United States without compensation therefor, or the Air Force may cause such property to be removed and the land, improvements, facilities, and equipment included therein to be so restored at the expense of the Redevelopment Authority, and no claim for damage against the United States or its officers, employees, or agents shall be created by, or made on account of, such removal and restoration.

5.6. When United States Property is Unaccounted For. If, upon removal of the Redevelopment Authority from the EDC Premises prior to its acceptance of delivery of the instruments of transfer conveying title to the EDC Premises, any property, real or personal (other than unsalable supplies and maintenance materials), of the United States is unaccounted for, the Redevelopment Authority shall make replacement to the satisfaction of the Air Force, or in lieu of such replacement, the Redevelopment Authority shall, if so required by the Air Force, pay to the United States money in an amount sufficient to compensate for the loss sustained by the United States or any of its agencies.

6. Conveyance of Personal Property. Upon conveyance of any portion of the EDC Premises by Related Lease to the Redevelopment Authority, the Related Personal Property associated with the EDC Premises shall be conveyed to the Redevelopment Authority by Bill of Sale executed concurrently with such Related Lease.

7. Prohibition Of Certain Transactions. The consideration provisions set forth in the Loan Documents require the Redevelopment Authority to share the revenues generated from leases of the EDC Premises. The Redevelopment Authority shall enter into such leases of the EDC Premises only through negotiations intended to result in bona fide offers to lease at the highest price or rent feasible under the circumstances existing at the time of the transaction. Such transactions shall not be designed to, or have the effect of, circumventing the Air Force's recovery of its share of revenues, provided, however, that nothing in this condition shall preclude the use of economic incentives in such transactions as long as such incentives are arrived at between the Redevelopment Authority and its lessees, through good faith, arms–length negotiations. Such leases must be in conformance with Air Force-approved criteria. The determination of the Air Force as to the propriety of such transaction shall be conclusive, absent fraud or misrepresentation by the Redevelopment Authority. In addition, the following specific provisions shall apply:

7.1. Without the prior written approval of the Air Force, or its designee, the Redevelopment Authority shall not sell or lease or otherwise transfer any interest in real property in any portion of the EDC Premises to any person, corporation, public body, or other transferee, if any employee, officer, board member, or other person in a position of trust or responsibility within the Redevelopment Authority's organization, or family member thereof, has any ownership interest in the person, corporation, public body, or other transferee to which any interest of the EDC Premises may be transferred.

7.2. Should the Redevelopment Authority violate any provision of this condition, the Air Force may, at its option, nullify the violating transaction, require the Redevelopment Authority to account for the transaction as if it had occurred at appraised fair market value, or declare this Agreement in breach and exercise any available remedies set forth in this Agreement or otherwise provided by law.

7.3. Should the Redevelopment Authority sell or lease or otherwise transfer any interest in real property in any portion of the EDC Premises to any agency, public body, municipal corporation, or other public agency which is represented in the organization of the Redevelopment Authority, the consideration for the sale, lease or other transfer of any interest in real property in any portion of the EDC Premises transfer must be for the fair market value or greater, unless approved in writing by the Air Force, which approval shall not be unreasonably withheld.

8. Accounting and Audits.

8.1. In order to verify compliance with the terms and conditions of this Agreement regarding consideration, the Redevelopment Authority, or its successors or assigns, shall submit certified rent rolls for each facility located on the EDC Premises indicating the amount of gross rents received by the Redevelopment Authority during the prior month, which report shall be delivered on or before the 15th day after the end of the calendar month. Such certified rent roll shall be in a form consistent with commercial transactions and shall include, at a minimum, the identity of the rental facility or unit, the name of each renter, the monthly rent collected and delinquencies, if any.

8.2. Records and Books of Account. The Redevelopment Authority agrees that the Comptroller General of the United States or the Auditor General of the United States or the Auditor General of the United States Air Force or any of their duly authorized representatives shall, until the expiration of three (3) years after the expiration or earlier termination of this Agreement, have access to and the right to examine any directly pertinent books, documents, papers, and records of the Redevelopment Authority involving transactions related to this Agreement. The Redevelopment Authority further agrees that any sale, lease, or other transfer of any interest in the EDC Premises (or any part thereof) will contain a provision to the effect that the Comptroller General of the United States or the Auditor General of the United States Air Force or any of their duly authorized representatives shall, until three (3) years after the expiration or earlier termination of this Agreement, have access to, and the right to examine, any directly pertinent books, documents, papers, and records of the grante lessee, assignee or other successor involving transactions related to the transfer of any interest in DC Premises (or any part thereof).

9. Presence of Asbestos. The EDC Premises improved with buildings and facilities and equipment that may contain asbestos-containing materials. The Environmental Baseline Survey, a copy of which the Redevelopment Authority acknowledges having received, discloses the condition and known locations of any asbestos-containing materials.

**WARNING!**

9.1. The EDC Premises contain asbestos-containing materials. Unprotected or unregulated exposure to asbestos in product manufacturing, shipyard, and building construction workplaces have been associated with asbestos-related diseases. Both the Occupational Safety and Health Administration (OSHA) and the Environmental Protection Agency (EPA) regulate asbestos because of the potential hazards associated with exposure to airborne asbestos fibers. Both OSHA and EPA have determined that such exposure increases the risk of asbestos-related diseases, which include certain cancers and which can result in disability or death.

9.2. The Redevelopment Authority has been invited, urged, and cautioned to inspect the EDC Premises prior to submitting its application for an EDC. More particularly, the Redevelopment Authority was invited, urged and cautioned to inspect the EDC Premises as to its asbestos content and condition and any hazardous or environmental conditions relating thereto. The Air Force has assisted the Redevelopment Authority in obtaining any authorizations which may have been required in order to carry out any such inspections. The Redevelopment Authority shall be deemed to have relied solely on its own judgment in assessing the overall conditions of all or any portion of the EDC Premises, including, without limitation, any asbestos hazards or concerns.

9.3. No warranties, either express or implied, are given with regard to the condition of the EDC Premises including, without limitation, whether the EDC Premises do or do not contain asbestos or are or are safe for a particular purpose. The failure of the Redevelopment Authority to inspect or to be ...y informed as to the condition of all or any portion of the EDC Premises will not constitute grounds for any claim or demand for adjustment or withdrawal by the

Redevelopment Authority from this Agreement or rejection of the Air Force's tender of any deed pursuant hereto.

9.4. The description of the EDC Premises set forth in this Agreement and any other information provided therein with respect to the EDC Premises is based on the best information available to the Air Force and is believed to be correct, but an error or omission, including, but not limited to, the omission of any information available to the Air Force or any other Federal agency, shall not constitute grounds or reason for nonperformance of this Agreement or any claim by the Redevelopment Authority against the Air Force including, without limitation, any claim for allowance, refund, deduction, or payment of any kind. The Air Force will, at no expense to it, cooperate in executing and delivering quitclaim deeds necessary to convey omitted land intended to be included in the EDC Premises and to correct any description of the EDC Premises.

9.5. The Air Force assumes no liability for damages for personal injury, illness, disability, or death to the Redevelopment Authority or to the Redevelopment Authority's successors, assigns, employees, invitees, or any other person subject to the Redevelopment Authority's control or direction, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or other activity causing or leading to contact of any kind whatsoever with asbestos on the EDC Premises, whether the Redevelopment Authority, its successors or assigns, has or have properly warned or failed properly to warn the individual(s) injured.

9.6. The Redevelopment Authority further agrees that in its use and occupancy of the EDC Premises it will comply with all applicable Federal, State, interstate, and local laws relating to asbestos.

10. Presence of Lead-based Paint. The EDC Premises includes improvements that are presumed to contain lead-based paint because they are thought or known to have been constructed before 1978. The risks associated with lead-based paint are summarized in the Lead Warning Statement at Appendix 5. The deed or deeds conveying the EDC Premises to the Redevelopment Authority will contain a covenant to insure that the lead-based paint poisoning prevention requirements imposed by Title 24, Code of Federal Regulations, Part 35, are met before any use of the property for residential habitation or by children under seven (7) years of age.

11. Protection of Wetlands. If any portions of the EDC Premises are determined to be jurisdictional "wetlands" by the United States Army Corps of Engineers or the U.S. Environmental Protection Agency, all construction on those portions of the EDC Premises must comply with WETLAND CONSTRUCTION RESTRICTIONS contained in Title 33, Code of Federal Regulations, Sections 320 through 330, as amended, and any other applicable Federal, State, interstate or local wetlands regulations.

12. Hold Harmless. The Redevelopment Authority and any subsequent grantee, lessee, assignee, or other successor in interest to the EDC Premises or any subdivision thereof, shall, to the extent permitted under applicable law, indemnify, save, and hold harmless the United States from any damages, costs, expenses, liabilities, fines, or penalties resulting from releases,

discharges, emissions, spills, storage, disposal of, or any other acts or omissions related to any toxic or hazardous wastes, substances, or materials, or petroleum or petroleum derivatives by the Redevelopment Authority and any subsequent lessee, grantee, assignee, or other successor in interest to the EDC Premises or any subdivision thereof, their officers, agents, employees, contractors, or sublessees or licensees, or the invitees of any of them, giving rise to Air Force liability, civil or criminal, or responsibility under Federal, State, interstate or local environmental laws. This condition shall survive the expiration or termination of this Agreement, and the obligations hereunder of the Redevelopment Authority and any subsequent grantee, lessee, assignee, or other successor in interest to the EDC Premises or any subdivision thereof shall apply whenever the Air Force incurs costs or liabilities for the Redevelopment Authority's actions of the types described in this Section 12.

13. Environmental Cleanup Liability. Notwithstanding any other provision of this Agreement, the Redevelopment Authority and its successors do not hereby assume any liabil: responsibility for environmental impacts and damage caused by the Air Force's use of toxic c. hazardous wastes, substances, or materials, or petroleum or petroleum derivatives, on any portion of Lowry AFB, including the EDC Premises. The Redevelopment Authority and its successors have no obligation under this Agreement to undertake the defense of any claim or action, whether in existence now or brought in the future, solely arising out of the use of or release of any toxic or hazardous wastes, substances, or materials, or petroleum or petroleum derivatives, on or from any part of Lowry AFB, including the EDC Premises, prior to the earlier of the first day of the Redevelopment Authority's occupation or use of each such portion of or such building, facility or other improvement on the EDC Premises under any lease entered into between the Parties or the date of this Agreement.

13.1. For the purposes of this condition, "defense" or "environmental response, remediation, or cleanup" include liability and responsibility for the costs of damage, penalties, legal and investigative services relating to such use or release. "Occupation" or "use" shall mean any activity or presence (including preparation and construction) in or upon such portion of, or such building, facility or other improvement on the EDC Premises.

13.2. This condition does not relieve the Redevelopment Authority and its successors of any obligation or liability they might have or acquire with regard to third parties or regulatory authorities by operation of law.

13.3. The Air Force recognizes and acknowledges its obligations under Section 330 of the National Defense Authorization Act, 1993, P. L. 102-484, as amended, which provides for indemnification of certain transferees of closing defense property. In accordance with Section 330, The Secretary of Defense shall hold eligible parties harmless, and defend and indemnify them in full from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any way predicated upon, the release or threatened release of any hazardous substance, pollutant, or contaminant, or petroleum or petroleum derivative, as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.

13.4. This condition shall survive the termination of this Agreement.

14. Risk of Loss. From the time this Agreement is executed, and except as otherwise provided above, the Redevelopment Authority shall bear all risks and shall bear any and all losses sustained by reason of damage due to casualty that may be suffered by the EDC Premises and shall bear any and all losses associated therewith, subject to the provisions of the Related Lease and Deed of Trust regarding use of insurance proceeds. Notwithstanding any such losses or damage, each and all of the provisions of this Agreement shall remain unimpaired and in full force and effect.

15. Covenant Against Contingent Fees. The Redevelopment Authority warrants that no person or selling agency has been employed or retained to solicit or secure acceptance of this Agreement upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or established commercial or selling agencies maintained by the Redevelopment Authority for the purpose of securing business. For breach or violation of this warranty, the Air Force shall have the right to annul this Agreement without liability, or in its discretion, to require the Redevelopment Authority to pay to it the full amount of such commission, percentage, brokerage, or contingent fee.

16. Disputes.

16.1. Except as otherwise provided in this Agreement, any dispute concerning a question of fact arising under this Agreement which is not disposed of by agreement shall be decided by the Director, AFBCA, or his successor in function. The Director, AFBCA, shall reduce the decision to writing and mail or otherwise furnish a copy to the Redevelopment Authority. The decision of the Director, AFBCA, shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, the Redevelopment Authority mails or otherwise furnishes to the Director, AFBCA, a written appeal addressed to the Secretary of the Air Force. The decision of the Secretary or the Secretary's duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this condition, the Redevelopment Authority shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Redevelopment Authority shall proceed diligently with the performance of the Agreement in accordance with the decision of the Director, AFBCA.

16.2. In the alternative, before proceeding under subsection 16.1, either party may choose to submit the dispute to arbitration pursuant to the Administrative Disputes Resolution Act ("Act"), 5 U.S.C. §§ 571-583, as amended, by giving notice to the other party.

16.2.1. Within fifteen (15) days following receipt of notice, the receiving party shall submit to the other party the names of three arbitrators, experienced in the field of the matter of dispute, selected from a roster maintained by the Federal Mediation and Conciliation Service or

any comparable organization. The initiating party will then have fifteen (15) days to select one of the three arbitrators and provide notice to the receiving party of the selected arbitrator. The initiating party will promptly notify the arbitrator of the selection and arrange for his employment jointly by the parties.

16.2.2. The arbitrator will arbitrate the dispute according to the Act and any rules of the American Arbitration Association not in conflict with the Act or any other Federal statute. The arbitrator will convene the arbitration hearing within fifteen (15) days after being hired and render a decision within thirty (30) days after the hearing unless both parties agree to an extension of time. The Air Force and the Redevelopment Authority agree to share the costs of the arbitrator equally, subject to the availability to the Air Force of appropriated funds.

16.2.3. Pending final decision of a dispute hereunder, the Redevelopment Authority shall proceed diligently with the performance of the Agreement in accordance with the decision of the Director, AFBCA.

16.2.4. Pursuant to the Act, the authority of a Federal agency to use dispute resolution proceedings under the Act shall terminate on October 1, 1995, as to disputes arising on or after that date; however, consistent with the Act, the Air Force may elect to continue then pending dispute resolution proceedings. If authority to use alternative dispute resolution is not reenacted, this clause shall be of no force and effect on and after October 1, 1995, except to the extent the Air Force has elected to continue a then pending dispute resolution proceeding. If the Act is extended or reenacted in modified form, but continues to authorize alternative dispute resolution by Federal agencies, the provisions of this Agreement shall be deemed to be modified to be consistent with the amended statutory procedures.

16.2.5. In the event an arbitration award is made which is contrary to the Air Force 's position and the Secretary of the Air Force subsequently vacates the award pursuant to 5 U.S.C. § 580(c), the Redevelopment Authority may proceed, by agreement of the parties hereby entered, pursuant to subsection 16.1. In such case, the evidence, positions of the parties, and the arbitrator's decision shall not be admissible or considered in any proceedings under subsection 16.1 or any subsequent judicial proceedings.

16.3. This subsection does not preclude consideration of questions of law in connection with decisions provided for in subsection 16.1. Nothing in this subsection, however, shall be construed as making final the decision of any administrative official, representative or board on a question of law.

17. Officials Not to Benefit. No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this Agreement or to any benefit to arise therefrom. This provision shall not be construed to extend to this Agreement if made with a corporation for its general benefit.

18. Gratuities. The Air Force may, by written notice to the Redevelopment Authority, terminate this Agreement if it is found after notice and hearing, by the Secretary of the Air Force,

or the Secretary's duly authorized representative, that gratuities in the form of entertainment, gifts, or otherwise, were offered or given by the Redevelopment Authority, or any agent or representative of the Redevelopment Authority, to any officer or employee of the Air Force with a view toward securing an agreement or securing favorable treatment with respect to the awarding or amending, or the making of any determinations with respect to the performing of such agreement; provided that the existence of the facts upon which the Secretary of the Air Force or the Secretary's duly authorized representative makes such finding, shall be an issue and may be reviewed in any competent court. In the event this Agreement is so terminated, the Air Force shall be entitled to pursue the same remedies against the Redevelopment Authority as it could pursue in the event of a breach of this Agreement by the Redevelopment Authority, and as a penalty in addition to any other damages to which it may be entitled by law, to exemplary damages in an amount as determined by the Secretary of the Air Force or the Secretary's duly authorized representative which shall be not less than three nor more than ten times the costs incurred by the Redevelopment Authority in providing any such gratuities to any such officer to employee. The rights and remedies of the Air Force provided in this condition shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Agreement.

19. No Joint Venture. Nothing contained in this Agreement will make, or will be construed to make, the parties hereto partners or joint venturers with each other, it being understood and agreed that the only relationship between the Air Force and the Redevelopment Authority is that of landlord and tenant, and lender and borrower. Neither will anything in this Agreement render, or be construed to render, either of the parties hereto liable to any third party for debts or obligations of the other party hereto.

20. Failure of the Air Force to Insist on Compliance. The failure of the Air Force to insist in any one or more instances upon strict performance of any of the terms, covenants or conditions of this Agreement shall not be construed as a waiver or a relinquishment of the Air Force's rights to the future performance of any such terms, covenants or conditions, but the obligations of the Redevelopment Authority with respect to such future performance shall continue in full force and effect.

21. Attorneys' Fees. If either party files any action or brings any proceeding against the other arising from this Agreement, then as between the parties, the prevailing party shall be entitled to recover as an element of its costs of suit, and not as damages, reasonable attorney fees to be fixed by the court. The "prevailing party" shall be the party who is entitled to recover its costs of suit, whether or not suit proceeds to final judgment. A party not entitled to recover its costs shall not recover attorney fees. No sum for attorney fees shall be included in calculating the amount of a judgment for purposes of deciding whether a party is entitled to its costs or attorney fees. All references to "attorneys' fees" in this Agreement shall include without limitation such amounts as may then be charged to such party for legal services furnished by attorneys in the employ of such party, at rates not exceeding those that would be charged by outside attorneys for comparable services.

22. Planning and Development Activities. The Air Force is aware that the Redevelopment Authority is acquiring the EDC Premises for development. Accordingly, the Air Force agrees that

it shall cooperate reasonably with the Redevelopment Authority and sign such documents and undertake such other acts, so long as such can be completed without incurring costs or liability, as are necessary for the Redevelopment Authority to complete the planning, zoning and development of the EDC Premises, the resale and marketing of any portion of the EDC Premises, and the formation and operation of special districts, metropolitan districts and other quasi-governmental entities organized for the purpose of providing infrastructure facilities and services to or for the benefit of the EDC Premises.

22.1. The Air Force consents to the inclusion of any portion of the EDC Premises within the boundaries of any special district, metropolitan district, or other political subdivision of the State of Colorado, or other entity organized and operated for the purposes of providing infrastructure facilities or services to or for the benefit of the EDC Premises and empowered : issue bonds or other obligations under the laws of the State of Colorado.

22.2. The Air Force consents to the zoning, masterplanning, subdivision, or other similar land use approval or proceeding initiated or otherwise approved by the Redevelopment Authority and relating to any portion of the EDC Premises, provided, however that any such land use development activities shall be approved by the Board of Directors of the Authority under the Redevelopment Plan and shall not be inconsistent with the Record of Decision.

22.3. Nothing in this Section 22.3. shall be construed as consent by the Air Force, or its successor, to permit or participate in any action by the Redevelopment Authority which would in any way impair the Air Force's security interest in the EDC Premises or Related Lease.

23. Additional Parcels; Asbestos and Lead-Based Paint. As part of the consideration for the EDC Premises and the assumption by the Redevelopment Authority of the obligations in this Section 23, the Air Force will, on or before June 30, 1996, amend this Agreement to include in the EDC Premises Parcels DD and PP as described in the Record of Decision for Lowry AFB dated August 1, 1994, as supplemented on June 28, 1995. In the event the Air Force does not so amend this Agreement, the consideration for the EDC Premises shall be reduced to THIRTY TWO MILLION DOLLARS ($32,000,000.00), and the parties agree to amend this Agreement and the Loan Documents accordingly. From and after the date of this Agreement, the Redevelopment Authority agrees to assume responsibility for compliance with all laws and regulations related to the presence, containment, release, abatement, removal, handling, transportation, and disposal of asbestos-containing materials ("ACM") and lead-based paint ("LBP"), now or hereafter existing, on and from the EDC Premises, including maintaining same in good condition. In conjunction therewith, the Redevelopment Authority hereby releases the Air Force of all liability associated with ACM and LBP on the EDC Premises, and it agrees to indemnify and defend the Air Force against, and hold the Air Force harmless from, all claims, suits, demands, actions, liabilities, judgments, and costs accruing after the date of this Agreement for death, personal injury, and property damage arising from, or in connection with, the presence, containment, release, abatement, removal, handling, transportation, and disposal of ACM and LBP from and after the date of this Agreement.

24. Cross-Collateralization; Merger. Any default by the Redevelopment Authority under this Agreement shall constitute an event of default under the other Loan Documents, and any default by the Redevelopment Authority as a party under any of the other Loan Documents shall constitute an event of default under this Agreement. Upon the conveyance of any portion of the EDC Premises to the Redevelopment Authority by deed in accordance with this Agreement, the leasehold interest of the Redevelopment Authority under the Related Lease shall merge into the fee interest of the Redevelopment Authority in such part of the EDC Premises so conveyed, and the Related Lease shall terminate as to such parts, provided however, that such conveyance and termination of the Related Lease shall not effect a release of the lien of the Deed of Trust on any such part unless and until the requirements of the reconveyance provisions of the Deed of Trust have been fully satisfied.

25. Headings or Titles. The brief headings or titles which may precede sections of this Agreement are merely for purposes of identification, convenience, and ease of reference, and will be completely disregarded in the construction of this Agreement.

26. Counterparts. This Agreement is executed in two (2) counterparts each of which is deemed an original of equal dignity with the other and which is deemed one and the same instrument as the other.

27. Personal Pronouns. All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, will include all other genders.

28. Exhibits and Appendices. The following exhibits and appendices are attached to and made a part of this Agreement:

| | |
|---|---|
| Exhibit A | Legal Description and Survey of EDC Premises |
| Exhibit A-1 | Narrative Boundary and Facilities Identification |
| Exhibit B | Related Personal Property |
| Appendix 1 | Related Lease |
| Appendix 2 | Promissory Note |
| Appendix 3 | Deed of Trust |
| Appendix 4 | Draft Quitclaim Deed |
| Appendix 5 | Lead Warning Statement |

(REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK)

IN WITNESS WHEREOF, the United States, acting by and through the Secretary of the Air Force, has caused these presents to be duly executed for and in its name and behalf by ALAN K. OLSEN, who has this 30th day of June, 1995, set his hand and seal.

UNITED STATES OF AMERICA

BY: ______________________
ALAN K. OLSEN
Director, Air Force Base Conversion Agency

Witnessed by:
______________________

LOWRY ECONOMIC REDEVELOPMENT AUTHORITY

ATTEST: ______________________
SIDNEY L. PAPEDO
Secretary/Treasurer

BY: ______________________
FORREST M. CARSON
Chairperson

COMMONWEALTH OF VIRGINIA)
) ss:
COUNTY OF ARLINGTON )

PERSONALLY APPEARED before me, Victoria A. McIntyre, a Notary Public in and for said County and State, the within named Alan K. Olsen known to be the person described in and who executed the foregoing on behalf of the United States of America, and acknowledged that he, with authority so to do, signed and delivered the foregoing on the day and year therein mentioned as the free act and deed of the United States of America.

GIVEN under my hand and official seal and office, this the 30th day of June, 1995.

V. A. McIntyre
Notary Public
Commonwealth of Virginia

My commission expires:__________, 199__.

Embossed Hereon Is My
Commonwealth of Virginia Notary Public Seal
My Commission Expires November 30, 1997
VICTORIA A. McINTYRE

STATE OF COLORADO )
) ss:
COUNTY OF DENVER )

The foregoing instrument was acknowledged before me this 6th day of ~~June~~ July, 1995, by Forrest M. Carson, as Chairperson of Lowry Economic Redevelopment Authority.

Witness my hand and official seal.

My commission expires: 9-4, 1995.

PATRICIA R. HENSON NOTARY (SEAL) PUBLIC STATE OF COLORADO

Patricia R. Henson
Notary Public