# EXHIBIT 5
(Part 1)

PRIORITY 6

# FINDING OF SUITABILITY TO TRANSFER (FOST)

**PARCELS AA AND Q** (Portion of Negotiated Sale to Lowry Redevelopment Authority)
**PARCELS T, U, AND X** (Department of Interior Assignment-City and County of Denver)
**PARCEL E** (Department of Education Assignment-Wings Over the Rockies)
**PARCEL QQ** (Department of Health and Human Services Assignment-City and County of Denver)
**PORTIONS OF PARCELS B, D, I, J, ~~K~~/M, Y, AND PP** (Portions of Economic Development Conveyance)

## LOWRY AIR FORCE BASE, COLORADO

## 1.0 PURPOSE

1.1 The purpose of this Finding of Suitability to Transfer (FOST) is to document environmentally related findings and the suitability to transfer the proposed deed of real property and any improvements at Lowry Air Force Base (AFB), Colorado to the Lowry Redevelopment Authority (LRA), City and County of Denver, and Wings over the Rockies (Transferees). The property is described in Section 2 below. The property will be transferred by several deeds and its anticipated uses include residences, recreation, industrial/storage, medical activities, and a museum.

1.2 This FOST is a result of a thorough analysis of information contained in the following documents:

- Halliburton NUS Corp. (Halliburton). December 1993. Basewide Environmental Baseline Survey (EBS), Lowry Air Force Base, Colorado.
- Engineering-Science, Inc. (ES). February 1994a. Draft Final Installation Restoration Program Facility Assessment Work Plan, Lowry Air Force Base, Colorado.
- Engineering-Science, Inc. (ES). January 1994b. Tank C Closure Report, Lowry Air Force Base, Colorado.
- ATC Environmental Inc. (ATC). March 1994. Lead Based Paint Inspection, Lowry Air Force Base, Colorado.
- Halliburton NUS Corp. (Halliburton). June 1994. Final Environmental Impact Statement (FEIS), Lowry Air Force Base, Colorado.
- AFBCA. June 1995. Environmental Baseline Survey Supplement for the Economic Development Conveyance Lease, Lowry Air Force Base, Colorado.
- Parsons Engineering Science, Inc. May 1996. Final Installation Restoration Program Facility Assessment Technical Report, Lowry Air Force Base, Colorado.
- AFCEE Environmental Analysis Division. February 1997. Final Environmental Baseline Survey for Parcel CA-2, Lowry Air Force Base, Colorado.
- Versar, Inc. (Versar) May 1998. Draft Final Mercury Survey Report Phase II Environmental Baseline Survey, Lowry Air Force Base, Colorado.
- Versar, Inc. (Versar) August 1998. Draft Final Phase II Environmental Baseline Survey

Investigation Report.

- Versar, Inc. (Versar). October 1998. Environmental Conditions and Transfer Suitability Report Site Specific Facility Transfer Data Sheets, Lowry Air Force Base, Colorado.
- Radiometric Measurement Reports, October 1996 and December 1999 (Laboratory and Radiation Services Division, Colorado Department of Public Health and Environment).
- Draft Environmental Conditions and Transfer Suitability Report Phases VII - XI (Versar, 1998); and
- EBS Supplement (EBSS) for the portion of Negotiated Sale Property Parcels AA and Q, Denver Parks Parcels T, U, and X (Department of Interior Assignment), City of Denver Health and Hospital Parcel QQ (Health and Human Services Assignment) and Economic Development Conveyance ROD portions of Parcels B, D, I, J, L, M, Y, and PP, Lowry Air Force Base, Colorado, November 1998.

## 2.0 PROPERTY DESCRIPTION

A map of the Transfer Property location is provided in Attachment 1. The property is comprised of approximately 536 acres of land and 161 facilities. The facilities within the property are listed in Attachment 2 of the EBSS for the Transfer Property.

## 3.0 NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) COMPLIANCE

The environmental impacts of this proposal have been adequately analyzed and disclosed in compliance with NEPA. Based on this analysis, the environmental impacts of proceeding with the transfer of the portion of Negotiated Sale Property Parcels AA and Q, Denver Parks Parcels T, U, and X (Department of Interior Assignment), Wings over the Rockies Museum Parcel E (Department of Education Assignment), City of Denver Health and Hospital Parcel QQ (Health and Human Services Assignment) and Economic Development Conveyance ROD portions of Parcels B, D, I, J, L, M, Y, and PP, are not sufficiently adverse to human health and the environment to outweigh the other advantages to the community and the public interest and prevent the transfer of the property. The findings of the Air Force's environmental analysis are documented in the FEIS, dated July 1994.

## 4.0 ENVIRONMENTAL CONDITION OF THE PROPERTY

The property classifications in Table 4-1 are based on a review of the documents listed in Section 1.2 of this EBSS. The condition of the listed facilities has changed from that identified in the Basewide EBS (1993). Additional information is provided in the EBSS (November 1998).

**Table 4-1 Property Categories**

| Facility | Description | EBS Category | EBSS Category | Property Condition Change |
|---|---|---|---|---|
| 259 | Red Cross Office | N/A | 1 | This building was not included in the EBS. There are no known environmental issues or concerns with the facility. |

| Facility | Description | EBS Category | EBSS Category | Property Condition Change |
|---|---|---|---|---|
| 286, 316, 317, 319, 320, 326, 328, 350, 373, 374, 376, 577, 769, 774, 775, 1308, 1309, 1330, and 1488 | Various | 2 | 1 | These buildings are being moved from Category 2 to Category 1 to bring the property characterization in-line with the CERCLA revision to property categories. These are buildings where only storage (but no release) of hazardous material occurred. |
| 303 | Electric Power Station (misc.) | 7 | 1 | The BCT recommended no further investigations in 2/13/95 and CDPHE approved a No Further Action document for an AST at the site on 6/23/98. |
| 321 | Storage | 7 | 3 | There was a reported PCB and oil spill at the site. However, no evidence of contamination was later found. |
| 329 | Entomology Shop | 7 | 1 | There were no reported releases within this facility. During the Facility Assessment, soil samples were taken outside of the facility; no evidence of contamination was found. |
| 354 and 372 | Industrial (Electronic Maintenance) and Administrative | 2 | 3 | These buildings are being moved from Category 2 to Category 3 to bring the property characterization in-line with the CERCLA revision to property categories. There were releases of hazardous materials here but below action levels. |
| 361 | Base Heat Plant | 7 | 3 | Several releases had been reported. After investigation, the BCT determined no further investigations were warranted based on Phase II EBS results except for Mercury. A subsequent Mercury investigation found levels to be below action levels. |
| 364 | Small Arms Range/ Industrial | 7 | 1 | No contamination was discovered during several inspections/investigations. |
| 618 | Base Credit Union | N/A | 1 | This building was not included in the EBS. There are no known environmental issues or concerns with the facility. |
| 768 | Shed | N/A | 1 | No evidence found of any environmental contamination. |
| 1034 | Storage | 7 | 1 | The BCT concurred with the recommendation of the "EBS Phase II" project that this site be excluded from further investigations based on the results of sampling and survey reports that found no evidence of any releases or spills. |
| 1437 | Fuel Distribution Island | 7 | 2 | The only releases at this site are from petroleum products. |
| 1439 | Vehicle Maintenance Facility/Washrack | 7 | 1 | No evidence found of any environmental contamination |
| 1489 | Storage | 7 | 1 | No evidence found of any environmental contamination. |

## 5.0 DEED RESTRICTIONS AND NOTIFICATIONS

The environmental documents listed in Section 1.2 were evaluated to identify environmental factors or resources that might present a threat to human health or the environment and require either specific restrictions under the Deed or notifications to the Transferee. These factors are listed in Attachment 2 and further discussed in the following sections.

### 5.1 Hazardous Substances Notification

There were five (5)-reported releases on the property, which are described in the EBSS. A hazardous substance notice of the type and quantity of hazardous substances and the time at which storage for one (1) year or more, release, or disposal took place will be included in the transfer documents.

### 5.2 Installation Restoration Program (IRP)

There are no active IRP sites on the property to be transferred. A list of the IRP sites adjacent to the transfer property (within 1/4 mile of the parcel boundaries), and their descriptions, is provided in the EBSS. Areas are located on the property where storage or release of hazardous substances has occurred, but at concentrations that do not require a removal or remedial response. The determination that no remedial action is required is supported by the October 23, 1998 BCT Finding of No Significant Environmental Concerns.

Covenants will be included in the Deeds to ensure that any response or corrective action found to be necessary after the date of delivery of the Deeds that are the responsibility of the Air Force will be conducted by the United States. Provisions will be included in the Deeds allowing the United States access to the property whenever such response or corrective action is found to be necessary, or where such access is necessary to carry out a response or corrective action on an adjoining property.

### 5.3 Petroleum Products and Derivatives

Petroleum-contaminated sites are present on the property. Further investigations and/or soil removal may be required in the vicinity of Building 1437. Covenants will be included in the Deeds to ensure that environmental investigations and remedial activities will not be disrupted at any time. Such covenants include, but are not limited to, prohibiting activities that could disrupt any remedial activities or jeopardize the protectiveness of those remedies, such as (1) surface application of water that could affect the migration of contaminated ground water; (2) subsurface drilling or use of ground water unless the Air Force determines that there will be no adverse impacts on the cleanup process; or (3) construction that would interfere with, negatively impact, or restrict access for cleanup work. The Deeds will reserve access to allow continued access for the Air Force (or its designated contractor) and regulatory agencies to monitor the effectiveness of cleanup, perform five-year reviews, and/or take additional remedial or removal actions.

### 5.4 Underground and Aboveground Storage Tanks (USTs and ASTs)

There are no existing USTs or ASTs located on the property.

**5.5 Asbestos Containing Material (ACM)**

ACM is located on the property. The Transferee will be responsible for managing the ACM in compliance with all applicable laws and regulations. Notice will be provided in the deeds that the Transferee will be responsible for complying with all applicable Federal, State, and local laws relating to asbestos. During the VSI, asbestos was generally observed to be in "good" condition.

**5.6 Lead-Based Paint (LBP)**

All facilities may contain LBP since they were constructed prior to 1979. These facilities were constructed when lead-based paint was commonly used throughout the United States, including at military installations. While there has been a prohibition against the sale of lead-based paint for use on residential structures since 1978, there has been no prohibition against the use of lead-based paint on non-residential structures. The Air Force has had a policy since 1993 not to use lead-based paint on non-residential buildings. Additionally, the Air Force has managed its properties to ensure that lead-based paint contamination of the soil is not a problem (i.e., pediatric lead blood level testing).

Some facilities will be considered high-priority facilities because it can be assumed that their reuse and regular occupancy will include children under age seven. The Transferee is not restricted from occupying these facilities, but will be responsible for managing all LBP and potential LBP in compliance with all applicable laws and regulations. Most residential units are currently occupied. During the VSI, the paint was observed to be in good condition for those units currently occupied and in poor condition, with flaking and peeling paint, for those units not occupied.

The Air Force contracted for a lead-based paint inspection of several facilities; a report was prepared in 1994. This report included soil sampling at playground areas within the housing area. The Transferee will be notified through the EBS and EBSS of all available and relevant lead-based paint assessment data. The Transferee will properly dispose of all property containing LBP.

**5.7 Historic Property**

The Air Force has completed all actions required of it by the terms of the Programmatic Agreement with the Colorado State Historic Officer, Advisory Council on Historic Preservation. No deed notifications or restrictions are required. While no deed notifications or restrictions are required, the recipient of the property transferred by the Economic Development Conveyance will be notified that portions of the property may be designated a local landmark and subject to local land use restriction and control.

**5.8 Threatened and Endangered Species**

The Loggerhead Shrike, classified as a Federal candidate (Category 2) species, has been identified on the transfer property. The species prefers semi-open country and uses wires, trees, and scrub for lookout posts.

Other threatened or endangered species which may be sighted on or use the transfer property or adjoining property include three mammals, six birds, one fish, one insect, and three plants.

FEIS Table 3.4.11 and Section 3.4.5.3 respectively, lists and describes these candidates and known threatened or endangered species. Notice of the threatened or endangered species will be given in the Deeds.

### 5.9 Wetlands

Certain areas on the property are designated as wetlands. Notice of presence of the wetlands will be given in the Deeds.

## 6.0 REGULATOR COORDINATION

The Colorado Department of Public Health and Environment (CDPHE) and the United States Environmental Protection Agency (USEPA) Region VIII were notified of the initiation of the FOST and EBSS and were invited to participate in preparing the working draft documents. Consolidated draft documents were provided for their formal review and comment. The U.S. EPA responded with comments in a letter dated December 10, 1998 (Attachment 3-1). The CDPHE responded with comments in a letter dated January 9, 1999 (Attachment 3-2). All comments from these letters were addressed or incorporated, as indicated in Attachment 4, "Air Force Response to Regulator Comments."

On January 14, 1999, the Air Force provided the U.S. EPA and the CDPHE copies of the Draft Final EBSS and FOST for the final three (3) day review. On January 19, 1999, EPA responded that it had no further comment to the FOST (Attachment 3-3.) On January 21, 1999, CDPHE verbally told AFBCA that their comments had been addressed.

**7.0 FINDING OF SUITABILITY TO TRANSFER**

The deed proposal has been adequately assessed and evaluated for (a) environmental hazards, (b) environmental impacts anticipated from future use of the property, and (c) adequate notice of disclosure resources. The future use of this property does not present a current or future risk to human health or the environment, subject to inclusion and compliance with the appropriate deed covenants as addressed above. The property, therefore, is suitable for transfer.

Albert F. Lowas Jr.
ALBERT F. LOWAS, JR.
Director

February 9, 1999
Date

Attachments:
1. Property Map
2. Environmental Factors Considered
3. Regulator's Comments
3-1. US EPA Letter Dated December 10, 1998
3-2. CDPHE Letter Dated January 9, 1999
3-3. US EPA Letter Dated January 19, 1999
4. Air Force Response to Regulator's Comments

Attachment 1

Property Map

Lowry AFB, Colorado


Property to be transferred
Property Transfer Map

# Attachment 2

## Environmental Factors Considered

| Deed Restriction or Notification Required? | | Environmental Factors Considered |
|---|---|---|
| No | Yes | |
| | | Environmental Restoration, Hazardous Substances, Petroleum: |
| | X | Hazardous Substances (Notification) |
| X | | Installation Restoration Program (IRP)* |
| | X | Petroleum Products and Derivatives |
| X | | Oil/Water Separators (OWSs) |
| X | | Unexploded Ordnance |
| X | | Radioactive & Mixed Wastes |
| X | | Storage Tanks (USTs/ASTs) |
| | | Disclosure Factors/Resources: |
| | X | Asbestos |
| X | | Drinking Water Quality |
| X | | Indoor Air Quality |
| | X | Lead-Based Paint (Housing) |
| | X | Lead-Based Paint (Facilities other than Housing) |
| X | | PCBs |
| X | | ~~Radon~~ |
| | | Other Factors: |
| X | | Air Conformity/Air Permits |
| X | | Energy (Utilities) |
| X | | Flood plains |
| X | | Historic Property (Archeological, Native American, Paleontological) |
| X | | Outdoor Air Quality |
| X | | Prime/Unique Farmlands: |
| X | | Sanitary Sewer Systems (Wastewater) |
| X | | Sensitive Habitat |
| X | | Septic Tanks (Wastewater) |
| X | | Solid Waste |
| | X | Threatened and Endangered Species |
| X | | Transportation |
| | X | Wetlands |

Note: Each item identified with an "X" in the "Yes" column is discussed in Section 5
* Indicates adjacent property

# Attachment 3

# Regulator's Comments

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 8
999 18TH STREET - SUITE 500
DENVER, CO 80202-2466

December 10, 1998

Bruce Kroehl
BRAC Environmental Coordinator
AFBCA, DB/Lowry
P. O. Box 200788
Denver, CO 80220-0288

Dear Mr. Kroehl:

On November 25, 1998, I received for review and comment the Draft Environmental Baseline Survey Supplement (EBSS) and the Draft Finding of Suitability for Transfer (FOST) for a portion of the Negotiated Sale Property Parcels AA and Q, the Denver parks Parcels T, U, and X (Department of Interior Assignment), the City of Denver Health and Hospital Parcel QQ (Health and Human Services Assignment), and the Economic Development Conveyance ROD portions of Parcels B, D, I, J, L, M, Y, and PP. These transfer parcels include approximately 536 acres, 160 facilities, and numerous demolished building footprints. As further delineated in the EBSS:

- Area 1 (portions of Parcels I and L), approximately 112 acres, includes 49 buildings, three children's playgrounds, a softball field, and numerous demolished building footprints:
- Area 2 (portions of Parcels D, E, M, PP, and T), approximately 47 acres, includes 38 buildings and numerous demolished building footprints:
- Area 3 (portions of Parcel J), approximately 34 acres, includes 50 buildings, a children's playground, and numerous demolished building footprints:
- Area 4 (portions of Parcels Q, U, X, Y, and AA), approximately 333 acres, includes 10 buildings, tennis and basketball courts, two softball fields, and numerous demolished building footprints:
- Area 5 (portions of Parcels B and QQ), approximately 10 acres, includes five buildings and numerous demolished building footprints

For purposes of this review, these areas will be collectively referred to as the '536 FOST Parcel'.

Printed on Recycled Paper

locations also could present a significant risk to human health or the environment under certain conditions (e.g., where the non-residential area is adjacent to residential areas; where the level of lead from lead-based paint is suspected to exceed risk-based levels of concern, such as might occur underneath a water tower, radar array, or bridge; as well as areas which may pose an adverse ecological impact).

Among other things, the above-referenced 1994 ACT report discusses soil samples collected from nine LAFB playgrounds/recreational facilities (including facility 1114, Area 3). The ACT report further notes that five of these facilities showed lead contamination in the playground soils in concentrations ranging from 88 mg/kg to 760 mg/kg - lead possibly attributed to the normal weathering of the LBP used on the old playground equipment or surrounding structures. Accordingly, I recommend revising pertinent EBSS and/or FOST text so as to adequately address the current environmental condition of these facilities and any restrictions on the use of these facilities by 'unrestricted' populations following transfer.

When entering into a deed for transfer under section 120(h)(3) of the Comprehensive Environmental, Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9620, the Air Force is required to include in such deed(s) a covenant warranting that all remedial action necessary to protect human health and the environment with respect to any hazardous substance remaining on the Parcel has been taken before the date of transfer. Also, as provided in the covenant required pursuant to CERCLA 120(h)(4), the Air Force will perform any additional response action or corrective action on this Parcel, including with respect to lead from LBP, found to be necessary after the date of transfer of the property, where a significant risk to human health and the environment can be demonstrated. Accordingly, the Air Force will include a deed restriction that will restrict the property from being used as residential habitation or by children under six years of age (including child care and recreation facilities) unless and until all LBP hazards are evaluated and, as necessary, abated prior to such use.

As stated earlier, EPA has determined that the release of lead to soils from LBP on structures falls within the CERCLA definition of a hazardous substance release. Based on the review of the available documentation, which does not address potential hazards associated with LBP, EPA agrees that, except for the potential lead contamination, any residual contaminant concentrations found on the 536 FOST Parcel do not require remedial action. However, because hazards associated with LBP have not been fully evaluated, EPA does not believe that there is an adequate basis for the Air Force determination that all remedial action necessary to protect human health and the environment with respect to any hazardous substances remaining within the parcel has been taken. If the Air Force chooses to transfer this parcel, and if at some time sampling data establishes that remedial action, including action relating to LBP risks, is found to be necessary after the date of property transfer, EPA believes that such action is the responsibility of the Department of Defense (DoD).

The review of this documentation was completed pursuant to section 120(h)(3) for the sole purpose of addressing the requirements of that provision. EPA expressly reserves all rights and authorities relating to information not contained in the documentation, whether such information is known as of this date or is discovered in the future. Unless the issues relating to

Various portions of the 536 FOST Parcel, following appropriate transfer, are destined for subsequent redevelopment into mixed residential and recreational areas, business and commercial areas, and a community center.

I have reviewed these documents in light of information found or referenced in the December 1993 Base-Wide Environmental Baseline Survey ("EBS"), the March 21, 1994, Lead-Based Paint Inspection Report (the 'ACT Report'), the August 1995 Environmental Baseline Survey Supplement (EBSS), and the October 1998 Environmental Conditions and Transfer Suitability Reports, Phases VI through Phase XI. In addition, I have visited the site with you and other Air Force representatives, participated in several BRAC Cleanup Team (BCT) discussions about this area, and reviewed this action with the CDPHE BCT representative.

Initial EPA review comments follow:

Maps supplied with the EBSS show, in part, Area boundaries and locations of the various referenced facilities. Some of the Area boundaries have been modified slightly since the maps were produced. Accordingly, I recommend providing updated maps with production of the Final 536 FOST.

Building 1138, Area 3, partially overlies the western-most, run-on plume and, therefore, should be excluded from the 536 FOST Parcel

The EBSS, page 6, section 2.2.3 makes reference to exclusion of B329 from the 536 FOST Parcel. Determinations concerning B329 suitability to transfer were modified during the BCT meeting on December 3, 1998. Accordingly, I recommend including B329 in the Parcel and modifying the 536 FOST text accordingly.

The 536 FOST does not contain a section or specifically state or reference pertinent Environmental Protection Provisions. Accordingly, AFBCA should provide necessary and appropriate Provisions in the final 536 FOST. EPA comments concerning those Provisions will follow receipt of and opportunity to review the drafted language.

Most buildings in the Transfer Parcel were erected prior to 1978 when lead-based paint (LBP) was commonly used throughout the United States, including at military installations. The age of most buildings in the Parcel suggest the likelihood that LBP is present on many, if not all, of the interior and exterior painted surfaces. This in turn makes it likely that there is lead from LBP on or in soils surrounding these structure through the action of normal weathering and maintenance (e.g. scraping and repainting) over the years.

The release of lead from lead-based paint on structures due to normal weathering and maintenance falls within the CERCLA definition of a hazardous substance release. Efforts to limit exposure to lead from lead-based paint have been focused on residential areas, where, because of exposure patterns and the presence of a particularly susceptible population, significant risks have been identified. However, contamination from lead-based paint at non-residential

LBP are resolved, DoD policy requires that the forgoing information be made available to the public with the signed FOST.

If you have any questions, please call me at 303.312.6983.

Sincerely,

Floyd D. Nichols
BRAC Project Manager, LAFB BCT

cc (by e-mail):
Jeff Edson, CDPHE
Deanna Kaskie, LRA
Theresa Yarber, AFBCA/DB

# STATE OF COLORADO

Roy Romer, Governor
Patti Shwayder, Executive Director
Dedicated to protecting and improving the health and environment of the people of Colorado
HAZARDOUS MATERIALS AND WASTE MANAGEMENT DIVISION
http://www.cdphe.state.co.us/hm/
4300 Cherry Creek Dr. S.
Denver, Colorado 80246-1530
Phone (303) 692-3300
Fax (303) 759-5355
222 S. 6th Street, Room 232
Grand Junction, Colorado 81501-2768
Phone (970) 248-7164
Fax (970) 248-7198
Colorado Department of Public Health and Environment

January 8, 1999

| NATURE SAVER™ FAX MEMO 01616 | Date 1-8-99 | # of pages ▸ 2 |
|---|---|---|
| To Bruce Kroehl | From Jeff Edson | |
| Co./Dept. AFBCA | Co. CDPHE | |
| Phone # | Phone # 692-3388 | |
| Fax # 303-676-4008 | Fax # | |

Mr. Bruce Kroehl
Site Manager
AFBCA/DB - Lowry
P. O. Box 200788
Denver, CO 80220-0788

Re: Draft Environmental Baseline Survey Supplement (EBSS) and the Draft Findings of Suitability for Transfer (FOST) for a portion of the Negotiated Sale Property Parcels AA and Q, Denver Parks Parcels T,U, and X (Department of Interior Assignment), City of Denver Health and Hospital Parcel QQ (Health and Human Services Assignment), and Economic Development Conveyance ROD portions of Parcels B,D,I, J, L, M, Y, and PP at Lowry Air Force Base.

Dear Mr. Kroehl:

The Colorado Department of Public Health and Environment, Hazardous Materials and Waste Management Division (the Division) has completed it's review on the above referenced report. The Air Force has assured the Division that through visual inspections and/or environmental sampling the properties identified in this transfer do not contain hazardous wastes, or hazardous substances that pose an unacceptable risk to human health and the environment. At this time the Division has no independent data or knowledge to verify or refute this assurance. Therefore, the Division concurs with the contents of the report with the following specific comments:

1. All building debris from the demolition of these structures that contains lead based paint must be disposed of in a state permitted solid waste landfill. Additions concerns with the management of materials containing lead based paint have been identified in EPA's review comments on this report, dated December 10, 1998 (F. Nichols to B. Kroehl). The Division concurs with EPA's concerns with this issue.

2. Unless addition characterization of potential contamination is provided, the debris from Building 329, a structure known to store numerous types of pesticides, insecticides and herbicides, should be disposed of in a state permitted solid waste landfill.

The Finding of Suitability to Transfer process requires buildings and parcels that are going to be transferred be remediated prior to transfer, or that the deeds transferring such buildings or parcels contain covenants warranting that all remedial action found to be necessary after the date of such

...ducted by the United States. In addition, the transferee should be made ...omprehensive Environmental Response Compensation and Liability Act ...ction 120 (h) may impose additional restrictions and requirements on the deed of ...refore, the transferee should review the actual transfer documents to determine the ...restrictions and requirements on its use of the transferred premises.

...PHE is committed to ensuring that the Base Realignment and Closure at Lowry Air ...Base proceeds efficiently. Participation by CDPHE in the FOST process is intended to ...ure that the property transfer activities at Lowry Air Force Base are protective of human ...ealth and the environment. We are supportive of transfer activities whenever it can be assured that contamination associated with these properties has been remediated in a manner which is protective of all users of these facilities. Our comments are intended to fulfill the assurance of the continued protection of public health and the environment.

If you have any questions regarding the above, please contact me at (303) 692-3388.

Sincerely,

Jeff Edson
Manager
Remediation and Restoration Unit

cc: Monica Sheets, AGO
Sheila Gaston, CDPHE
Floyd Nichols, EPA Region VIII

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 8
999 18TH STREET - SUITE 500
DENVER, CO 80202-2466

January 19, 1999

Bruce Kroehl
BRAC Environmental Coordinator
AFBCA, DB/Lowry
P. O. Box 200788
Denver, CO 80220-0288

Dear Mr. Kroehl:

On November 25, 1998, I received for review and comment the Draft Environmental Baseline Survey Supplement (EBSS) and the Draft Finding of Suitability for Transfer (FOST) for a portion of the Negotiated Sale Property Parcels AA and Q, the Denver parks Parcels T, U, and X (Department of Interior Assignment), the City of Denver Health and Hospital Parcel QQ (Health and Human Services Assignment), and the Economic Development Conveyance ROD portions of Parcels B, D, I, J, L, M, Y, and PP. Those transfer parcels include approximately 536 acres, 160 facilities, and numerous demolished building footprints. For purposes of that review, those areas were collectively referred to as the '536 FOST Parcel'. Various portions of the 536 FOST Parcel, following appropriate transfer, are destined for subsequent redevelopment into mixed residential and recreational areas, business and commercial areas, and a community center. EPA review comments were returned to you on December 10, 1998.

On January 14, 1999, I received from you a copy of the revised Draft Final 536 FOST which included, in part, Regulator Comments submitted following their review of the November 1998 draft. My review of this revised documentation was completed pursuant to CERCLA section 120(h)(3) for the sole purpose of addressing the requirements of that section. Pursuant to this review, EPA has no additional comments on the 536 FOST.

If you have any questions, please call me at 303.312.6983.

Sincerely,

Floyd D. Nichols
BRAC Project Manager, LAFB BCT

cc (by e-mail):
Sheila Gaston, CDPHE
Deanna Kaskie, LRA
Theresa Yarber, AFBCA/DB



Printed on Recycled Paper

# Air Force Response to EPA's Comments

**EPA Comment #1:** Maps supplied with the EBSS show, in part, boundaries and locations of the various referenced facilities. Some of the Area Boundaries have been modified slightly since the maps were produced. Accordingly, I recommend providing updated maps with the production of the final 536 FOST.

**AFBCA Response #1:** Agreed; we provide an updated map in the final FOST.

**EPA Comment #2:** Building 1183, Area 3, partially overlies the western-most, run-on plume, and therefore, should be excluded from the 536 FOST.

**AFBCA Response #2:** Building 1183 was demolished in the summer of 1997. While the footprint of this building extends into the plume, only that portion of property that is 50 feet away from the suspected plume contamination line is being transferred.

**EPA Comment #3:** The 536 FOST does not contain a section or specifically state or reference pertinent Environmental Protection Provisions. Accordingly, AFBCA should provide necessary and appropriate Provisions in the final 536 FOST. EPA comments concerning those Provisions will follow receipt of and opportunity to review the drafted language.

**AFBCA Response #3:** Excluding discussion of lead-based paint, which is the subject of your comment #4, the property being transferred is considered clean; therefore, there are no significant environmental restriction covenants required for this transfer. We understand EPA concerns that the Transferee exhibit due diligence and caution when excavating soils in the event he uncover an unknown pocket of contamination; however, the Air Force can only disclose what it knows about the property and apply restrictions accordingly.

**EPA Comment #4:** Most buildings in the Transfer Parcel were erected prior to 1978 when lead-based paint (LBP) was commonly used throughout the United States, including military installations. The age of most buildings in the Parcel suggest the likelihood that LBP is present on many, in not all, of the interior and exterior painted surfaces. This in turn makes it likely that there is lead from LBP on or in soils surrounding these structures through the action of normal weathering and maintenance (e.g. scraping and repainting) over the years.

The release of lead from lead-based paint on structures due to normal weathering and maintenance falls within the CERCLA definition of a hazardous substance release. Efforts to limit exposure to lead from lead-based paint have been focused on residential areas, where, because of exposure patterns and the presence of a particularly susceptible population, significant risks have been identified. However, contamination from lead-based paint at non-residential locations also could present a significant risk to human health or the environment under certain conditions (e.g., where the non-residential area is adjacent to residential areas; where the level of lead from lead-based paint is suspected to exceed risk-based levels of concern, such as might occur underneath a water tower, radar array, or bridge; as well as areas which may pose an adverse ecological impact).