IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOWRY ECONOMIC REDEVELOPMENT AUTHORITY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06-75 C |
| | ) | (Judge Wheeler) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO COMPEL SUPPLEMENTAL INTERROGATORY RESPONSE

Pursuant to Rule 37(a)(2)(B) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court to order plaintiff, the Lowry Economic Redevelopment Authority ("the LRA"), to supplement its response to our interrogatory number 22, which we served in March 2008. Undersigned counsel hereby certifies that we have conferred in good faith with the LRA in an attempt to resolve this discovery dispute without involving the Court.

As we demonstrate below, unless the Court grants this motion and directs the LRA to set forth, under oath, the precise factual and legal grounds upon which it seeks to recover approximately $5.6 million in alleged environmental costs, the Government will be severely prejudiced in preparing our pretrial filings, which are due on or before August 9, 2008, and in preparing for the trial that is scheduled to begin on September 9, 2008.

## BACKGROUND

### A. Plaintiff's Claims

In this case, the LRA seeks to recover costs it allegedly incurred as a result of actual or potential soil contamination, during construction activities by the LRA and others at the former site of Lowry Air Force Base in Colorado, between 2000 and 2005. The complaint contains two

counts. Count one seeks indemnification, pursuant to section 330 of the National Defense Authorization Act of 1993, as amended, 10 U.S.C. § 2687 note, for costs the LRA allegedly incurred principally in connection with two "compliance advisories" that were issued by the Colorado Department of Public Health and the Environment in April 2003, concerning the area of Lowry known as the Northwest Neighborhood. Compl. ¶¶ 46-63. On June 20, 2008, we filed a motion for judgment on the pleadings, in substantial part, as to count one, and the LRA filed a motion for partial summary judgment as to liability upon that count.

Count two, by contrast, alleges that the Government is liable for breaching covenants which were included, pursuant to a requirement of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9620(h)(3)(A)(ii), in various deeds by which the Department of the Air Force transferred parcels at Lowry to the LRA. Compl. ¶¶ 64-70. Specifically, the LRA alleges that the United States breached promises to conduct "remedial action necessary to protect human health and the environment with respect to [one or more] hazardous substance[s]" in and outside the Northwest Neighborhood. See id. ¶ 67.

The wording of the covenants varies, in this case, from deed to deed. CERCLA mandates, however, that the deed covenants provide as follows:

> 2. Grant of Covenant [CERCLA 42 U.S.C. Section 9620(h)(3)(A)(ii)(I)]. The GRANTOR [United States] covenants that all remedial action necessary to protect human health and the environment with respect to any hazardous substance remaining on the Property has been taken before the date of transfer.
>
> 3. Additional Remediation Obligation [CERCLA 42 U.S.C. Section 9620 (h)(3)(A)(ii)(II)]. The GRANTOR covenants and warrants that the GRANTOR shall conduct any additional remedial action necessary after the date of transfer of any hazardous substance existing on the Property prior to the date of this Deed. This covenant shall not apply to the extent that the

> GRANTEE [here, the LRA] caused or contributed to any release or threatened release of any hazardous substance, pollutant, contaminant, petroleum, or petroleum derivative.

42 U.S.C. § 9620(h)(3)(A)(ii)(I), (II) (emphasis added, bracketed citations in original).

B. The Interrogatory And Responses At Issue

On March 13, 2008 – approximately 21 months after the start and four months before the conclusion of discovery in this matter – we served our third set of interrogatories (numbers 22, 23, and 24) upon the LRA by overnight delivery and e-mail courtesy copy.

At issue here is interrogatory number 22, in which we asked the LRA to describe the circumstances surrounding its incurrence of all of the alleged cleanup costs that it seeks to recover, and to state, for all such costs, whether the LRA seeks to recover them pursuant to count one (section 330), count two (the CERCLA deed covenants), or both:

> For every location at which any substance or material was allegedly remediated, abated, or removed, and for which you seek to recover the costs of such remediation, abatement, or removal in this case, identify as specifically as possible: (i) the location (in descending order of specificity: by street address; cross streets; or filing, block, and lot number); (ii) all substance(s) or material(s) that you allege were remediated, abated, or removed at that location (distinguishing, e.g., ACM from disaggregated asbestos); (iii) the earliest document of which you are aware that reflects or records plaintiff's discovery of each identified substance or material at that location; and (iv) whether you seek to recover costs arising at that location under the first claim for relief in the complaint, the second claim for relief, or both.

In its initial response to interrogatory number 22, which it served on April 11, 2008, the LRA effectively declined to answer:

> RESPONSE: The LRA objects to this interrogatory as the terms "substance or material" and "disaggregated asbestos" are overly broad and vague. Furthermore, records indicating areas where substances or materials were remediated, abated, or removed

> and records concerning costs incurred by the LRA were previously made available to the Air Force. The burden of deriving or ascertaining the answers to Interrogatory No. 22 is substantially the same for Defendant and Plaintiff.

Attachment 1.

We ascertained from the LRA's counsel that the "records" which this response asserted were "previously made available to the Air Force" comprised the 13 ring binders of invoices and related cost documentation that the LRA transmitted to the Department of Defense, from time to time, between June 2003 and late 2005, in connection with its claim for indemnification under section 330. See Compl. ¶43; id. Exh. 6 at 26-45.

On April 17, 2008, days after receiving the interrogatory response above, the Government deposed William "Billy" Voigt, who was plaintiff's asbestos inspector and environmental project manager throughout the period, from 2000 to 2006, when the LRA incurred the costs it seeks to recover. We introduced as deposition exhibits dozens of purchase orders, invoices, and other documents from the LRA's claim binders. Mr. Voigt was able to recall and generally describe some of the expenditures reflected in the binders. However, he testified that he knew nothing about much of the documentation. See Attachment 2 (excerpts)

During the same week that Mr. Voigt was deposed, undersigned counsel advised counsel for the LRA, among other things, that, as the Government could not obtain adequate information concerning the damages claimed by the LRA from Mr. Voigt, or from a second deponent, the LRA's director of construction, we intended to file a motion to compel a complete, substantive response to our interrogatory number 22, unless the LRA timely provided such a response.

As we noted in the unopposed motion we filed with the Court on May 20, 2008, seeking an enlargement of the dispositive motion deadline, we agreed to wait until early June for the

LRA to compile and provide the additional information necessary to complete its interrogatory response. Ultimately, the LRA transmitted two batches of documents to us. The first transmittal, dated May 29, 2008, concerned costs allegedly incurred in the Northwest Neighborhood. The second transmittal, dated June 10, 2008, addressed other costs.

Both of the LRA's supplemental transmittals consisted of a three-page cover letter; a one-page summary of the claimed Northwest Neighborhood or non-Northwest Neighborhood costs; a Lowry map; an Excel spreadsheet containing information (which we already possessed) derived from invoices in plaintiff's claim binders; and a collection of tables summarizing the labor costs claimed in each transmittal. Attachments 3, 4 (maps omitted). Somewhat confusingly, the LRA asserts that its two cover letters, but not the other documents, are part of a "settlement process," rather than a supplemental discovery response, and are subject to Federal Rule of Evidence 408.

On June 17, 2008, undersigned counsel advised counsel for the LRA via e-mail that we intended to file a motion to compel concerning interrogatory number 22, given that plaintiff still has not provided the specific narrative information we requested concerning each location where a cleanup of hazardous material, for which the LRA seeks compensation, allegedly took place.

## ARGUMENT

### THE LRA SHOULD RESPOND FULLY AND UNDER OATH TO INTERROGATORY 22, SPECIFYING THE FACTUAL AND LEGAL BASES OF ITS STATUTORY INDEMNIFICATION AND BREACH CLAIMS

None of the LRA's objections to interrogatory number 22 is valid, yet the interrogatory remains substantively unanswered. Accordingly, with trial fast approaching, we must reluctantly and respectfully request the Court to compel a complete and prompt response.

The LRA's April 2008 interrogatory response, quoted above, raised three types of objections. First, the LRA asserted that "the terms 'substance or material' and 'disaggregated asbestos' are overly broad and vague." Not so. Interrogatory number 22 is limited by its express terms to remediation, abatement, and removal activities "for which [plaintiff] seek[s] to recover the costs." The LRA knows or should know what substances and materials are relevant to its own lawsuit. And, in context, the distinction between asbestos-containing material ("ACM") and disaggregated asbestos is obvious and unobjectionable.

Second, the LRA asserted that "records indicating areas where substances or materials were remediated, abated, or removed and records concerning costs incurred by the LRA were previously made available to the Air Force." This may be an indirect attempt to invoke the business record exception of RCFC 33(d). If so, the attempt is improper and ineffective, given that, among other things, a responding party invoking that Rule must specifically direct the propounding party to documents that fully answer the interrogatory. "[A] general reference to a pile of documents," which is exactly what the LRA offered here, "will not suffice." AAB Joint Venture v. United States, 75 Fed. Cl. 448, 451-52 (2007) (collecting cases); accord Continental Ill. Nat. Bank & Trust Co. of Chi. v. Caton, 136 F.R.D. 682, 686-87 (D. Kan. 1991) (pointing to "a mass of business records" is "an abuse" of the exception).

We established in Mr. Voigt's deposition, in any event, that plaintiff's 13 claim binders do not answer our interrogatory, even with the aid of the LRA's environmental project manager.

Finally, the LRA contended in its April 2008 response that "the burden of deriving or ascertaining the answers to Interrogatory No. 22 is substantially the same for Defendant and Plaintiff." This is plainly untrue. If the LRA does not state specifically when and where the

cleanup activities for which it seeks to recover took place; the reasons for those activities, including all substances or materials at issue; and why the LRA alleges the United States is liable for the costs incurred at each location, we have no way to find out before trial.

The supplemental schedules provided by the LRA within the last month simply organize the raw cost data from plaintiff's 13 claim binders in somewhat more accessible formats, and adjust the claimed labor costs to a limited extent. The LRA's cover letters, for which it invokes the protection of Rule 408, add no information, regardless of their admissibility or inadmissibility at trial. The LRA has not identified the locations where cleanup costs it seeks to recover were incurred; specified what was allegedly cleaned up at those locations, when it was allegedly found, and by whom; or – what we would expect to be easiest – sorted the costs the LRA claims under count one from those it claims under count two. A good faith response to our interrogatory number 22 requires no less.

Prompt disclosure of the requested information under oath is vital, moreover, to a fair trial. Among other things, as noted above, the elements plaintiff must establish in order to recover differ significantly between the two counts. Count one – upon which we have sought judgment on the pleadings pursuant to RCFC 12(c) – requires the LRA to prove that it satisfies the conditions for indemnification set forth in section 330, including, without limitation, that the claimed costs "ar[ose] out of any claim for personal injury or property damage . . . that result[ed] from, or [wa]s in any manner predicated upon, the release or threatened release of any hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative as a result of Department of Defense activities . . . ." 10 U.S.C. § 2687 note.

To recover under count two, by contrast, the LRA must establish, among other things, that the United States breached promises, set forth in the deed covenants, that the Government (1) had performed, before the date of an applicable deed, "all remedial action necessary to protect human health and the environment with respect to any hazardous substance" that existed at the deeded land; and (2) "shall conduct any [such] remedial action necessary after the date of transfer," unless the LRA "caused or contributed to any release or threatened release" that necessitated the remediation.

Accordingly, with respect to count two in particular, we need to know, well in advance of trial, at a minimum, when, where, and how the covenants allegedly were breached. Specifically, we must learn, as we asked in interrogatory number 22, "(i) the location" where any remediation allegedly became necessary to protect human health and the environment, within the meaning of an applicable deed covenant; "(ii) all substance(s) or material(s) that [the LRA] allege[s] were remediated, abated, or removed at [each] location . . .; [and] (iii) the earliest document of which [plaintiff is] aware that reflects or records plaintiff's discovery of each identified substance or material at that location . . . ."

The LRA requested indemnification by the United States five years ago, in June 2003, and filed this lawsuit more than 53 months ago. It has no excuse for not responding in full, under oath, approximately two months before trial, to an unobjectionable interrogatory calling for disclosure of the legal and factual grounds upon which it seeks relief.

## CONCLUSION

For the reasons given above, we respectfully request the Court to order the LRA to respond fully and under oath to our interrogatory number 22 no later than July 15, 2008.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

s/Jeanne E. Davidson
by Bryant G. Snee
JEANNE E. DAVIDSON
Director

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7561
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

DAVID R. VECERA
Environmental Attorney
Air Force Legal Services
Agency
Environmental Law and
Litigation Division
Arlington, VA

June 27, 2008

CERTIFICATE OF FILING

I hereby certify that on June 27, 2008, this document was filed electronically. I understand that service is complete upon filing, and parties may access this filing through the Court's electronic system.

s/Kyle Chadwick