IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOWRY ECONOMIC REDEVELOPMENT AUTHORITY, | ) | |
| Plaintiff, | ) | No. 06-75C (Judge Wheeler) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC") and the amended scheduling order, defendant, the United States, respectfully responds to the proposed findings filed by plaintiff, the Lowry Economic Redevelopment Authority ("the LRA"), with its June 20, 2008 motion for partial summary judgment. As demonstrated in our pending motion for judgment upon the pleadings, these proposed findings are immaterial because count one fails to state a claim for relief.

1. The Lowry Economic Redevelopment Authority ("LRA") is a separate legal entity established pursuant to an intergovernmental agreement dated August 1, 1994, between the City and County of Denver, Colorado, and the City of Aurora, Colorado, pursuant to the laws of the State of Colorado. The LRA is recognized by the Secretary of Defense as the Local Redevelopment Authority for the former Lowry Air Force Base ("LAFB"). Complaint ¶ 5; Economic Development Conveyance Agreement Between the Department of the Air Force and the Lowry Economic Redevelopment Authority, June 30, 1995 (Exhibit 1 to Plaintiffs Motion for Partial Summary Judgment).

Response:

______Uncontroverted.

2. From 1937 through September 1994, LAFB was an active Air Force Base located in the City and County of Denver, Colorado and the City of Aurora Colorado. Complaint ¶ 9; Defendant's Answer ¶ 9.

Response:

______The 1937 date is controverted as unsupported by the cited documents. The complaint alleges, and our answer admits, that the base was opened in "approximately 1940." Otherwise uncontroverted.

3. [Plaintiff submitted no proposed finding number 3.]

4. LAFB was closed in September 1994 pursuant to the Base Realignment and Closure Act of 1990, Pub. L. No. 101-510, Div. B, Title XXIX, § 2911,104 Stat. 1819 (Nov. 5, 1990) ("BRAC"). Complaint ¶ 11; Defendant's Answer ¶ 11.

Response:

______Uncontroverted.

5. A portion of the former LAFB, commonly known as the Northwest Neighborhood ("NWN"), is an area north of 8th Avenue, south of 1lth Avenue, west of Uinta Way, and east of Quebec Street, all of which is located in the City and County of Denver. Plaintiff's Motion for Partial Summary Judgment, Map of NWN, Exhibit 2.

Response:

______Uncontroverted.

6. Prior to closing LAFB as a military base, the Air Force used the NWN to house military ("Housing") installation personnel in wooden barracks which were constructed sometime before or during World War II. Complaint ¶ 23; Defendant's Answer ¶ 23.

Response:

Controverted in part. Citation to its complaint does not satisfy the LRA's burden of going forward under RCFC 56(h)(1) (requiring "citations to the opposing party's pleadings or to documentary evidence" (emphasis added)); and our answer does not admit that the entire Northwest Neighborhood was used for military housing.

7. A hospital complex comprised of approximately 20 buildings ("Hospital Complex") also was located within the boundaries of the NWN. The Hospital Complex was constructed in or about 1942. Heating for the Hospital Complex was provided by a dedicated steam plant using insulated steam pipes. Complaint ¶ 24; CH2M Hill RCRA Facilities Assessment, dated January 2005 ("RFA"), Section 4.5.3, p. 4-39.

Response:

Controverted as unsupported. Citation to its complaint does not satisfy the LRA's burden of going forward under RCFC 56(h)(1) (requiring "citations to the opposing party's pleadings or to documentary evidence" (emphasis added)); and plaintiff did not file the January 2005 RFA as an exhibit to its motion. See RCFC 56(c) (requiring supporting materials to be "on file"). Our answer (which is not cited) does not admit the truth of this allegation.

8. The Air Force caused the both the Housing and Hospital Complex to be demolished sometime between 1959 and 1979. Complaint ¶ 25; RFA, Section 4.5.3, p. 4-39.

Response:

______Controverted as unsupported. Citation to its complaint does not satisfy the LRA's burden of going forward under RCFC 56(h)(1) (requiring "citations to the opposing party's pleadings or to documentary evidence" (emphasis added)); and plaintiff did not file the January 2005 RFA as an exhibit to its motion. See RCFC 56(c) (requiring supporting materials to be "on file"). Our answer (which plaintiff does not cite) denied this allegation.

9. The CH2M Hill RCRA Facilities Assessment, dated January 2005 ("RFA") concluded that asbestos in the soils in the NWN was likely related to the demolition of buildings, including the hospital complex, by the Air Force between 1959 and 1979. CH2M Hill RCRA Facilities Assessment, dated January 2005 ("RFA"), Section 4.5.3, pp. 4-37 through 4-39.

Response:

______Controverted as unsupported. The LRA did not file the January 2005 RFA as an exhibit to its motion. See RCFC 56(c) (requiring supporting materials to be "on file"). Moreover, even if this proposed finding were supported, there is substantial evidence that could support a finding that the LRA caused or "contributed to" the release or threatened release of asbestos fibers in the Northwest Neighborhood, given that the LRA had performed significant demolition; removal of old utility lines; regrading; installation of electric, gas, water, and sewer lines; and street construction, throughout the Northwest Neighborhood, before the discovery of the asbestos that was of concern to the CDPHE. See Pl. Mot. Exh. 9 (Berger Dep. 22-33).

10. The CH2M Hill RFA based its findings concerning asbestos in soils in the NWN on the fact that "[F]or most of [the LAFB's] existence, ACM was readily available for construction of standard, residential, commercial and industrial facilities. At the time, no health advisories

existed that required asbestos abatement during facility restoration, expansion or removal. Therefore, prior to the late 1970s and early 1980s, removal of residential, commercial and industrial facilities did not require any special abatement of the ACM during facility removal or renovation . . . . [Accordingly,] abatement would not have been likely for these early facilities." RFA, pp. 4-37 though 4-39.

Response:

______Controverted as unsupported. The LRA did not file the January 2005 RFA as an exhibit to its motion. See RCFC 56(c) (requiring supporting materials to be "on file").

11. Following the decision to close LAFB, the Air Force conducted or caused to be conducted a comprehensive environmental assessment of LAFB that was documented in a report entitled "Basewide Environmental Baseline Survey" dated December 10, 1993, which was supplemented from time to time (collectively, the "EBS"). Complaint ¶ 12.

Response:

______Controverted as unsupported. Citation to its complaint does not satisfy the LRA's burden of going forward under RCFC 56(h)(1) (requiring "citations to the opposing party's pleadings or to documentary evidence" (emphasis added)). Our answer (which plaintiff does not cite) does not admit the truth of this allegation.

12. The 1993 EBS documented the physical condition of real property at LAFB resulting from the storage, use, and disposal of hazardous substances and petroleum products and their derivatives over the installation's history. The EBS was intended as a tool to be used in the process of selling, leasing, and otherwise transferring property at LAFB. Complaint ¶ 13; Defendant's Answer ¶ 13; Deposition of Mark Spangler (April 14, 2008) at p. 36.

Response:

______Controverted as unsupported. Citation to its complaint does not satisfy the LRA's burden of going forward under RCFC 56(h)(1) (requiring "citations to the opposing party's pleadings or to documentary evidence" (emphasis added)). Our answer does not admit the truth of this allegation. Moreover, the LRA did not file the Spangler deposition transcript as an exhibit to its motion. See RCFC 56(c) (requiring supporting materials to be "on file").

13. Nothing in the 1993 EBS indicated the presence of asbestos in the soil in the NWN. Id.

Response:

______Controverted as unsupported. See our preceding response.

14. The Air Force later prepared Supplemental Environmental Baseline Surveys, also known as Environmental Baseline Survey Supplements ("SEBS documents"), as [sic] that were used to support the Air Force's transfer process for specific parcels of property. None of the SEBS documents related to the transfer of property in the NWN identified the presence of asbestos soil. Deposition of Mark Spangler (April 14, 2008) at pp. 75-76, 82-83.

Response:

______Controverted as unsupported. The LRA did not file the Spangler deposition transcript as an exhibit to its motion. See RCFC 56(c) (requiring supporting materials to be "on file").

15. A group known as the Base Realignment and Closure ("BRAC") Cleanup Team ("BCT"), which included representatives of the Colorado Department of Public Health and Environment ("CDPHE"), the United States Environmental Protection Agency ("EPA") and the Air Force, was responsible pursuant to Federal base closure procedures for evaluating LAFB,

overseeing environmental investigations and cleanup, and deeming property on LAFB suitable for transfer to the local redevelopment authority. Complaint ¶ 14; Defendant's Answer ¶ 14; Deposition of Mark Spangler (April 14, 2008) at p. 57.

Response:

______Controverted as unsupported. The LRA did not file the Spangler deposition transcript as an exhibit to its motion. See RCFC 56(c) (requiring supporting materials to be "on file").

16. During the time period from February 1999 though February 2003, pursuant to the requirements of CERCLA Section l20(h), the Air Force issued a series of Finding of Suitability for Transfer ("FOST") documents regarding the NWN. Each FOST deemed the NWN property that was the subject of the FOST to be suitable for transfer to the LRA and indicated that the property suitable for future residential development. Complaint ¶ 19; Defendant's Answer ¶ 19; Deposition of Mark Spangler (April 14,2008) at pp. 80-81; Deposition of Charles Wright (April 14, 2008) at p. 42.

Response:

______Controverted as unsupported. Citation to its complaint does not satisfy the LRA's burden of going forward under RCFC 56(h)(1) (requiring "citations to the opposing party's pleadings or to documentary evidence" (emphasis added)). Our answer does not admit the truth of this allegation. Moreover, the LRA did not file either the Spangler deposition transcript, or page 42 of the Wright deposition transcript, as exhibits to its motion. See RCFC 56(c) (requiring supporting materials to be "on file").

17. The BCT reviewed and approved the FOSTs related to property transfers by the Air Force for NWN properties. Complaint ¶ 14; Defendant's Answer ¶ 14.

Response:

______Uncontroverted.

18. Prior to the discovery of asbestos in the soil of the NWN in 2002, the Air Force conducted no investigation to determine the presence of asbestos in soils in the NWN. Deposition of Mark Spangler (April 14,2008) at p. 107.

Response:

______Controverted as unsupported. The LRA did not file the Spangler deposition transcript as an exhibit to its motion. See RCFC 56(c) (requiring supporting materials to be "on file").

19. Previously unknown asbestos was discovered in the soils of the NWN in the late 2002 by one of the residential homebuilders, McStain Enterprises, Inc. ("McStain"), when McStain was excavating a basement on a lot acquired from the LRA. Complaint ¶ 32; Defendant's Answer ¶ 32.

Response:

______Uncontroverted.

20. After the discovery of asbestos in the soils in certain areas of the NWN in 2002, the CDPHE issued two Compliance Advisories to the Builders, the LRA, and the Air Force as co-Recipients, on April 24 and April 30, 2003 concerning their activities related to the development and construction of residential properties in the NWN. Complaint ¶ 33; Defendant's Answer ¶ 33; CDPHE Compliance Advisories (Exhibit 3 to Plaintiff's Motion for Partial Summary Judgment).

Response:

______Uncontroverted.

21. CDPHE also issued a final response plan on August 15,2003. CDPHE conducted public hearings and received public input on the Response Plan prior to its approval. The Response Plan detailed the procedures and standards for the cleanup of asbestos-contaminated soils. CDPHE concluded that the response actions and cleanup standards required by the Response Plan were protective of public health and the environment. Complaint ¶ 37; Defendant's Answer ¶ 37.

Response:

______Controverted as unsupported. Citation to its complaint does not satisfy the LRA's burden of going forward under RCFC 56(h)(1) (requiring "citations to the opposing party's pleadings or to documentary evidence" (emphasis added)), and our answer does not admit the LRA's characterization of the CDPHE's statements. Moreover, no final response plan is attached as an exhibit to the LRA's motion. See RCFC 56(c) (requiring supporting materials to be "on file").

22. The LRA notified the Air Force in writing of its claims for indemnification under Section 330 and for breach of the Deed Covenants under CERCLA Section l20(h) on various occasions, including, but not limited to: December 12, 2002; March 5, 2003; May 28, 2003; June 5, 2003; August 22,2003; October 30, 2003; and December 29, 2003. Complaint ¶ 42; Defendant's Answer ¶ 42.

Response:

______Uncontroverted, based upon the exhibits to the complaint, which are not cited here.

23. The LRA demanded that Defendant, among other things, assume the defense, indemnification, and performance obligations required by Section 330, the Deed Covenants, and the Compliance Advisories. LRA furnished Defendant with copies of relevant papers LRA

received, as well as evidence and proof of its claim, losses, and damages. LRA also supplied additional information requested by Defendant relating to LRA's claim. Complaint ¶ 43; Defendant's Answer ¶ 43.

Response:

______Controverted as unsupported. Citation to its complaint does not satisfy the LRA's burden of going forward under RCFC 56(h)(1) (requiring "citations to the opposing party's pleadings or to documentary evidence" (emphasis added)), and our answer does not admit the LRA's characterization of its correspondence.

24. The Air Force refused to settle LRA's claims for breach of the Deed Covenants in writing on November 18, 2004, but informed LRA that it had forwarded the LRA's 330 Claim to Department of Defense ("DOD"), Office of the General Counsel, for appropriate action. Complaint ¶ 44; Defendant's Answer ¶ 44.

Response:

______Controverted in substantial part. The cited Air Force letter (exhibit 7 to the complaint) does not refer to – much less "refuse[] to settle" – plaintiff's claims under the deed covenants. Citation to its complaint does not satisfy the LRA's burden under RCFC 56(h)(1) (requiring "citations to the opposing party's pleadings or to documentary evidence" (emphasis added)); and our answer does not admit the LRA's characterization of the Air Force letter.

25. DOD issued a final decision denying LRA's Section 330 Claims in a letter dated December 1,2005. Complaint ¶ 45; Defendant's Answer ¶ 45; Letter dated December 1, 2005 from James G. Van Ness, Acting Deputy General Counsel, DOD, to Thomas Markham, Executive Director, LRA (Exhibit 10 to Plaintiffs Motion for Partial Summary Judgment).

Response:

______Uncontroverted.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/Leslie Cayer Ohta
by Kyle Chadwick
LESLIE CAYER OHTA
Senior Trial Counsel
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-0476
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

DAVID R. VECERA
Deputy Chief
Air Force Legal Operations Agency
Environmental Law and Litigation Division
Bolling AFB
Washington, D.C.

July 21, 2008

CERTIFICATE OF FILING

I hereby certify that on July 21, 2008, this document was filed electronically. I understand that service is complete upon filing, and parties may access this filing through the Court's electronic system.

s/Kyle Chadwick