# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LOWRY ECONOMIC REDEVELOPMENT AUTHORITY, | ) | |
| Plaintiff, | ) | Case No. 06-75 C |
| v. | ) | Judge Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE PLEADINGS, IN SUBSTANTIAL PART, AS TO COUNT ONE

Plaintiff, Lowry Economic Redevelopment Authority ("Plaintiff" or "LRA"), through its attorneys, Sherman & Howard L.L.C., hereby files its Response to Defendant's, United States of America (the "Government"), Motion for Judgment upon the Pleadings, in Substantial Part, as to Count One ("Motion") as follows:

## INTRODUCTION

Defendant's Motion is yet another example of the Government's ongoing attempt to shirk its statutory responsibility under § 330 and to defeat Congress's express intent to protect transferees of closed military facilities from environmental liabilities arising from the Government's prior use of the property. In what can fairly be characterized as an attempt to have a third bite at the apple, Defendant asserts that the Compliance Advisories issued to Plaintiff (and certain homebuilders as well as the Air Force) do not trigger the Government's indemnification obligations under § 330. This Court rejected the Government's virtually identical position in Richmond American Homes of Colorado, Inc., v. United States, 75 Fed. Cl 376 (Fed. Cl.

2007)(hereinafter "*Richmond American I*"). This Court rejected Government's argument a second time in Richmond American Homes of Colorado, Inc., v. United States, 80 Fed. Cl. 656 (2008) (hereinafter "*Richmond American II*"), in response to the Government's motion for reconsideration following this Court's ruling in *AISLIC*. Undaunted, the Government returns yet again to this Court with the same argument. The Court should now reject the Government's position for a third time.

The fact that the Government would attempt to renege on its obligations is, unfortunately, not surprising. As this Court knows, it is not the first time the Government has attempted to do so. Early this year, this Court addressed the issue of the Government's obligation to reimburse costs incurred by a contractor related to its support of the military during World War II. Shell Oil Co. v. United States, Case No. 06-141C (Fed. Cl. 2008)(holding the United States liable for the costs of cleaning up hazardous waste resulting from the production of 100-octane aviation gasoline in 1942-43). In that case, this Court aptly stated that "[t]o now refuse to pay costs imposed by supporting the war effort on behalf of the United States does not befit the honor of our Nation." Id., slip op. at p. 8.

Plaintiff's response to the Government's Motion does not repeat the historical facts associated with Lowry or the procedural history of this action and the two other Section 330 cases which have been before this Court. *Richmond American I*; American International Specialty Lines Insurance Company v. United States, Case No. 05-1020C (Fed. Cl. 2008)(hereinafter "*AISLIC*"). That information was addressed in Plaintiff's Brief In Support of Motion for Partial Summary Judgment and, to some extent, in Defendant's Motion.

## ARGUMENT

### I. § 330 Does Not Require a Third-Party Legal Demand For Money Damages.

In its Motion, the Government argues that the plain and ordinary language of "claim for personal injury or property damage" makes a third-party 'legal demand[ ] for money damages' a prerequisite to relief." See Motion, p. 7 (quoting *AISLIC*, slip op. at 35-36). The Government's argument is mistaken. First, § 330 does not define "claim." See Section 330 of the National Defense Authorization Act for Fiscal Year 1993, Pub. L. No. 102-484, Div. A, Title III, § 330, 106 Stat. 2371 (Oct. 23, 1992), *amended by* Pub. L. No. 103-60, Div. A, Title V, § 1002, 107 Stat. 1745 (Nov. 30, 1993) (hereinafter "Section 330" or "§ 330"); see also *Richmond American I*, 75 Fed. Cl. 376, 389 (finding that § 330 does not define "claim"). Second, Congress used the phrase "claim for personal injury or property damage" in § 330, not "third-party legal demand for money damages." Had Congress intended § 330 to apply only where there was a "third-party legal demand for money damages," it easily could have included that limitation. Third, the Government bases its assertion that the plain and ordinary language of "claim for personal injury or property damage" requires a third-party legal demand for money damages solely on the Court's ruling in *AISLIC*. See Motion, p. 9. The *AISLIC* Court, however, summarily determined that "[c]laims for personal injury and property damage commonly and ordinarily entail legal demands for money damages." *AISLIC*, slip op. at 35-36. The *AISLIC* Court provided no support for its assertion. Id. Moreover, the *AISLIC* Court reached its conclusion concerning the definition of "claim" based on the use of "plaintiff" in § 330(d). As discussed below, Plaintiff respectfully suggests that *AISLIC* Court was incorrect in asserting that the use of "plaintiff" in § 330(d) implies that "claim" requires a third-party legal demand for money damages. Accordingly, the plain and ordinary language of "claim for personal injury or property damage" does not require a third-party legal demand for money damages.

The Government also argues that other text in § 330 confirms that § 330(a) requires a third-party legal demand for money damages. Specifically, the Government asserts that § 330(c) and (d) confirm its interpretation of § 330(a). See Motion, pp. 9-10. The Government reliance on that language is misplaced. The Government initially cites the use of the phrase "settle and defend" in § 330(c). Id., pp. 9-10. Section 330(c), however, is more expansive and contemplates the recovery of damages beyond the limiting parameters of judicial actions. For example, § 330(c)(1) permits a party to recover for "claims," "costs," or "other fee," which are in addition to damages associated with a "suit," "liability," or "judgment." Congress's deliberate use of the terms "claims," "costs," or "other fee" demonstrates that imposing a requirement for a third-party legal demand for money damages is contrary to the express language and Congressional intent of § 330.

The Government also argues that the use of "plaintiff" in § 330(d) supports its interpretation of § 330(a). See id., p. 10. The Government asserts that the use of "plaintiff' in § 330(d) implies that § 330(a) requires a third-party legal demand for money damages. Id. Again, the Government reliance on § 330(d) is misplaced. § 330(d) states, in relevant part, "For the purposes of subsection (b)(1), the date on which a claim accrues is the date on which the plaintiff knew (or reasonably should have known) that the personal injury or property damage referred to in section (a) was caused by or contributed . . . as a result of Department of Defense activities . . .." See § 330(d). The use of "plaintiff" in § 330(d) clearly refers to a transferee of former Government-owned property when an action is brought against the Government under § 330. The reference to § 330(b)(1) in § 330(d) simply demonstrates that "plaintiff" refers to a transferee such as Plaintiff.

§ 330(b) establishes the procedural requirements for indemnification claims against the Government pursuant to § 330. See § 330(b). In particular, § 330(b)(1) requires a party claiming a right to indemnification by the Government to "notif[y] the Department of Defense in writing within two years after such claim accrues or begins action within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the Department of Defense." See § 330(b)(1). Section 330(d), therefore, clarifies when a claim accrues against the Government for the purposes of § 330(b)(1).

If the phrase "claim for personal injury or property damage" is ambiguous, it is appropriate for this Court to examine § 330's legislative history. That legislative history confirms that "claim" includes both regulatory and civil actions. When discussing the purposes of § 330, Senator John McCain stated:

> Under current law, receivers of closed base property can be successfully sued for pollution caused by [DOD] activities. Such suits might include **environmental cleanup orders or civil damage claims**. . .. [T]he Federal Government has duty to accept full and unconditional responsibility for its actions.

See 138 Cong. Rec. S14009 (September 18, 1992) (Statement of Sen. McCain) (emphasis added). A finding that a "claim" includes both regulatory and civil actions easily fits with the broad protections afforded by § 330(a)(1). See *Richmond American I*, 75 Fed. Cl. 376, 390 (finding that "[t]he protections of § 330(a)(1) are sweeping"). "[Section 330] is applied broadly, providing for indemnification from and against 'any suit, claim, demand or action, liability, judgment, cost or other fee.'" Id. (quoting § 330(a)(1)). Accordingly, § 330's legislative history makes clear that a "claim for personal injury or property damage" includes administrative actions and is not limited to third-party legal demands for money damages.

The Government argues that even if "claim for personal injury or property damage" is ambiguous, the relevant legislative history supports its limited interpretation of § 330's protections by requiring a third-party legal demand for money damages. See Motion, p. 10. The Government argument is based on the legislative history in H.R. Conf. Rep. No. 102-966, at 685 (1992), reprinted in 1992 U.S.C.C.A.N. 1769, 1776 ("Conference Report"). Id. The Conference Report, however, does not indicate that Congress amended § 330 to prevent it from overlapping with Section 120(h) of the Comprehensive Environmental, Compensation, and Liability Act ("CERCLA"). See H.R. Conf. Rep. NO. 102-966, at 685 (1992), reprinted in 1992 U.S.C.C.A.N. 1769, 1776. The Conference Report confirms that Congress only wanted to ensure that § 330 did not "conflict with or modify Section 120(h) of CERCLA." Id. The Conference Report does not indicate any concern regarding potential overlap of § 330 and Section 120(h) of CERCLA. To the contrary, an overlap between § 330 and Section 120(h) of CERCLA would serve one of the purposes behind § 330, i.e. fully shielding purchasers from the costs associated with hazardous waste left by the Government. See 138 Cong. Rec. S14009 (September 18, 1992) (Statement of Sen. McCain). In short, the Conference Report does not support the Government's argument.

The Court should not adopt the Government argument that "claim for personal injury or property" is unambiguous and requires a third-party legal demand for money damages. To do so would lead to absurd or unreasonable results plainly at variance with the Congressional policy outlined in the §330. While courts generally construe statutes by examining their plain meaning, they may look beyond the plain meaning of a statue if a literal interpretation would frustrate the purpose behind the statute. See Kentucky v. United States, 62 Fed. Cl. 445, 453-54 (2004); Rotech Healthcare, Inc. v. United States, 71 Fed. Cl. 393, 413 (2006). The United States

Supreme Court has confirmed that courts may liberally construe the plain meaning of a statute when literally interpreting statutory language would lead to an absurd result, see United States v. Bryan, 339 U.S. 323, 338 (1950), or would thwart the underlying statutory purpose. See *In re* Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 643 (1978). The Supreme Court has held that "even when the plain meaning did not produce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole this Court has followed that purpose, rather than the literal words." United States v. American Trucking Ass'ns, 310 U.S. 534, 543 (1940); see also Perry v. Commerce Loan Co., 383 U.S. 392, 400 (1966) (quoting American Trucking Ass'ns, 310 U.S. 534, 543). In such circumstances, "the plain meaning doctrine must be replaced by a rational inquiry based on the context and purpose of the statute." See Kentucky, 62 Fed. Cl. 445, 454.

In this case, adopting the Government's argument that § 330's use of "claim for personal injury or property" limits the Government's indemnification responsibilities to instances when a third-party legal demand for money damages would lead to the absurd and inequitable result that Plaintiff would be without recourse for costs clearly associated with hazardous materials used by the Air Force at Lowry for almost fifty years and then left there when Lowry was closed. See *Richmond American I*, 75 Fed. Cl. 376, 386. When examining the statutory scheme of § 330, the Court in *Richmond American I* found that "[t]hose who receive former military property under the BRAC process expect certain assurances from the Department of Defense as respects the environmental health of the property. Those assurances are what this entire case is about." Id. The *Richmond American I* Court rejected the Government's limited reading of § 330, which is virtually identical to the argument the Government makes it its Motion. Id at p. 390.

In the Government's view, a transferee could not seek indemnification from the Government if, for example, the Environmental Protection Agency ("EPA") or a State environmental agency, such as Colorado Department of Public Health and Environment ("CDPHE"), demanded compliance with environmental statutes and regulations because hazardous waste left by the Government presented a threat to public health and the environment. According to the Government, even substantial fines levied by the EPA or a State environmental agency, such as CDPHE, against the party seeking indemnification would not constitute a "claim for property damage" pursuant to § 330. See Motion, p. 14. To qualify for § 330 indemnification, that transferee would have to ignore the demands of the EPA or State environmental agency and face potential substantial fines,[1] and expose itself to a lawsuit by some third-party for personal injuries or property damage.

The Court in *Richmond American I* specifically addressed the absurdity of the Government's position by recounting the Government's position during oral argument on the parties cross-motions for summary judgment. See *Richmond American I*, 75 Fed. Cl. 376, 391. There, in response to questions by the Court, the Government's attorney effectively stated that § 330 only would apply if a claim was based on allegations of property damage or if the claims "ripened into a personal injury. . .." Id. The *Richmond American I* Court responded by rhetorically asking, "You're not saying the state has to wait until one of those homeowners develops asbestosis?" Id. The Court found that "the statutory language [of § 330] easily accommodates a claim by a state alleging an environmental hazard." Id.

[1] Colorado statutes and regulations permit penalties of up to $15,000 per day for violations of the Colorado Hazardous Waste Act, see COLO. REV. STAT. § 25-15-309(1), Colorado Hazardous Waste Regulations, see 6 CCR 1007-3 Part 101.2(b), and Air Quality Control Act, see COLO. REV. STAT. §§ 25-7-115(3)(b) and 25-7-122(1)(b).

Finally, it is also unlikely that Congress intended that the Government's proposed interpretation of § 330 would lead to a frustration of Congressional intent. Congress enacted § 330 to promote productive uses of closed military bases by fully shielding purchasers from the costs associated with hazardous waste left by the Government. See 138 Cong. Rec. S14009 (September 18, 1992) (Statement of Sen. McCain). Those purposes were explained by its author, Senator McCain:

> I have offered to fully shield purchasers of closed military bases from liability for hazardous waste left by the Federal Government . . . Under current law, receivers of closed base property can be successfully sued for pollution caused by Defense Department activities. Such suits might include environmental cleanup orders or civil damage claims. This situation is unjust and it must be remedied. We simply cannot ask States or businesses to assume potentially devastating liability for conditions they did not create. Moreover, the Federal Government has a duty to accept full and unconditional responsibility for its actions. Last year, I introduced legislation to ensure that the Federal Government remains fully responsible for hazardous waste problems at military installations after base closure. The bill requires the Department of Defense to defend, hold harmless, and indemnify innocent receivers of the property against claims arising from pollution caused by military activities. This protection is absolutely critical if we are to promote the timely and efficient transmission of base property to new and productive uses. How many States or employers are anxious to acquire base property without such protection? . . . Our States and other innocent parties which acquire closed military property have a reasonable expectation that they not be asked to pay for pollution created by the Federal Government . . . We have a Federal obligation to help facilitate a safe and timely transfer of base property to other productive uses. We cannot possibly achieve that goal if those who would put that property to use must risk everything in the process.

See id.

Clearly, Congress intended to promote productive uses of closed military bases like Lowry by fully shielding transferees from the costs associated with hazardous waste left by the Government. By limiting the protections afforded by § 330 as argued by the Government, Congressional intent would likely be thwarted since, in the absence of broad protection from the results of decades of military activities which unquestionably involved hazardous materials,

potential purchasers of Government property simply would not risk converting closed military bases to civilian uses.

Because construing "claim for personal injury or property" to include a requirement for a third-party legal demand for money damages would lead to absurd or unreasonably results and would frustrate § 330's purposes, this Court may consider the legislative history of § 330. That legislative history demonstrates that "claim for personal injury or property damage" includes administrative actions and cannot be limited to a third-party legal demand for money damages.

**II. Richmond American I Was Properly Decided.**

The Government's Motion argues that the Court erred in its prior decision in *Richard American I*. See Motion at pp. 10-12. Contrary to the Government's assertions, *Richard American I* was correctly decided.

The Government argues that it was inappropriate for the *Richmond American I* Court to depart from the "'plain and ordinary meaning' of 'claim for property damage.'" Id., p. 11. Since the phrase "claim for personal injury or property damage" is open to interpretation, it was proper for the Court to consider the legislative history of § 330. Moreover, even if the plain and ordinary language of "claim for personal injury or property damage" unambiguously requires a third-party legal demand for money damages, it was permissible for the Court to consider § 330's legislative history because a literal interpretation would lead to absurd or unreasonable results plainly at odds with the Congressional purpose of § 330.

The Government further asserts that the Court should not have relied upon Senator McCain's statements concerning § 330 because they are irrelevant. See id. at pp. 11-12. The Government's assertion is solely based on *AISLIC*. Id. (quoting *AISLIC*, slip op. at 36 n.25).

The Court's observations in *AISLIC* concerning Senator McCain's statements regarding § 330 are little more than dicta. See Casitas Municipal Water Dist. v. United States, 72 Fed. Cl. 746, 751 (2006) (disregarding a court's prior observation as dicta). More importantly, in *Richard American I*, this Court examined the legislative history of § 330 and Senator McCain's statements because they clarify the purposes and policies underlying § 330. Finally, notwithstanding the Government's assertion to the contrary, the fact that Senator McCain's statements concerning § 330's purposes and policies were made prior to an amendment to § 330 does not detract from their relevance to the issues before this Court.

The Government finally argues that this Court should not have relied upon a letter from the DoD to Senator McCain in *Richard American I*. See Motion, p. 12. Again, the Government relies solely on *AISLIC* to support its argument. Id. (quoting *AISLIC*, slip op. at 36 n.25). The observations by the Court in *AISLIC* concerning the letter from the DoD to Senator McCain are dicta. See Casitas Municipal Water Dist., 72 Fed. Cl. 746, 751. Moreover, the *Richmond American I* Court did not primarily base its decision on the DoD letter to Senator McCain. The Government's argument effectively asks this Court to disregard the *Richmond American I* Court's decision based in substantial part on the Court's findings concerning the DoD letter.

The Court's *Richard American I* ultimate holding is particularly relevant because the Court subsequently had occasion to reconsider its prior decision after the *AISLIC* decision was issued on January 31, 2008. Shortly thereafter, the Government filed a Motion for Reconsideration in *Richard American I* on February 8, 2008. The Government's Motion for Reconsideration argued that the Court should reconsider its *Richard American I* decision based upon *AISLIC*. In *Richard American II*, this Court stated that it already had rejected the

Government's arguments concerning § 330 and saw no need to revise its prior decision. See *Richard American II*, 80 Fed. Cl. 656, 660.

## III. The Government is Judicially Estopped to Deny that a "Claim for Personal Injury or Property Damages" Includes Both Judicial and Administrative Proceedings.

In *AISLIC*, the Government filed a Renewed Motion to Dismiss. That motion argued that the term "claim" meant a "legal or ***administrative proceeding***." See *AISLIC*, slip op. at p. 34 (emphasis added). The Government now is judicially estopped to deny that "claim" includes both judicial and administrative proceedings.

The Court of Appeals for the Federal Circuit offers the following description of judicial estoppel, "The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." Data General Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir. 1996) (citing Davis v. Wakelee, 156 U.S. 680, 689 (1895)). The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749 (U.S. 2001) (quoting United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993)) (internal citations and quotations omitted).

The instances when judicial estoppel applies "are probably not reducible to any general formulation of principle." New Hampshire, 532 U.S. 742, 750 (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). However, the Supreme Court has identified "several factors typically inform the decision whether to apply the doctrine in a particular case." Id. "First, a party's later position must be clearly inconsistent with its earlier positions." Id. (internal

quotations omitted). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." Id. (internal quotations omitted). Finally, "[a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751.

Judicial estoppel should be applied against the Government in this case. This Court recently confirmed that the doctrine of judicial estoppel applies to the Government. Cuyahoga Metro. Housing Auth. v. United States, 65 Fed. Cl. 534, 555 (2005); see also WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION, § 4477, at 601 (2nd ed. 1996) ("even a government may be precluded from blatant inconsistency, particularly when the matter does not involve broad formulation and reformulation of public policy"). Here, judicial estoppel should be applied against the Government because its application will prevent "a knowing assault upon the integrity of the judicial system." Cuyahoga Metro. Housing Auth., 65 Fed. Cl. 534, 556. Plaintiff recognizes that applying judicial estoppel against the Government may be limited when it "would compromise a governmental interest in enforcing the law" and "where the shift in the government's positions is the result of a change in public policy." Id. at 556-57. That limitation should not apply in this case.

Here, judicial estoppel will prevent the Government from changing its position that a § 330 "claim" includes both "legal or administrative proceeding[s]. . .." The Government's position in its Motion is inconsistent with the position it asserted in its Renewed Motion to Dismiss in *AISLIC*. In *AISLIC*, the Government argued that "claim" includes both legal and administrative proceedings. See *AISLIC*, slip op. at p. 34. The Government now argues that "a

claim for personal injury or property" requires a third-party legal demand for money damages. See Motion, pp. 7, 9. The Government further argues that fines or penalties levied by an administrative agency would not constitute "a claim for personal injury or property" because they are designed to punish and deter violations of law. See id., p. 14.

The Government urged the *AISLIC* Court to accept its position that a "claim" includes both judicial and administrative proceedings. The *AISLIC* Court ultimately concluded that "[a] third-party claim is necessary to obtain indemnification under section 330." *AISLIC*, slip op. at 34. In doing so, the *AISLIC* Court characterized the Government's position by stating, "[D]efendant asserts that section 330(c)(1)'s grant of permission to the Secretary of Defense to 'settle or defend . . . the claim for personal injury or property damage' and section 330(d)'s usage of the term 'plaintiff' in concert with 'personal injury or property damage' would be meaningless if 'arising out of any claim' did not refer to a legal or administrative action." Id., slip op. at 35. The *AISLIC* Court did not distinguish any difference between "legal or administrative proceedings."

The Government would derive an unfair advantage if it is not estopped. In *AISLIC*, the Government clearly argued to the Court that "claim" includes both legal and administrative proceedings to defeat the § 330 claim. In this case, the Government now attempts to convince this Court to accept the inconsistent position that "claim for personal injury or property damage" requires a third-party legal demand for money to defeat Plaintiff's § 330 claim. By taking inconsistent positions in *AISLIC* and this case, the Government is "playing 'fast and loose with the Courts' as a means of obtaining an unfair advantage." Westinghouse Elec. Co. v. United States, 56 Fed. Cl. 564, 571 (2003) (quoting New Hampshire, 532 U.S. 742, 750).

Finally, it is appropriate to assert judicial estoppel against the Government here because this is not a case where judicial estoppel would compromise a governmental interest in enforcing its laws or where the Government's inconsistent positions are a result of a change in public policy. The Government's inconsistent positions in *AISLIC* and this case are a result of its attempts to gain an unfair advantage at Plaintiff's expense.

## IV. The CDPHE Compliance Advisories Are "Claims for Property Damage" Pursuant to § 330.

The CDPHE Compliance Advisories are "claims for property damage" pursuant to § 330 because the Government is collaterally estopped to deny that they are not "claims for property damage." Even if the Court determines that the Government is not estopped, the Compliance Advisories remain "claims" pursuant to § 330(a)(1) for several reasons. First, the Compliance Advisories clearly are administrative proceedings. Second, the Compliance Advisories were not advisory invitations to voluntary action. Third, the Compliance Advisories were not idle inquiries to the recipients, including the Government. Finally, the Compliance Advisories placed the burden on Plaintiff, the Builders, and the Government to take remedial efforts or demonstrate that no violations occurred. Unlike the purported claim in *AISLIC*, the Compliance Advisories are "claims for property damage" pursuant to § 330.

The Government is estopped to deny that the Compliance Advisories constitute "claims" under § 330. In *Richmond American I,* this Court specifically held that the Compliance Advisories constitute "claims" under § 330. See *Richmond American I,* 75 Fed. Cl. 376, 391-93. Accordingly, the doctrine of collateral estoppel prevents the Government from now asserting that the Compliance Advisories do not constitute "claims" under § 330.

A more detailed discussion concerning collateral estoppel is provided in Plaintiff's Brief in Support of Motion for Partial Summary Judgment. Accordingly, only a brief discussion of

collateral estoppel is provided here. This Court has held that "[i]ssue preclusion, or collateral estoppel, 'bars litigation of an issue if an identical issue was actually litigated and necessarily decided in a prior case where the interests of the party to be precluded were fully represented.'" People of Bikini, ex rel. Kili/Bikini/Ejit Local Gov. Council v. United States, 77 Fed. Cl. 744, 774 (2007) (quoting Simmons v. Small Business Admin., 475 F.3d 1372, 1374 (Fed. Cir. 2007)). Collateral estoppel applies when the following elements are established: "(i) the issue previously adjudicated is identical with that now presented, (ii) that issue was 'actually litigated' in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action." Kawa v. United States, 77 Fed. Cl. 294, 307 (2007).

This action requires the Court to make the identical determination concerning the Compliance Advisories that was previously made in *Richmond American I*. Plaintiff argument in this action is virtually identical to the Builders' argument in *Richmond American I*, i.e. that the Compliance Advisories, which applied to Plaintiff, the Builders and the Air Force, constitute "claims" and are claims for "property damage" pursuant to § 330(a)(1).

The issues concerning the Compliance Advisories were actually litigated in *Richmond American I*. The *Richmond American I* Court provided a detailed discussion concerning the history and basis of CDPHE's issuance of the Compliance Advisories and the Plaintiff's, Builder's and Air Force's response. See id. at 383-84.

Finally, the *Richmond American I* Court's consideration of the issues concerning the Compliance Advisories was a necessary part of its determination that § 330(a)(1) was applicable. An issue is essential to the final judgment when "the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment." RESTATEMENT (SECOND) OF

JUDGMENTS § 27 cmt. d. In *Richmond American I*, the Government clearly considered the issues with the Compliance Advisories to be dispositive because its Brief spent approximately sixteen pages arguing its position on the issues. Moreover, the Government was fully represented in *Richmond American I*. Indeed, the Government's attorney in *Richmond American I* is the same attorney who represented the Government is this action until a week ago.

While Plaintiff believes that the Government is estopped from asserting that the Compliance Advisories are not "claims" pursuant to § 330, even if the Court determines the Government is not estopped, the Compliance Advisories remain "claims" pursuant to § 330(a)(1).

As argued by the Government in *AISLIC*, a § 330 "claim" includes both legal and administrative proceedings. In this case, the Compliance Advisories clearly are administrative enforcement proceedings. More specifically, the Compliance Advisories warn that "[t]o avoid **additional enforcement action** or reduce the penalties described above . . ." certain actions were required. See Complaint, Ex. 3, at pp. 3, 6 (emphasis added). Colorado statutes and regulations authorize CDPHE to assess administrative penalties against persons who violate environmental laws. Pursuant to COLO. REV. STAT. § 25-15-309, any person who violates COLO. REV. STAT. § 25-15-308 "shall, for each such violation, be subject to a penalty for each day during which such violation occurs or continues." See COLO. REV. STAT. § 25-15-309(1); see also 6 CCR 1007-3 Part 101.2(b). CDPHE may impose a penalty of up to $15,000 per day for each violation. See COLO. REV. STAT. § 25-15-309(1); see also 6 CCR 1007-3 Part 101.2(b). Pursuant to COLO. REV. STAT. §§ 25-7-115(3)(b) and 25-7-122(1)(b), CDPHE also could assess a penalty of up to $15,000 per day for each violation of the Air Quality Control Act. See COLO. REV. STAT. §§ 25-7-115(3)(b) and 25-7-122(1)(b). The Compliance Advisories themselves specifically identified

the applicable Colorado statutes and regulations providing for monetary penalties. See Complaint, Ex. 3, at pp. 3, 6 (emphasis added). The Compliance Advisories essentially meant that Plaintiff and the Builders "will have to pay eventually." *Richmond American I*, 75 Fed. Cl. 376, 392. The *Richmond American I* Court specifically found that "[t]he text of the two Compliance Advisories . . . shows that the State of Colorado was not making an idly inquiry." Id.

The Compliance Advisories placed the burden on Plaintiff and the Builders to take remedial efforts or demonstrate that no violations occurred. They state, in relevant part:

> To avoid additional enforcement action or reduce the penalties described above, you must either correct the deficiencies as outlined below, or you must demonstrate to the Department that the deficiencies are not violations of Colorado hazardous waste and/or air laws.

See Complaint, Ex. 3, at pp. 3, 6. The Compliance Advisories also contained the following warning, "Failure to respond in a timely fashion to this Compliance Advisory will be considered in any subsequent enforcement action and the assessment of administrative and/or civil penalties." Id., Ex. 3, at pp. 5, 7. In *Richmond American I,* the Court found and confirmed that the Compliance Advisories squarely placed the burden upon Plaintiff and the Builders to take remedial efforts or demonstrate that no violations occurred. See *Richmond American I,* 75 Fed. Cl. 376, 393. Finally, Plaintiff was not required to wait for a potential CPDHE Compliance Order (the next step in the CDPHE compliance process) to trigger the protections of § 330(a)(1). In *Richmond American I,* the Court specifically found that there was "no substantive difference between [the compliance advisories and compliance orders]." Id. at 392.

The Compliance Advisories qualify as a "third-party legal action" under § 330 since the CDPHE is unrelated in any manner to either the Plaintiff, the Builders, or any agency of the

Federal Government. In *Richmond American I*, the Court specifically found that CDPHE's involvement to be a third-party claim. The Court emphatically stated:

> We reject the notion that a "third party claim" is required for application of Section 330(a)(1). But even assuming such a requirement, we have no trouble reading the CDPHE's involvement as a third party claim. * * *

Id. at 391.

## CONCLUSION

The Court should reject the Government's continuing attempts to avoid its responsibilities under § 330 by denying the Government's Motion and granting Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted this 21st day of July, 2008.

SHERMAN & HOWARD L.L.C.

By: s/ Durward E. Timmons
Durward E. Timmons
90 South Cascade Avenue, Suite 1500
Colorado Springs, CO 80903
Phone: 719-475-2440
Fax: 719-635-4576

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of July, 2008, a true and correct copy of **RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, IN SUBSTANTIAL PART, AS TO COUNT ONE** was filed electronically and served on the following party. Service is complete upon filing, and parties may access this filing through the Court's system.

Kyle Eric Chadwick
U.S. Department of Justice
Civil Div. – Commercial Litigation Br.
1100 L Street, NW, 8th Floor
Washington, DC 20530
Email: kyle.chadwick@usdoj.gov

Leslie Cayer Ohta
U.S. Department of Justice
Civil Div. – Commercial Litigation Br.
1100 L Street, NW, 8th Floor
Washington, DC 20530
Email: leslie.ohta@usdoj.gov

s/ Durward E. Timmons